EXHIBIT ONE

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**MEKENNA DAVIS**       )
                           )
       Plaintiff          )
                           )
v.                       )    Case No.: 3:20-CV-728-RGJ
                           )
**PANDA EXRESS, INC. and**   )
**PANDA EXPRESS RESTAURANT**  )
**GROUP, INC.**              )
                           )
       Defendants     )

## DECLARATION OF SANDY LICEAGA

I, Sandy Liceaga, declare as follows:

1.     I am over the age of 18 years, have personal knowledge of the facts set forth herein from my own personal knowledge, and if called as a witness by a court of law, could and would competently testify thereto.

2.     I am currently the Senior Manager, Benefits and Leaves of Absence of Panda Restaurant Group, Inc. ("Defendant" or "Panda"), one the named defendants in the above-entitled action. Prior to this position, and during Plaintiff Mekenna Davis' ("Plaintiff") employment with Panda Express, I was employed as Panda's HR Program Manager. I have been employed by Panda since July 30, 2007. From my role as HR Program Manager, I have personal knowledge of the application and on-boarding process by which applicants (or "candidates") and newly hired associates (or "new hires") at Panda completed their applications and new hire paperwork, as well as reviewed and acknowledged Panda's policies and procedures. As HR Program Manager, I was also a

EXHIBIT ONE

custodian of Panda's business records regarding the acknowledgement forms completed by new hires. These records are maintained in the regular course of Panda's business, and the database containing these records is regularly updated as new associates are hired.

3.      Panda is the parent company of Panda Inn, Panda Express, and Hibachi-San. Panda owns and operates Asian dining concepts, such as fast casual restaurants, in 49 states, including Kentucky; U.S. Territories including Puerto Rico and Guam; and one or more foreign countries. The Panda Express concept operates more than 2,100 restaurants throughout the United States. In connection with these operations, Panda Express purchases and receives goods and products from its vendors through interstate shipping channels. Panda Express likewise relies upon interstate communications to run its various locations and serve its customers.

4.      I have reviewed Panda's business records, maintained and relied upon by Panda in the ordinary course of its business, relating to Plaintiff including the Arbitration Agreement entered into by her. These records are and have been available to me in the ordinary course of the performance of my job responsibilities.

5.      At the time that Plaintiff applied to work at Panda in or around July 2017, individuals interested in employment with Panda completed an employment application through Panda's website. To do so, the candidate was required to provide Panda with their email address and generate a unique username and password to create a Panda account. The candidate personally selected the unique username and password, and the

EXHIBIT ONE

candidate's account could only be accessed by inputting that unique username and password.

6.     If Panda offered a candidate employment, they would then complete the onboarding process at the location at which they were hired. Using the store computer, newly hired associates logged in to their Panda account using the username and password that they created during the application process. The new hire was then taken to a welcome page containing links to the documents and forms that they needed to review and complete. The welcome page and links/forms would slightly differ depending on the position for which the individual was hired. The welcome page contained a list of links to documents for the new hire to read and review, including the Associate Handbook and the My V.O.I.C.E. Matters Program ("MVMP"). The welcome page also contained a column of tasks/forms for the new hire to review and complete. The new hire would then click on the tabs to review and acknowledge and/or complete each form. The forms that the new hires were required to complete included, but were not limited to, a Form W-4, a New Hire Information/Emergency Contacts form, an Electronic Payment Distribution System Form, an Associate Acknowledgement Form relating to Panda's Associate Handbook and anti-harassment policies, and an Associate MVMP Acknowledgment Form.

7.     At that time, with respect to the MVMP, the new hire was able to click the link that would open the MVMP, which could be reviewed beginning to end on the screen by scrolling through. New hires were free to spend as much time as they wished reviewing the MVMP. Further, the MVMP was provided in both English and Spanish to associates. A true and correct copy of the MVMP is attached hereto as **Exhibit A**.

EXHIBIT ONE

8.      After reviewing the MVMP, new hires completed the MVMP Acknowledgement Form by initialing each paragraph and entering the last four numbers of their Social Security Number. After the new hires did this, when the Acknowledgment Form was printed, the individual's name and the date were automatically generated. Based on my review of Panda's business records, Plaintiff completed the MVMP Acknowledgement Form on August 11, 2017. A true and correct copy of the Acknowledgment Form of Plaintiff is attached as **Exhibit B** hereto.

9.      In addition, during that time period, each new hire received a "welcome" email sent to the email address that they provided to Panda. The welcome email contained a copy of the MVMP Acknowledgment Form, the healthcare Marketplace Notice, and a bulletin on the Hourly Benefits.

10.     At the time that Plaintiff was hired by Panda, the MVMP contained an Arbitration Provision, in which associates were required to enroll, but it was not a condition of employment. New hires at Panda had the opportunity to opt out of the Arbitration Provision within 60 days if they so desired via a written request to opt out. During Plaintiff's employment with Panda, I was a custodian of Panda's business records of the written requests of those individuals who elect to opt out of the Arbitration Provision. The written requests to opt out, regardless of whether they are received by mail, overnight delivery, hand delivery, email or otherwise, are maintained in the regular course of Panda's business. Based on my review of these records, Plaintiff did not send, and has never sent, a written request to opt out of the Arbitration Provision. Further, Panda never waived the Agreement.

4

EXHIBIT ONE

I verify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on this 6th day of November, 2020.

Sandy Liceaga

EXHIBIT ONE

# My V.O.I.C.E. Matters Program



   

EXHIBIT ONE

# <u>Frequently Asked Questions</u>
# <u>My V.O.I.C.E. Matters Program</u>

1. **Q: What is My VOICE Matters Program (MVMP)?**
   **A:** VOICE – <u>V</u>alue <u>O</u>ur <u>I</u>ssues or <u>C</u>oncerns for <u>E</u>ngagement. MVMP Program includes an <u>enhanced open door policy</u> and an option for <u>arbitration</u>.  It provides a framework for associates to have safe and empowering conversations about work issues and is a powerful pathway for resolving disputes. This program is faster and less costly than relying on administrative claims and lawsuits.

2. **Q: What is the enhanced open door policy?**
   **A:** It offers **<u>multiple ways</u>** for associates to raise work issues and concerns.
   • To supervisor or HR
   • Through a dedicated hotline at 855-726-3274
   • Through a dedicated website at <u>www.pandarg.ethicspoint.com</u>

3. **Q: Do I need to sign up for the enhanced open door policy?**
   A: No, all associates are automatically enrolled in the enhanced open door policy.

4. **Q: Do I need to sign up for the arbitration option?**
   A: Yes, you can enroll by completing the eModule.

5. **Q: What is the arbitration option?**
   **A:** The MVMP program provides an extra option for arbitration for issues that affect an associate's legally protected rights, which can prevent the time and money required to pursue a lawsuit.

6. **Q: What are some examples of "legally protected rights"?**
   **A:** You are protected from discrimination based on race, ethnicity, color, religion, sex, sexual orientation, or national origin, age, marital status, disabilities, medical condition, as well as any other category protected by federal, state or local law.

7. **Q: How do I participate in the arbitration option?**
   **A:** For new hires, associates are automatically enrolled as a condition of hire.  They can later choose not to participate if they notify Panda within 60 days from their agreement.  For existing associates, they can participate in the arbitration option by completing the eModule.

8. **Q: Can I enroll into the arbitration option in the future if I choose not to participate now?**
   A: Yes, there will be an annual enrollment period when you can take advantage of enrolling into the program.

9. **Q: What are the benefits of the MVMP?**
   **A:** The MVMP offers multiple options (supervisor or HR, hotline, website) for raising work issues and gives you the option to do so anonymously.  It also provides the option for arbitration, which can prevent the time and money required to pursue a lawsuit for settling disputes.

10. **Q: What are the benefits of the arbitration program?**
    **A:** You pay just a one-time filing fee of $125 (or a day's pay, if less), and Panda covers any arbitrator's fees.  The Company will also reimburse a portion of your legal costs. You still have the option to file administrative claims with federal or state agencies, and the option to sue is still available through arbitration. You also have the option to have any arbitration decisions reviewed by a court.

11. **Q**: How long is the arbitration process?

# EXHIBIT ONE

**A**: It is shorter than a normal trial, but there are several steps that need to take place.

**12. Q: What issues or concerns can be resolved in the MVMP?**
**A**: You can use the MVMP to resolve any work related issues or concerns you have with your co-workers, manager, or the environment.

**13. Q: What is the difference between arbitration and mediation?**
**A**: Mediation is where a third party helps the two sides come to an agreement, whereas in arbitration an arbitrator makes a decision.

**14. Q: Is enrolling into the arbitration program a condition of continued employment?**
**A**: No, however it is a condition of hire for new associates.  You will need to enroll into the arbitration program to be hired, but you can "Opt Out" within 60 days by submitting a written request.

**15. Q: Will I be reminded that the deadline to "Opt Out" is approaching?**
**A**: No, you will be responsible for opting out by the deadline if you choose to do so.

**16. Q: Who will know if I am enrolled or have chosen to "Opt Out" of MVMP?**
**A**:  The MVMP coordinator, and certain individuals at Panda who are responsible for administering the enrollment and maintenance of the program.

**17. Q: What is the process of MVMP?**
**A**: Step 1 is the Enhanced Open Door Policy.  Associates are encouraged to resolve any work related problems with their immediate supervisor or next higher level supervisor first.  They can also contact HR for assistance anytime. If you are not satisfied with the result at Step 1, you can go to
Step 2 where a HR Director who was not involved in Step 1 will review your case and respond to you in writing. If you are unsatisfied with the Step 2 result and your situation involves legally protected rights, you can go to
Step 3, bring up the issue directly to a MVMP coordinator.  If your situation cannot be resolved at Step 3, you can go to
Step 4 and request Arbitration.

**18. Q: If I "Opt Out" the arbitration program, can I still use the MVMP?**
**A**: Yes, you may still use the MVMP for steps 1 and 2.

**19. Q: Are there other options to bring up my concerns besides going to my supervisor or HR?**
**A**:  Yes, you can call our hotline at 855-726-3274 or go to our website at www.pandarg.ethicspoint.com to report your concern anonymously.  You can also check the status of the concern by using your case number.

**20. Q: Can I remain anonymous (my name not used) if I use the MVMP?**
**A**: Yes, you are not required to provide your name.

**21. Q: Can I report my concern in Spanish?**
**A**: Yes, you can report your concern in Spanish via the hotline and website.

**22. Q: Will the response be in writing or verbal?**
**A**: Responses will be in writing or verbal depending the step of the MVMP.

**23. Q: What does "The decision is binding" mean?**
**A**: A binding decision is when you will have to follow the decision made by a 3rd party or a court (a judge).

**24. Q: What can I do if I don't receive a decision in writing within forty-five (45) days of the date my request was made?**
**A**: You may request a review at the next step without receiving a decision from the previous step.

**25. Q: What happens if I don't file a written request for review within thirty (30) days of the previous step decision?**
**A**: The issue/concern can't be filed for review at the next level.

**26. Q: Will I be paid for the time I need to take off of work to participate in the MVMP process?**
**A**: All of the review process (with the exception of arbitration) will be done without the need for the associate to be present.  If the associate is needed for clarification and/or a statement, it will be done during his/her working hours.  Therefore, he/she will be paid.

**27. Q: What should I do if I feel retaliated against during any step of the MVMP process?**
**A**: Notify the MVMP Coordinator at 626-372-8167 immediately.

**28. Q: Will I know what action has been taken against another person?**
**A**: No, the response will only include appropriate information about how you are affected.

EXHIBIT A TO DECLARATION

EXHIBIT ONE

# MY V.O.I.C.E. (Valuing Other's Issues and Concerns for Engagement) MATTERS PROGRAM RULES AND PROCEDURES

**July 5, 2012**

*If you need any accommodation to help you read and understand this My V.O.I.C.E. (Valuing Other's Issues and Concerns for Engagement) Matters Program Document and Agreement, please call the Department of Human Resources at (626) 799-9898 extension 6053.*

**Version 1.1.1**

**Graphical Example**

## My V.O.I.C.E. Matters Levels

| Step 1: Open Door Policy / Ops | Step 2: HR Review by HRD | Step 3: Dispute RES. Coord / CPO | Step 4: Binding Arbitration |
|---|---|---|---|

Step 1:
- Associate meets with Direct Mgr. (GM) or Second Level Mgr. (ACO)

- Appeal heard by Third Level Supervisor (RDO/ZVP)

- HR Mgr. to facilitate conversations

- Associate can also go directly to Step 2 (or 3)

Step 2:
- Associate appeals within 30 days after final Step 1 appeal decision

- Impartial investigation by HRD

- Decision within 45 days of the appeal

Step 3:
- Issues involving legally protected rights can be appealed within 30 days after Step 2 decisions

- Decision within 45 days of appeal

- Decision against Company is binding

Step 4:
- If a Step 3 decision is not favorable to Associate, Associate may request arbitration

- Arbitration is with a neutral third party

- Decision is binding on both Associate and Company

### BACKGROUND

Panda Restaurant Group, Inc., and its subsidiaries, parents, affiliates and divisions (collectively, the "**Company**") care about the people who work here. People are the base of the Panda pyramid and People Development is essential to our 2020 Vision. We know that from time to time Associates can have problems at work. We also know that such problems, no matter how minor they are, can become bigger problems without early attention and resolution.

In 2011, the Company adopted a mindset and a "new way of being" which took a stand for all Associates:

Create a safe and empowering conversational environment for Panda Associates to listen, appreciate and challenge each other in bringing our 2020 Vision alive and in action.

Together, Peggy, Andrew, our Senior Management Team, and every Panda Leader are aligned in creating a space for Associates to be fully self-expressed and heard for the purpose of furthering the 2020 Vision. As part of that process, the Company decided to look for (and foster) effective ways of communication for all Associates and to resolve many issues that may arise in the workplace.

Our Open Door Policy was a good place to start. Over the years, the Company has had a policy in the Associate Handbook and in our daily practice to help Associates handle problems by working with supervisors and/or Human Resources.

Today, we are pleased to announce the transformation of our Open Door Policy into the My V.O.I.C.E. (**V**aluing **O**ther's **I**ssues and **C**oncerns for **E**ngagement) Program (the "**MVM**" Program).

### SUMMARY

We are convinced that a full internal review of differences at the level closest to the source of differences is the quickest and most productive way to resolve these disputes. It also maintains good working relationships and avoids unnecessary confrontations. So, our Open Door Policy (**Step 1**) continues to be the foundation of our program. It must be used before taking the next step.

If you are not satisfied with the result at Step 1, you can request to have your issue reviewed by the Human Resources Department ("**HR**") (**Step 2**). A HR Director or another HR executive who was not involved in Step 1 will review your issue. They will respond to your request in writing. Steps 1 and 2 are available for any disputes relating to your employment with the Company.

If you are not satisfied with the result at Step 2, and you believe your situation involves legally protected rights, you can make a Request for Reconsideration (**Step 3**). Step 3 gives you the option, of a personal review of your matter by a representative of the Office of MVM Program, who reports directly to the Chief People Officer of the Company.

In those relatively rare situations that, for whatever reason, your dispute cannot be resolved at Step 3 and you wish to pursue it further, MVM Program provides for a private, professional way to resolve it outside of the Company. You can request Arbitration (**Step 4**). This process involves an Arbitrator. The Arbitrator is a professional, neutral third-party selected by both you and the Company. After a hearing, the Arbitrator renders a final decision. <u>The decision is binding on both the Company and you.</u>

Nothing in the MVM Program, however, prevents you from filing, at any time, a charge or complaint with a government administrative agency like the EEOC or NLRB, for example.

### ELIGIBILITY & ENROLLMENT

All new Associates agree to be covered by the MVM Program, including Arbitration (**Step 4**), by accepting employment with the Company on or after **June 29, 2012** (the "**Effective Date**"). However, Arbitration —Step 4 is completely voluntary. New Associates are given the option to exclude themselves from Arbitration – Step 4 by completing an "opt out" election form within **60** calendar days of the Effective Date or their hire date, whichever is later. New associates shall receive the electronic acknowledgement and agreement regarding the MVM Program as part of the TALEO "onboarding" process.

Existing and active Associates hired prior to the Effective Date (collectively, the "**Existing Associates**") shall

be invited to enroll in the MVM Program on or around the Effective Date.  For Existing Associates who choose to enroll, their date of enrollment will constitute the Effective Date of their participation in the MVM Program (also referred to as the "**Effective Date**").  Existing Associates not enrolled into the MVM Program shall continue to be invited to enroll in the MVM Program on or about each annual anniversary of the Effective Date.  Existing Associates shall receive a brochure and acknowledgment in the mail or some other method of communication to enroll.

Until and unless a new Associate elects to be excluded from arbitration within the prescribed time frame or they are an Existing Associate who has enrolled into the MVM Program, the Associate is covered by Arbitration **(Step 4)**.

### HOW MVM PROGRAM WORKS

#### Step 1 - Open Door

The Open Door has four levels of procedure for Associates to raise and discuss a problem.  First, the Company's open door policy encourages Associates to try to resolve any problems at work with their direct supervisors.  But, if the problem concerns the Associate's immediate supervisor, the Associate should contact the supervisor of the Associate's immediate supervisor.  Second, if the Associate is unsatisfied with the first supervisor's response or needs to talk to someone other than the supervisor, the Associate may take the problem to the next higher level of supervision.  Lastly, if a concern is not resolved timely from the meeting with the second or next higher level supervision, the Associate may contact the Regional Director of Operations, the Zone Vice President, or the Senior Management Team member (if the Associate works in the Support Center).

Step 1 can also be initiated by an Associate using the Panda Hotline (626-799-9898 extension 6053) or communication to HR.  The Open Door also provides that the Associate may contact HR for advice or assistance at any time.

#### Step 2 - Review by HR

If the Associate is not satisfied with **Step 1**, the Associate files a written request for review with HR within thirty (30) days of the Step 1 decision.  The complaint is referred to a HR Director (one who was not involved at Step 1), who will conduct an impartial investigation.  A written decision is then issued generally within forty-five (45) days of receiving the request for review.  Along with the decision are instructions for pursuing **Step 3** if the Associate is not satisfied with the results of Step 2.

Steps 1 and 2 are available for any disputes relating to your employment at the Company.  Steps 3 and 4 are available only for claims involving legally protected rights.  "**Legally protected rights**" means claims the Associate could raise in a court or before an administrative agency.

#### Step 3 - Request for Reconsideration

For claims involving legally protected rights, if the Associate is not satisfied with the results of Step 2, the Associate may go to Step 3 by contacting the Office of MVM Program within thirty (30) days of the Step 2 decision to file a written Request for Reconsideration.  Then, the MVM Program Representative will send to the Associate a confirmation that the complaint was received.  A representative of the Office of MVM Program, who reports directly to the Chief People Officer of the Company, then conducts a review and provides the Associate with a decision in writing.  The decision is generally provided within forty-five (45) days of receiving the complaint.  A decision that upholds the Associate's claim is final and binding on the Company.  But a decision denying the Associate's claim in any way may be challenged by requesting arbitration under Step 4.  If the claim is denied at Step 3, the Company will let the Associate know the

procedures for continuing on to **Step 4**.

#### Step 4 - Arbitration Rules and Procedures

**Individuals Covered**
THIS **MVM PROGRAM EARLY DISPUTE RESOLUTION AGREEMENT RULES AND PROCEDURES** (this "**Agreement**") applies, as of the Effective Date provided in Article 4, to all Associates not subject to a separate contract with the Company, subject to certain limitations below.

That means that from the Effective Date, all newly hired Associates agree, as a condition of employment, to arbitrate any and all disputes, including statutory and other claims, not resolved at Step 3.  Existing Associates will be invited to enroll in the MVM Program each annual anniversary.

However, Arbitration (Step 4) is a voluntary condition of employment.  Newly hired Associates are given the option of excluding themselves from Step 4 arbitration within a prescribed time frame after enrollment at hiring.  Issues at Step 4 are decided by a professional from the American Arbitration Association in an arbitration process, rather than in a court process.  Arbitration thus replaces any right you might have to go to court and try your claims before a jury.  You are covered by Step 4 unless and until you exercise the option to exclude yourself from arbitration within the prescribed time frame.  Whether you choose to remain covered by arbitration or to exclude yourself will have no negative effect on your employment.

Any Associate who experiences a break in service with the Company of sixty (60) days or less, or who transfers from one subsidiary, division or affiliated Panda Restaurant Group company to another, remains covered by Arbitration, unless the Associate previously excluded himself or herself during the prescribed time period.  If the Associate becomes re-employed with the Company following a break in service greater than sixty (60) days, the Associate is treated as a new hire and is given the opportunity to elect to be excluded from arbitration during the prescribed time period.

**Claims Subject to or Excluded from Arbitration**
Except as otherwise limited, all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law ("**Employment-Related Claims**"), shall be settled exclusively by final and binding arbitration.  Arbitration is administered by the American Arbitration Association ("**AAA**") under this Agreement and the employment arbitration portion of the AAA's Employment Arbitration Rules and Mediation Procedures that does not conflict with this Agreement.  Arbitration is held before a neutral, third-party Arbitrator.  The Arbitrator is selected in accordance with this Agreement.  If there are differences between this Agreement and the employment arbitration portion of the AAA's Employment Arbitration Rules and Mediation Procedures, this Agreement shall control and apply.

Arbitration shall apply to any and all such disputes, controversies or claims whether asserted by the Associate against the Company and/or against any employee, officer, director or alleged agent of the Company.  Arbitration shall also apply to any and all such civil disputes, controversies or claims asserted by the Company against the Associate.

All "Employment-Related Claims," as defined below, as of the Effective Date arising under federal, state or local statutory or common law,  shall be subject to arbitration.  Merely by way of example, Employment-Related Claims include, but are not limited to, claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Fair Labor Standards Act (FLSA), 42 U.S.C. § 1981, including amendments to all the foregoing statutes, the Employee Polygraph Protection Act, state anti-discrimination and anti-harassment statutes, state wage-hour laws, state statutes, and/or common law regulating employment termination, misappropriation, breach of the duty of loyalty, the law of contract or the law of

EXHIBIT ONE

tort; including, but not limited to, claims for malicious prosecution, wrongful discharge, wrongful arrest/ wrongful imprisonment, intentional/negligent infliction of emotional distress or defamation.

Claims by Associates that are required to be processed under a different procedure pursuant to the terms of an employee pension plan or employee benefit plan shall not be subject to arbitration under Step 4.  Claims by Associates for state employment insurance (e.g., unemployment compensation, workers' compensation, worker disability compensation) or under the National Labor Relations Act are also not subject to Arbitration under Step 4.  Statutory or common law claims made outside of the state employment insurance system alleging that the Company retaliated or discriminated against an Associate for filing a state employment insurance claim, however, shall be subject to arbitration.

Nothing in these MVM Program Early Dispute Resolution Rules and Procedures prohibits an Associate from filing at any time, a charge or complaint with a government agency such as the EEOC.  However, upon receipt of a right to sue letter or similar administrative determination, the Associate's claim becomes subject to arbitration as defined herein.  However, NLRB charges are never subject to arbitration under this Agreement.

Claims that you have already asserted as an individual party plaintiff on or before the Effective Date are not subject to arbitration.

### Dismissal/Stay of Court Proceeding

By agreeing to arbitration, the Associate and the Company agree to resolve through arbitration all claims described in or contemplated by Article 2 above.  This means that neither the Associate nor the Company can file a civil lawsuit in court against the other party relating to such claims.  If a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the MVM program.

If a party files a lawsuit in court involving claims that are, and other claims that are not, subject to arbitration under Step 4, such party shall request the court to stay litigation of the nonarbitrable claims and require that arbitration take place with respect to those claims subject to arbitration, assuming the earlier steps have been exhausted.  The Arbitrator's decision on the arbitrable claims, including any determinations as to disputed factual or legal issues, shall be entitled to full force and effect in any later court lawsuit on any nonarbitrable claims.

### Effective Date

For newly hired Associates after the Effective Date, the date the MVM program is effective for any particular associate in this category shall be the date of their hire, rehire, or employment without a contract with the Company; provided such associate does not exclude themselves from the MVM program within the prescribed timeframe.  For Existing Associates, the date the MVM program is effective for any particular associate in this category shall be the date of their enrollment and acceptance of this Agreement (and the MVM program).

### Time Limit to Initiate Arbitration

Arbitration must be initiated in accordance with the time limits contained in the applicable law's statute of limitations.  The period of time elapsed during which the Associate pursued his or her claims under Steps 1-3 of this Program is added on to the applicable limitations period.

### Commencement of Arbitration

To initiate arbitration, the Associate or Company must give written notice to the other party and/or person who is alleged to be liable in the dispute ("**Claimant**").  Notice to the Company must be given to the Office of MVM Program.

Notice to the Associate must be given by mailing to the Associate's last known home address.

The notice shall include a statement of the nature of the claim together with a brief description of the relevant facts, the remedies including any amount of damages being sought, and the address which the Claimant will use for the purpose of the arbitration.

Within thirty (30) days after notice of a dispute is given, the other party shall give its response ("**Respondent**").  The response shall state all available defenses, a brief description of relevant facts and any related counterclaims then known.

Within thirty (30) days after such counterclaims are given, the Claimant shall give Respondent a brief statement of the claimant's defenses to and relevant facts relating to the counterclaims.

Claims and counterclaims may be amended before selection of the arbitrator and thereafter with the arbitrator's consent.  Notices of defenses or replies to amended claims or counterclaims shall be delivered to the other party within the thirty (30) days after the amendment.

### Selection of an Arbitrator

Both the Company and the Associate shall participate equally in the selection of an Arbitrator to decide the arbitration.  After receiving and/or filing an Arbitration Request Form, the MVM Program Manager shall ask the American Arbitration Association to provide the Company and the Associate a panel of seven (7) neutral arbitrators with experience deciding employment disputes.

The Company and the Associate then shall have the opportunity to review the background of the arbitrators by examining the materials provided by the American Arbitration Association.  Within seven (7) calendar days after the panel composition is received, the Associate and the Company shall take turns striking unacceptable arbitrators from the panel until only one remains.  The Associate and the Company will inform the American Arbitration Association of the remaining arbitrator who will decide the dispute.  However, if both parties agree that the remaining arbitrator is unacceptable, a second panel will be requested from the American Arbitration Association and the selection process will begin again.  If both parties agree no one on the second panel is acceptable, either party may request the American Arbitration Association to simply appoint an Arbitrator who was not on either panel.

### Time and Place of Arbitration

The arbitration hearing shall be held at a location within fifty (50) miles of the Associate's last place of employment with the Company, unless the parties agree otherwise.  The Parties and the Arbitrator shall make every effort to see that the arbitration is completed, and a decision rendered, as soon as possible.  There shall be no extensions of time or delays of an arbitration hearing except in cases where both Parties consent to the extension or delay, or where the Arbitrator finds such a delay or extension necessary to resolve a discovery dispute or other matter relevant to the arbitration.

### Right to Representation

Both the Associate and the Company shall have the right to be represented by an attorney.  If the Associate elects not to be represented by an attorney during the arbitration proceedings, the Company will not have an attorney present during the arbitration proceedings.

#### Discovery

### Initial Disclosure

Within fourteen (14) calendar days following the appointment of an Arbitrator, the Parties shall provide each other with copies of all documents upon which they rely in support of their claims or defenses.  However, the parties need not provide privileged documents that are protected from disclosure because

EXHIBIT A TO DECLARATION

they involve attorney-client, doctor-patient or other legally privileged or protected communications or materials.  Throughout the discovery phase, each party shall provide the other party with any and all such documents relevant to any claim or defense.

Upon written request, the Associate shall be entitled to a copy of all documents (except privileged documents as described above) in the Associate's "PERSONNEL FILE."

### Other Discovery

### Interrogatories/Document Requests
Each party may propound one (1) set of twenty (20) interrogatories (including subparts) to the other party.  Interrogatories are written questions asked by one party to the other, the recipient must answer under oath.  Such interrogatories may include a request for all documents upon which the responding party relies in support of its answers to the interrogatories.  Answers to interrogatories must be served within twenty-one (21) calendar days of receipt of the interrogatories.

### Depositions
A deposition is a statement under oath that is given by one party in response to specific questions from the other party.  It is usually recorded or transcribed by a court reporter.  Each party shall be entitled to take the deposition of up to three (3) relevant individuals of the party's choosing as of right.  The party taking the deposition shall be responsible for all associated costs, such as the cost of a court reporter and the cost of a transcript.

### Additional Discovery
Upon the request of any party and a showing of appropriate justification, the Arbitrator may permit additional relevant discovery, if the Arbitrator finds that such additional discovery is not overly burdensome, and will not unduly delay the conclusion of the arbitration.

### Discovery Disputes
The Arbitrator shall decide all disputes related to discovery.  Such decisions shall be final and binding on the parties.  In ruling on discovery disputes, the arbitrator need not follow but may consult the discovery rules contained in the Federal Rules of Civil Procedure.

### Time for Completion of Discovery
All discovery must be completed within ninety (90) calendar days after the selection of the Arbitrator, except for good cause shown as determined by the Arbitrator.  In order to expedite the arbitration, the parties may initiate discovery prior to the appointment of the Arbitrator.

### Hearing Procedure

### Witnesses
Witnesses shall testify under oath, and the Arbitrator shall afford each party a sufficient opportunity to examine its own witnesses and cross-examine witnesses of the other party.  Either party may issue subpoenas compelling the attendance of any other person necessary for the issuing party to prove its case.

### Subpoenas
A *subpoena* is a command to an individual to appear at a certain place and time and give testimony.  A *subpoena* also may require that the individual bring documents when he or she gives testimony.  To the extent authorized by law, the Arbitrator shall have the authority to enforce and/or cancel such subpoenas.  *Subpoenas* must be issued no less than ten (10) calendar days before the beginning of an arbitration hearing or deposition.

The party issuing the *subpoena* shall be responsible for the fees and expenses associated with the issuance and enforcement of the subpoena, and with the attendance of the subpoenaed witness at the arbitration hearing.

### Sequestration
The Arbitrator shall ensure that all witnesses who testify at the arbitration are not influenced by the testimony of other witnesses.  Accordingly, unless the Arbitrator finds cause to proceed in a different fashion, the Arbitrator shall sequester all witnesses who will testify at the arbitration, however, the Arbitrator shall permit the Associate involved in the arbitration and the Company's designated representative to remain throughout the arbitration, even though they may or may not testify at the hearing.

### Evidence
The parties may offer evidence that is relevant and material to the dispute and shall produce any and all non-privileged evidence that the Arbitrator deems necessary to a determination of the dispute.  The Arbitrator need not specifically follow the Federal Rules of Evidence, although they may be consulted to resolve questions regarding the admissibility of particular matters.

### Burden of Proof
Unless the applicable law provides otherwise, the party requesting arbitration or the party filing a counterclaim has the burden of proving a claim or claims by a preponderance of the evidence.  To prevail, the party bringing the arbitration must prove that the other's conduct was a violation of applicable law.

### Briefing
Each party shall have the opportunity to submit one (1) dispositive motion, one (1) pre-hearing brief, and one (1) post-hearing brief, which is a written statement of facts and law, in support of its position.  Submission of such briefs is not required, however, briefs shall be typed and shall be limited in length to twenty (20) double-spaced pages of 12 point font.

### Transcription
The parties may arrange for transcription of the arbitration by a certified reporter.  The party requesting transcription shall pay for the cost of transcription.

### Consolidation

### Claims
The Arbitrator shall have the power to hear as many claims as a single Claimant may have on behalf of solely himself or herself, consistent with Article 2 of these MVM Program Early Dispute Resolution Rules and Procedures.

The Arbitrator may hear additional claims that were not mentioned in the Arbitration Request Form.  To add claims, the Claimant must notify the other party at least thirty (30) calendar days prior to a scheduled arbitration.  The additional claims must be timely, under the applicable law, as of the date on which they are added.  The other party must not be prejudiced in its defense by such addition.

### Parties
The Arbitrator shall not consolidate claims or remedies of different Associates into one (1) proceeding.  The Arbitrator shall not have the power or jurisdiction to hear an arbitration as a class action, collective action or representative action, whether or not the claim is alleged by the Associate in a "private attorney general" capacity.  (A class, collective or representative action involves representative members of a group of Associates or the general public, seeking relief on behalf of the group or general public).  This provision completely replaces and overrides any AAA Rule to the contrary, is a material provision, and is in place

EXHIBIT ONE

in consideration of the speed, efficiency and informality of the MVM Early Dispute Resolution Rules and Procedures as a whole.  Thus, this provision cannot be severed and, if not enforced as written, the Parties are not subject to any arbitration agreement.

### Confidentiality
All aspects of an arbitration pursuant to these MVM Early Dispute Resolution Rules and Procedures, including the hearing and recording of the proceeding, shall be confidential and shall not be open to the public.  The only exceptions are : (i) to the extent both parties agree otherwise in writing; (ii) as may be appropriate in any subsequent proceeding between the parties: or (iii) as may otherwise be appropriate in response to a governmental agency, legal process, or (iv) as required by law to make this Agreement enforceable.

All settlement negotiations, mediations, and any results shall be confidential.

### Substantive Choice of Law
The Arbitrator shall apply the substantive law, including the conflicts of law, of the state in which the Associate is or was employed.  For claims or defenses arising under or governed by federal law, the Arbitrator shall follow the substantive law as set forth by the United States Supreme Court.  If there is no controlling United States Supreme Court authority, the Arbitrator shall follow the substantive law that would be applied by the United States Court of Appeals and the United States District Court for the District in which the Associate is or was employed.

### Arbitrator Authority
The Arbitrator shall conduct the arbitration.  The arbitrator shall have the authority to render a decision in accordance with this Agreement, and in a manner designed to promote rapid and fair resolution of disputes.

The Arbitrator's authority shall be limited to deciding the case submitted by the party bringing the arbitration.  Therefore, no decision by any Arbitrator shall serve as precedent in other arbitrations.

The arbitration procedure contained herein does not alter the Associate's employment status.  The status remains alterable at the discretion of the Company and/or terminable at any time, at the will of either the Associate or the Company, with or without cause or prior notice.  The arbitrator may not change the terms and conditions of employment of an Associate unless required by federal, state or local law, or as a remedy for a violation of applicable law by the Company with respect to the Associate.

The Arbitrator shall have the power to award sanctions against a party for such party's failure to comply with this Agreement or with an order of the Arbitrator.  These sanctions may include assessment of costs or prohibitions of evidence.  If justified by a party's wanton or willful disregard of this Agreement, the Arbitrator may award the sanction of an adverse ruling in the arbitration against the party who has failed to comply.

### Award
Within thirty (30) calendar days after the later of the close of the hearing or the receipt of post-hearing briefs, if any, the Arbitrator shall mail to the parties a written decision.  The decision shall specify appropriate remedies, if any, if a violation of law is found.  If the Associate's claim arises under federal or state statutory law, or if the law requires them to make the Agreement enforceable, the award should include findings of fact and conclusions of law; otherwise, the inclusion of such findings and conclusion is at the Arbitrator's discretion.  The parties to an arbitration shall be provided with a copy of the Arbitrator's award.

## Fees and Expenses

## Costs Other Than Attorney Fees

### Definitions
Costs of an arbitration include the daily or hourly fees and expenses (including travel) of the Arbitrator who decides the case, filing or administrative fees charged by the AAA, the cost of a reporter who transcribes the proceeding, and expenses of renting a room in which the arbitration is held.  Incidental costs include such items as photocopying or the costs of producing witnesses or proof.

### Filing Fee/Costs of Arbitration
An Associate initiating arbitration shall pay the cost of arbitration up to a maximum of the least of one (1) day's base pay or One Hundred Twenty-Five Dollars ($125), whichever is less.  Upon filing the request for arbitration, the Associate shall remit such fee.  The Company shall pay the remainder of the costs of the arbitration.  The Company shall pay the entire filing fee should it initiate arbitration.  Except as provided below, each party shall pay its own incidental costs, including attorney's fees.

The AAA has developed guidelines for waiving administrative fees.  This Plan is subject to those guidelines.

### Reimbursement for Legal Fees or Costs
The program does not infringe on either party's right to consult with an attorney at any time.  In fact, the Company will reimburse an Associate for this legal consultation and/or representation during Step 4 of the program, at a maximum benefit of Two Thousand Five Hundred Dollars ($2,500) per Associate in a rolling twelve (12) month period.  If the Associate is not represented by counsel, the Company will reimburse an Associate for incidental costs up to a maximum of Five Hundred Dollars ($500) per Associate in a rolling twelve (12) month period.  The Associate will not be entitled to such reimbursement by the Company if the Arbitrator determines the arbitration claim by the Associate was frivolously filed.  Any reimbursement to the Associate will occur following the conclusion of the proceedings upon submission of the Associate's bills for costs of legal services or incidental costs.

### Shifting of Costs
If the Associate prevails in arbitration, whether or not monetary damages or remedies are awarded, the filing fee shall be refunded to the Associate.  The Arbitrator may (based on the facts and circumstances) also require that the Company pay the Associate's share of the costs of arbitration and incidental costs.

### Remedies and Damages
Upon a finding that a party has sustained its burden of persuasion in establishing a violation of applicable law, the Arbitrator shall have the same power and authority as would a judge to grant any substantive relief, including costs and attorney's fees, that a court could grant, in conformance with applicable principles of common, decisional and statutory law in the relevant jurisdiction.

### Settlement
The parties may settle their dispute at any time without involvement or approval of the Arbitrator.

### Enforceability
The arbitration agreement, the arbitration proceedings, and any award rendered pursuant to them shall be solely interpreted under, enforceable in accordance with, and subject to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. regardless of the state in which the arbitration is held or the substantive law applied in the arbitration.  If for any reason the Federal Arbitration Act is inapplicable to enforce this Agreement, the Parties agree it will be enforced under the governing state arbitration statute(s).

EXHIBIT ONE

**Appeal Rights**

The decision rendered by the Arbitrator shall be final and binding as to both the Associate and the Company.  Either party may appeal the Arbitrator's decision to a court in accordance with the provisions of the Federal Arbitration Act, 9 U.S.C. § 1, et seq.

**Severability/Conflict with Law**

In the event that any of these provisions are held to be unlawful or unenforceable, the conflicting rule or procedure shall be severed, unless specifically provided otherwise, such as the anti-severability provision in Article 11.f.ii.

In the event of a severance with respect to a particular rule or procedure, the remainder of these rules and procedures shall not be affected.  A severance of one of these rules or procedures shall apply only in regard to the particular jurisdiction and the particular dispute in which the rule or procedure was determined to be in conflict with applicable law.  In all other jurisdictions and/or disputes, this Agreement shall apply in full force and effect.

**Cancellation or Modification of Dispute Resolution Rules and Procedures or Program**

The Company may alter this Agreement or cancel the program in its entirety upon giving thirty (30) days written notice to Associates.  If such notice is not provided to an Associate, the version of this Agreement that covered the Associate prior to the modification or cancellation shall govern.

**THE FOLLOWING IS INCLUDED FOR YOUR REFERENCE, IT IS A COPY OF THE *AMERICAN ARBITRATION ASSOCIATION EMPLOYMENT ARBITRATION RULES AND MEDIATION PROCEDURE* THAT WILL APPLY TO THE BINDING ARBITRATION PROCESS DESCRIBED ABOVE.  THESE RULES ARE ALSO AVAILABLE ON THE AMERICAN ARBITRATION ASSOCIATION'S WEBSITE:** http://www.adr.org/aaa/faces/rules/searchrules

# American Arbitration Association Employment Arbitration

## Rules and Mediation Procedures

**1. Applicable Rules of Arbitration**

The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its Employment Arbitration Rules and Mediation Procedures or for arbitration by the AAA of an employment dispute without specifying particular rules*. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.

If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the party to obtain a stay of arbitration from the court.These rules, and any amendment of them, shall apply in the form in effect at the time the demand for arbitration or submission is received by the AAA.

*The National Rules for the Resolution of Employment Disputes have been re-named the Employment Arbitration Rules and Mediation Procedures. Any arbitration agreements providing for arbitration under its National Rules for the Resolution of Employment Disputes shall be administered pursuant to these Employment Arbitration Rules and Mediation Procedures.

**2. Notification**

An employer intending to incorporate these rules or to refer to the dispute resolution services of the AAA in an employment ADR plan, shall, at least 30 days prior to the planned effective date of the program:

i. notify the Association of its intention to do so and,

ii. provide the Association with a copy of the employment dispute resolution plan.

Compliance with this requirement shall not preclude an arbitrator from entertaining challenges as provided in Section 1. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

**3. AAA as Administrator of the Arbitration**

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

**4. Initiation of Arbitration**

Arbitration shall be initiated in the following manner.

a. The parties may submit a joint request for arbitration.

b. In the absence of a joint request for arbitration:

c. The initiating party (hereinafter "Claimant[s]") shall:

d. File a written notice (hereinafter "Demand") of its intention to arbitrate at any office of the AAA, within the time limit established by the applicable statute of limitations. Any dispute over the

EXHIBIT A TO DECLARATION

timeliness of the demand shall be referred to the arbitrator. The filing shall be made in duplicate, and each copy shall include the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location.

e. Simultaneously provide a copy of the Demand to the other party (hereinafter "Respondent[s]").

f. Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.

g. The Respondent(s) may file an Answer with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The Answer shall provide the Respondent's brief response to the claim and the issues presented. The Respondent(s) shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Claimant. If no answering statement is filed within the stated time, Respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

h. The Respondent(s):

i. May file a counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The filing shall be made in duplicate. The counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought.

j. Simultaneously shall send a copy of any counterclaim to the Claimant.

k. Shall include with its filing the applicable filing fee provided for by these rules.

l. The Claimant may file an Answer to the counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the counterclaim. The Answer shall provide Claimant's brief response to the counterclaim and the issues presented. The Claimant shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Respondent(s). If no answering statement is filed within the stated time, Claimant will be deemed to deny the counterclaim. Failure to file an answering statement shall not operate to delay the arbitration.

m. The form of any filing in these rules shall not be subject to technical pleading requirements.

## 5. Changes of Claim

Before the appointment of the arbitrator, if either party desires to offer a new or different claim or counterclaim, such party must do so in writing by filing a written statement with the AAA and simultaneously provide a copy to the other party(s), who shall have 15 days from the date of such transmittal within which to file an answer with the AAA. After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator.

## 6. Jurisdiction

a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## 7. Administrative and Mediation Conferences

Before the appointment of the arbitrator, any party may request, or the AAA, in its discretion, may schedule an administrative conference with a representative of the AAA and the parties and/or their representatives. The purpose of the administrative conference is to organize and expedite the arbitration, explore its administrative aspects, establish the most efficient means of selecting an arbitrator, and to consider mediation as a dispute resolution option. There is no administrative fee for this service.

At any time after the filing of the Demand, with the consent of the parties, the AAA will arrange a mediation conference under its Mediation Procedures to facilitate settlement. The mediator shall not be any arbitrator appointed to the case, except by mutual written agreement of the parties. There is no additional filing fee for initiating a mediation under the AAA Mediation Procedures for parties to a pending arbitration.

## 8. Arbitration Management Conference

As promptly as practicable after the selection of the arbitrator(s), but not later than 60 days thereafter, an arbitration management conference shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the Arbitration Management Conference will be conducted by telephone conference call rather than in person. At the Arbitration Management Conference the matters to be considered shall include, without limitation

i. the issues to be arbitrated;

ii. the date, time, place, and estimated duration of the hearing;

iii. the resolution of outstanding discovery issues and establishment of discovery parameters;

iv. the law, standards, rules of evidence and burdens of proof that are to apply to the proceeding;

v. the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues;

vi. the names of witnesses (including expert witnesses), the scope of witness testimony, and witness exclusion;

vii. the value of bifurcating the arbitration into a liability phase and damages phase;

viii. the need for a stenographic record;

ix. whether the parties will summarize their arguments orally or in writing;

x. the form of the award;

xi. any other issues relating to the subject or conduct of the arbitration;

xii. the allocation of attorney's fees and costs;

xiii. the specification of undisclosed claims;

xiv. the extent to which documentary evidence may be submitted at the hearing;

xv. the extent to which testimony may be admitted at the hearing telephonically, over the internet, by

written or video-taped deposition, by affidavit, or by any other means;

xvi. any disputes over the AAA's determination regarding whether the dispute arose from an individually-negotiated employment agreement or contract, or from an employer-promulgated plan (see Costs of Arbitration section).

The arbitrator shall issue oral or written orders reflecting his or her decisions on the above matters and may conduct additional conferences when the need arises.

There is no AAA administrative fee for an Arbitration Management Conference.

### 9. Discovery
The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

The AAA does not require notice of discovery related matters and communications unless a dispute arises. At that time, the parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

### 10. Fixing of Locale (the city, county, state, territory, and/or country of the Arbitration)
If the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator(s), after their appointment to make a final determination on the locale. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

### 11. Date, Time and Place (the physical site of the hearing within the designated locale) of Hearing
The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

### 12. Number, Qualifications and Appointment of Neutral Arbitrators
a. If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator.

b. Qualifications

i. Neutral arbitrators serving under these rules shall be experienced in the field of employment law.

ii. Neutral arbitrators serving under these rules shall have no personal or financial interest in the results of the proceeding in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias.

iii. The roster of available arbitrators will be established on a non-discriminatory basis, diverse by gender, ethnicity, background, and qualifications.

iv. The AAA may, upon request of a party within the time set to return their list or upon its own initiative, supplement the list of proposed arbitrators in disputes arising out of individually-negotiated employment contracts with persons from the Commercial Roster, to allow the AAA to respond to the particular need of the dispute. In multi-arbitrator disputes, at least one of the arbitrators shall be experienced in the field of employment law.

c. If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:

i. Shortly after it receives the Demand, the AAA shall send simultaneously to each party a letter containing an identical list of names of persons chosen from the Employment Dispute Resolution Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

ii. If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.

iii. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

### 13. Party Appointed Arbitrators
a. If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed.

b. Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-16 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-16(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards. The notice of appointment, with the name, address, and contact information of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

c. If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

d. If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

### 14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties
a. If, pursuant to Section R-13, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.

b. If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

c. If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-12, a list selected from the National Roster, and the appointment of the chairperson shall be

made as provided in that Section.

### 15. Disclosure

a. Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.

b. Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

c. In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-15 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

### 16. Disqualification of Arbitrator

a. Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:

i. partiality or lack of independence,

ii. inability or refusal to perform his or her duties with diligence and in good faith, and

iii. any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

b. Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

### 17. Communication with Arbitrator

a. No party and no one acting on behalf of any party shall communicate ex parte with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate ex parte with a candidate for direct appointment pursuant to Section R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

b. Section R-17(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-16(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-16(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-17(a) should nonetheless apply prospectively.

### 18. Vacancies

a. If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with applicable provisions of these Rules.

b. In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

c. In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

### 19. Representation

Any party may be represented by counsel or other authorized representatives. For parties without representation, the AAA will, upon request, provide reference to institutions which might offer assistance. A party who intends to be represented shall notify the other party and the AAA of the name and address of the representative at least 10 days prior to the date set for the hearing or conference at which that person is first to appear. If a representative files a Demand or an Answer, the obligation to give notice of representative status is deemed satisfied.

### 20. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcript is agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

### 21. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

### 22. Attendance at Hearings

The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator also shall have the authority to decide whether any person who is not a witness may attend the hearing.

### 23. Confidentiality

The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

### 24. Postponements

The arbitrator: (1) may postpone any hearing upon the request of a party for good cause shown; (2) must postpone any hearing upon the mutual agreement of the parties; and (3) may postpone any hearing on his or her own initiative.

### 25. Oaths

Before proceeding with the first hearing, each arbitrator shall take an oath of office. The oath shall be provided to the parties prior to the first hearing. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

### 26. Majority Decision

All decisions and awards of the arbitrators must be by a majority, unless the unanimous decision of all arbitrators is expressly required by the arbitration agreement or by law.

### 27. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving

party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

### 28. Order of Proceedings

A hearing may be opened by: (1) recording the date, time, and place of the hearing; (2) recording the presence of the arbitrator, the parties, and their representatives, if any; and (3) receiving into the record the Demand and the Answer, if any. The arbitrator may, at the beginning of the hearing, ask for statements clarifying the issues involved.

The parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court.

Witnesses for each party shall submit to direct and cross examination.

With the exception of the rules regarding the allocation of the burdens of proof and going forward with the evidence, the arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute. When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including web conferencing, internet communication, telephonic conferences and means other than an in-person presentation of evidence. Such alternative means must still afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and when involving witnesses, provide that such witness submit to direct and cross-examination.

The arbitrator, in exercising his or her discretion, shall conduct the proceedings with a view toward expediting the resolution of the dispute, may direct the order of proof, bifurcate proceedings, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

Documentary and other forms of physical evidence, when offered by either party, may be received in evidence by the arbitrator.

The names and addresses of all witnesses and a description of the exhibits in the order received shall be made a part of the record.

### 29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be based solely on the default of a party. The arbitrator shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of the award.

### 30. Evidence

The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party or arbitrator is absent, in default, or has waived the right to be present, however "presence" should not be construed to mandate that the parties and arbitrators must be physically present in the same location.

An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary. The arbitrator may in his or her discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party is absent, in default, or has waived the right to be present.

If the parties agree or the arbitrator directs that documents or other evidence may be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator, unless the parties agree to a different method of distribution. All parties shall be afforded an opportunity to examine such documents or other evidence and to lodge appropriate objections, if any.

### 31. Inspection

Upon the request of a party, the arbitrator may make an inspection in connection with the arbitration. The arbitrator shall set the date and time, and the AAA shall notify the parties. In the event that one or all parties are not present during the inspection, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

### 32. Interim Measures

At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, as stated in Rule 39(d), Award.

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

### 33. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Rule 30 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing. The time limit within which the arbitrator is required to make the award shall commence to run, in the absence of other agreements by the parties, upon closing of the hearing.

### 34. Reopening of Hearing

The hearing may be reopened by the arbitrator upon the arbitrator's initiative, or upon application of a party for good cause shown, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

### 35. Waiver of Oral Hearing

The parties may provide, by written agreement, for the waiver of oral hearings. If the parties are unable to agree as to the procedure, upon the appointment of the arbitrator, the arbitrator shall specify a fair and equitable procedure.

### 36. Waiver of Objection/Lack of Compliance with These Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these

rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object.

### 37. Extensions of Time
The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

### 38. Serving of Notice
a. Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

b. The AAA, the arbitrator, and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (e-mail), or other methods of communication.

c. Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

### 39. The Award
a. The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator. Three additional days are provided if briefs are to be filed or other documents are to be transmitted pursuant to Rule 30.

b. An award issued under these rules shall be publicly available, on a cost basis. The names of the parties and witnesses will not be publicly available, unless a party expressly agrees to have its name made public in the award.

c. The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

d. The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party and, in the event any administrative fees or expenses are due the AAA, in favor of the AAA, subject to the provisions contained in the Costs of Arbitration section.

e. If the parties settle their dispute during the course of the arbitration and mutually request, the arbitrator may set forth the terms of the settlement in a consent award.

f. The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail, addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any manner that may be required by law.

g. The arbitrator's award shall be final and binding.

### 40. Modification of Award
Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

### 41. Release of Documents for Judicial Proceedings
The AAA shall, upon the written request of a party, furnish to the party, at that party's expense, certified copies of any papers in the AAA's case file that may be required in judicial proceedings relating to the arbitration.

### 42. Applications to Court
a. No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

b. Neither the AAA nor any arbitrator in a proceeding under these rules is or shall be considered a necessary or proper party in judicial proceedings relating to the arbitration.

c. Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction.

d. Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

### 43. Administrative Fees
As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

AAA fees shall be paid in accordance with the Costs of Arbitration Section (see pages 45-53).

The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. (To ensure that you have the most current information, see our website at www.adr.org).

### 44. Neutral Arbitrator's Compensation
Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and moneys collected by the AAA for this purpose.

Arbitrator compensation shall be borne in accordance with the Costs of Arbitration section.

### 45. Expenses
Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for

either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator shall be borne in accordance with the Costs of Arbitration section.

### 46. Deposits
The AAA may require deposits in advance of any hearings such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee, if any, and shall render an accounting and return any unexpended balance at the conclusion of the case.

### 47. Suspension for Non-Payment
If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings.

### 48. Interpretation and Application of Rules
The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be resolved by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other procedures shall be interpreted and applied by the AAA.

### Costs of Arbitration (including AAA Administrative Fees)
This Costs of Arbitration section contains two separate and distinct sub-sections. Initially, the AAA shall make an administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract.

If a party disagrees with the AAA's determination, the parties may bring the issue to the attention of the arbitrator for a final determination. The arbitrator's determination will be made on documents only, unless the arbitrator deems a hearing is necessary.

### For Disputes Arising Out of Employer-Promulgated Plans*:
Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. The employer shall pay the arbitrator's compensation unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation, expenses as defined in section (iv) below, and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

*Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 877.528.0880 if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003.)

### (i) Filing Fees
In cases before a single arbitrator, a nonrefundable filing fee capped in the amount of $175 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A nonrefundable fee in the amount of $925 is payable in full by the employer, unless the plan provides that the employer pay more.

In cases before three or more arbitrators, a nonrefundable filing fee capped in the amount of $175 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A nonrefundable fee in the amount of $1,800 is payable in full by the employer, unless the plan provides that the employer pay more.

There shall be no filing fee charged for a counterclaim.

### (ii) Hearing Fees
For each day of hearing held before a single arbitrator, an administrative fee of $300 is payable by the employer.

For each day of hearing held before a multi-arbitrator panel, an administrative fee of $500 is payable by the employer.

There is no AAA hearing fee for the initial Arbitration Management Conference.

### (iii) Postponement/Cancellation Fees
A fee of $150 is payable by a party causing a postponement of any hearing scheduled before a single arbitrator.

A fee of $250 is payable by a party causing a postponement of any hearing scheduled before a multi-arbitrator panel.

### (iv) Hearing Room Rental
The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the employer.

### (v) Abeyance Fee
Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

### (vi) Expenses
All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer.

### For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts:
The AAA's Commercial Fee Schedule, below, will apply to disputes arising out of individually-negotiated employment agreements and contracts, even if such agreements and contracts reference or incorporate an employer-promulgated plan.

### Administrative Fee Schedules (Standard and Flexible Fee)

The AAA has two administrative fee options for parties filing claims or counterclaims, the Standard Fee Schedule and Flexible Fee Schedule. The Standard Fee Schedule has a two payment schedule, and the

# EXHIBIT ONE

Flexible Fee Schedule has a three payment schedule which offers lower initial filing fees, but potentially higher total administrative fees of approximately 12% to 19% for cases that proceed to a hearing.
The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

In an effort to make arbitration costs reasonable for consumers, the AAA has a separate fee schedule for consumer-related disputes. Please refer to Section C-8 of the Supplementary Procedures for Consumer-Related Disputes when filing a consumer-related claim. Note that the Flexible Fee Schedule is not available on cases administered under these supplementary procedures.

The AAA applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any objections concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

Fees for incomplete or deficient filings: Where the applicable arbitration agreement does not reference the AAA, the AAA will attempt to obtain the agreement of the other parties to the dispute to have the arbitration administered by the AAA. However, where the AAA is unable to obtain the agreement of the parties to have the AAA administer the arbitration, the AAA will administratively close the case and will not proceed with the administration of the arbitration. In these cases, the AAA will return the filing fees to the filing party, less the amount specified in the fee schedule below for deficient filings.

Parties that file demands for arbitration that are incomplete or otherwise do not meet the filing requirements contained in these Rules shall also be charged the amount specified below for deficient filings if they fail or are unable to respond to the AAA's request to correct the deficiency.

Fees for additional services: The AAA reserves the right to assess additional administrative fees for services performed by the AAA beyond those provided for in these Rules which may be required by the parties' agreement or stipulation.

### (i) Standard Fee Schedule

An Initial Filing Fee is payable in full by a filing party when a claim, counterclaim, or additional claim is filed. A Final Fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the Final Fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Final Fee |
|---|---|---|
| Above $0 to $10,000 | $775 | $200 |
| Above $10,000 to $75,000 | $975 | $300 |
| Above $75,000 to $150,000 | $1,850 | $750 |
| Above $150,000 to $300,000 | $2,800 | $1,250 |
| Above $300,000 to $500,000 | $4,350 | $1,750 |
| Above $500,000 to $1,000,000 | $6,200 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,200 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,200 | $4,000 |
| Above $10,000,000 | Base fee of $12,800 plus .01% of the amount above $10,000,000<br><br>Fee Capped at $65,000 | $6,000 |
| Nonmonetary Claims1 | $3,350 | $1,250 |
| Deficient Claim Filing Fee2 | $350 | |
| Additional Services3 | | |

1 This fee is applicable when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to a filing fee of $10,200.

2 The Deficient Claim Filing Fee shall not be charged in cases filed by a consumer in an arbitration governed by the Supplementary Procedures for the Resolution of Consumer-Related Disputes, or in cases filed by an Employee who is submitting their dispute to arbitration pursuant to an employer promulgated plan.

3 The AAA may assess additional fees where procedures or services outside the Rules sections are required under the parties' agreement or stipulation.

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,800 for the Initial Filing Fee, plus a $1,250 Final Fee. Expedited Procedures are applied in any case where no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration costs.

Parties on cases filed under either the Flexible Fee Schedule or the Standard Fee Schedule that are held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

For more information, please contact your local AAA office, case management center, or our Customer Service desk at 1-800-778-7879.

### (ii) Refund Schedule for Standard Fee Schedule

The AAA offers a refund schedule on filing fees connected with the Standard Fee Schedule. For cases with claims up to $75,000, a minimum filing fee of $350 will not be refunded. For all other cases, a minimum fee of $600 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

EXHIBIT A TO DECLARATION

# EXHIBIT ONE

> 100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.

> 50% of the filing fee, will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing.

> 25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing.

No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: The date of receipt of the demand for arbitration with the AAA will be used to calculate refunds of filing fees for both claims and counterclaims.

### (iii) Flexible Fee Schedule

A non-refundable Initial Filing Fee is payable in full by a filing party when a claim, counterclaim, or additional claim is filed. Upon receipt of the Demand for Arbitration, the AAA will promptly initiate the case and notify all parties as well as establish the due date for filing of an Answer, which may include a Counterclaim. In order to proceed with the further administration of the arbitration and appointment of the arbitrator(s), the appropriate, non-refundable Proceed Fee outlined below must be paid.

If a Proceed Fee is not submitted within ninety (90) days of the filing of the Claimant's Demand for Arbitration, the Association will administratively close the file and notify all parties.

No refunds or refund schedule will apply to the Filing or Proceed Fees once received.

The Flexible Fee Schedule below also may be utilized for the filing of counterclaims. However, as with the Claimant's claim, the counterclaim will not be presented to the arbitrator until the Proceed Fee is paid.

A Final Fee will be incurred for all claims and/or counterclaims that proceed to their first hearing. This fee will be payable in advance when the first hearing is scheduled and will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified of a cancellation at least 24 hours before the time of the scheduled hearing, the Final Fee will remain due and will not be refunded.

All fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Proceed Fee | Final Fee |
|---|---|---|---|
| Above $0 to $10,000 | $400 | $475 | $200 |
| Above $10,000 to $75,000 | $625 | $500 | $300 |
| Above $75,000 to $150,000 | $850 | $1250 | $750 |
| Above $150,000 to $300,000 | $1,000 | $2125 | $1,250 |
| Above $300,000 to $500,000 | $1,500 | $3,400 | $1,750 |
| Above $500,000 to $1,000,000 | $2,500 | $4,500 | $2,500 |
| Above $1,000,000 to $5,000,000 | $2,500 | $6,700 | $3,250 |
| Above $5,000,000 to $10,000,000 | $3,500 | $8,200 | $4,000 |
| Above $10,000,000 | $4,500 | $10,300 plus .01% of claim amount over $10,000,000 up to $65,000 | $6,000 |
| Nonmonetary1 | $2,000 | $2,000 | $1,250 |
| Deficient Claim Filing Fee | $350 | | |
| Additional Services2 | | | |

1 This fee is applicable when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to a filing fee of $3,500 and a proceed fee of $8,200.

2 The AAA reserves the right to assess additional administrative fees for services performed by the AAA beyond those provided for in these Rules and which may be required by the parties' agreement or stipulation.

For more information, please contact your local AAA office, case management center, or our Customer Service desk at 1-800-778-7879 . All fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $1,000 for the Initial Filing Fee; $2,125 for the Proceed Fee; and $1,250 for the Final Fee.

Under the Flexible Fee Schedule, a party's obligation to pay the Proceed Fee shall remain in effect regardless of any agreement of the parties to stay, postpone or otherwise modify the arbitration proceedings. Parties that, through mutual agreement, have held their case in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be closed.

Note: The date of receipt by the AAA of the demand for arbitration will be used to calculate the ninety (90) day time limit for payment of the Proceed Fee.

There is no Refund Schedule in the Flexible Fee Schedule.

### (iv) Hearing Room Rental
The fees described above do not cover the cost of hearing rooms, which are available on a rental basis. Check with the AAA for availability and rates.

### (v) Abeyance Fee
Parties on cases filed under the Standard Fee Schedule that are held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

### (vi) Expenses
All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne equally by the parties.

EXHIBIT A TO DECLARATION

# Las Pregunatas mas frecuentes
# My V.O.I.C.E. Matters Program (Mi Voz Importa)

**1. Q: ¿Qué es el programa My Voice Matters (Mi Voz Importa)?**
A: VOICE es Valoración de los asuntos del otro y preocupación por el compromiso.  El programa incluye una <u>póliza de puertas abiertas mejorada</u> y la opción de <u>arbitraje</u>. Proporciona un marco para que los asociados puedan mantener conversaciones seguras y empoderadas de asuntos de trabajo y es una vía eficaz para la solución de desacuerdo. Este programa es más rápido y menos costoso que confiar en reclamos administrativos y demandas judiciales.

**2. Q: ¿Qué es la póliza de puertas abiertas mejorada?**
A: Ofrece varias maneras para que los asociados planten cuestiones de trabajo y preocupaciones.
   • A los supervisores o Recursos Humanos
   • A través de una línea telefónica dedicada al 855-726-3274
   • A través de un sitio web dedicado a www.pandarg.ethicspoint.com

**3. Q: ¿Es necesario inscribirse en la póliza de puertas abierta mejorada?**
A: No todos los empleados son automáticamente inscritos en la póliza de puertas abierta mejorada.

**4. Q: ¿Es necesario inscribirse en la opción de arbitraje?**
A: Sí puede inscribirse al completar el eModule.

**5. Q: ¿Qué es la opción de arbitraje?**
A: El programa MVMP proporciona una opción adicional para el arbitraje de las cuestiones que afectan los derechos de asociado legalmente protegidos, lo que puede prevenir el tiempo y el dinero necesarios para presentar una demanda.

**6. Q: ¿Cuáles son algunos ejemplos de los "derechos protegidos por la ley?"**
A: Usted está protegido de la discriminación basada en la raza, el origen étnico, color, religión, sexo, orientación sexual u origen, edad, estado civil, discapacidad, estado de salud, así como cualquier otra categoría protegida por la ley federal, estatal o local.

**7. Q: ¿Cómo puedo participar en la opción de arbitraje?**
A: Para nuevos asociados, son automáticamente inscritos como condición de contratación. Más tarde pueden elegir no participar mediante notificación a Panda dentro de 60 días de su acuerdo. Para los socios existentes, pueden participar en la opción arbitración al completar el eModule.

**8. Q: ¿Puedo inscribirme en la opción de arbitraje en el futuro si decido no participar ahora?**
A: Sí, habrá un período de inscripción anual cuando usted puede inscribirse en el programa.

**9. Q: ¿Cuáles son los beneficios del MVMP?**
A: El MVMP ofrece varias opciones (supervisor o Recursos Humanos, línea telefónica, sitio web) para plantear cuestiones de trabajo y le da la opción de hacerlo de forma anónima. También ofrece la opción de arbitraje, que puede prevenir el tiempo y el dinero necesario para continuar demanda de resolución de conflictos.

**10. Q: ¿Cuáles son los beneficios del programa de arbitraje?**
A: Usted paga sólo una cuota de presentación de $125.00 (o un día de salario, si es menor), y Panda cubre los honorarios de los árbitros. Además, la Compañía reembolsará una parte de sus costos legal-

es. Usted todavía tiene la opción de presentar reclamos administrativos con las agencias federales o estatales y la opción de demandar todavía está disponible a través del arbitraje. Usted también tiene la opción de que las decisiones arbitrales sean revisadas por un tribunal.

**11. Q: ¿Cuánto dura el proceso de arbitraje?**
A: Es más corto que un juicio normal pero hay varios pasos que deben llevarse a cabo.

**12. Q: ¿Qué problemas o inquietudes pueden ser resueltas por el MVMP?**
A: Usted puede utilizar el MVMP para resolver cualquier problema relacionado con el trabajo o inquietud que tenga con sus compañeros de trabajo, gerentes, o el ambiente.

**13. Q: ¿Cuál es la diferencia entre el arbitraje y la mediación?**
A: La mediación es cuando un tercero ayuda a que ambos lados lleguen a un acuerdo, mientras que en el arbitraje un árbitro toma la decisión.

**14. Q: ¿Es inscribirse en el programa de arbitraje una condición de continuidad del empleo?**
A: No, sin embargo, es una condición de la contratación de nuevos asociados. Usted tendrá que inscribirse en el programa de arbitraje para ser contratados, pero puede "Opt Out" (optar por no) dentro de 60 días mediante la presentación de una solicitud por escrito.

**15. Q: ¿Seré recordado que el plazo para "Opt Out" se acerca?**
A: No, usted será responsable por excluirse dentro el plazo si decide hacerlo.

**16. Q: ¿Quién va a saber si estoy inscrito o he elegido «Opt Out» (optar por no) de MVMP?**
A: El coordinador MVMP, y ciertos individuos en Panda que son responsables de la administración de la inscripción y el mantenimiento del programa.

**17. Q: ¿Qué es el proceso de MVMP?**
A: <u>Paso 1:</u> es la Póliza de Puertas Abiertas Mejorada. Asociados son alentados a resolver los problemas relacionados con el trabajo con su supervisor inmediato o el supervisor al siguiente nivel. También puede ponerse en contacto con recursos humanos para asistencia en cualquier momento. Si usted no está satisfecho con el resultado en el paso 1 se puede ir a
<u>Paso 2:</u> cuando un director de recursos humanos, que no participó en el Paso 1 revisará su caso y le responderá por escrito. Si no está satisfecho con los resultados de Paso 2 y su situación involucra derechos protegidos por la ley, usted puede ir a
<u>Paso 3:</u> plantear la cuestión directamente a un coordinador MVMP. Si su situación no puede ser resuelta en el Paso 3, usted puede ir a
<u>Paso 4:</u> peticionar Arbitraje.

**18. Q: ¿Si elijo "Opt Out" (optar por no) del programa de arbitraje, puedo seguir usando el MVMP?**
A: Sí, usted todavía puede usar el MVMP para los pasos 1 y 2.

**19. Q: ¿Existen otras opciones para reportar mis preocupaciones además de ir a mi supervisor o Recursos Humanos?**
A: Sí, puede llamar a nuestra línea de ayuda al 855-752-3274 o visitar nuestro pagina web en www.pandarg.ethicspoint.com para reportar su preocupación anónimamente. También puede comprobar el estado de su preocupación por el uso de su número de caso.

EXHIBIT A TO DECLARATION

EXHIBIT ONE

**20. Q: ¿Puedo permanecer anónimo (mi nombre no se utiliza) si uso el MVMP?**

A: Sí, usted no tiene que proveer su nombre.

**21. Q: ¿Puedo reportar mis preocupaciones en español?**

A: Sí, usted puede reportar su preocupación en español a través de la línea telefónica y página web.

**22. Q: ¿Será la respuesta por escrito o verbal?**

A: Las respuestas serán por escrito o verbal según el paso del MVMP.

**23. Q: ¿Qué significa "La decisión es vinculante"?**

A: Una decisión vinculante es cuando usted tiene que seguir la decisión de un tercero o de un tribunal (el juez).

**24. Q: ¿Qué puedo hacer si no recibo una decisión por escrito dentro de cuarenta y cinco (45) días de la fecha en que se hizo mi solicitud?**

A: Usted puede solicitar una revisión en el siguiente paso sin recibir una decisión en el paso anterior.

**25. Q: ¿Qué sucede si no presento una solicitud por escrito para revisión dentro de los treinta (30) días de la decisión en etapa anterior?**

A: El problema / preocupación no puede ser presentado para revisión al siguiente nivel.

**26. Q: ¿Me pagarán por el tiempo fuera del trabajo que necesito tomar para participar en el proceso de MVMP?**

A: Todo el proceso de revisión (con la excepción de el arbitraje) se llevará a cabo sin la necesidad de que el asociado este presente. Si hace falta que el asociado haga una aclaración o que de una declaración el proceso se llevara a cabo durante las horas de trabajo. Por lo tanto, él / ella será pagado.

**27. Q: ¿Qué debo hacer si me siento represalias en mi contra durante cualquier paso del proceso MVMP?**

A: Notifique al coordinador de MVMP al 626-372-8167 inmediatamente.

**28. Q: ¿Sabré qué medidas se han tomado en contra de otra persona?**

A: No, la respuesta sólo incluirá la información apropiada sobre cómo usted se vera afectado.

# REGLAS Y PROCEDIMIENTOS DEL PROGRAMA DE TEMAS MY V.O.I.C.E. (Valuing Other's Issues and Concerns for Engagement) [Valoración de los asuntos del otro y preocupación por el compromiso]

*5 de Julio del 2012*

*Si necesita algún servicio para ayudarle a leer y comprender este Documento y Acuerdo del  Programa de Temas My V.O.I.C.E. (Valuing Other's Issues and Concerns for Engagement) [Valoración de los asuntos del otro y preocupación por el compromiso] llame al Departamento de Recursos Humanos al 626-799-9898 extencion 6053.*

*Version 1.1.1*

**Ejemplo Gráfico [Traducción del gráfico]**

**NIVELES DE TEMAS MY V.O.I.C.E.**

| Paso 1: | Paso 2: | Paso 3: | Paso 4: |
|---|---|---|---|
| Política de Puertas Abiertas / Ops | Revisión por Recursos Humanos (HR) por parte de un Director de Recursos Humanos (HRD) | Coordinación de la Resolución de la Controversia / CPO | Arbitraje Vinculante |
| Paso 1: | Paso 2: | Paso 3: | Paso 4: |
| . El Asociado se reúne con el director gerente (GM) o gerente de segundo nivel (ACO)<br><br>. Apelación presentada ante supervisor de 3er nivel (RDO/ZVP)<br><br>. Gerente de RH facilita las conversaciones<br><br>. El Asociado puede también pasar directamente al Paso 2 (o 3) | . El Asociado apela dentro de los 30 días siguientes a la decisión de apelación final del Paso 1<br><br>. Investigación imparcial por HRD<br><br>. Decisión dentro de los<br><br>45 días a partir de la apelación | . Los temas que impliquen derechos protegidos por la ley pueden ser apelados dentro de los 30 días siguientes a las decisiones del Paso 2<br><br>. Decisión dentro de los<br><br>45 días a partir de la apelación<br><br>. La decisión contraria a la Empresa es vinculante | . Si una decisión del Paso 3 no es favorable al Asociado, el Asociado puede solicitar arbitraje<br><br>. El arbitraje es realizado por un tercero neutral<br><br>. La decisión es vinculante para el Asociado y para la Compañía |

## INTRODUCCIÓN

Panda Restaurant Group, Inc., y sus subsidiarias, casas matrices, afiliadas y divisiones (colectivamente, la **"Compañía"**), se preocupa por las personas que trabajan aquí. Las personas son la base de la pirámide Panda y el Desarrollo de las Personas es esencial para nuestra Visión 2020. Las personas forman la base de los valores y declaración de la misión de nuestra Compañía.  Sabemos que de vez en cuando los Asociados pueden tener problemas en el trabajo. También sabemos que este tipo de problemas, sin importar cuan insignificantes sean, pueden convertirse en problemas mayores sin una atención y resolución anticipadas.

EXHIBIT A TO DECLARATION

En 2011, la Compañía adoptó una mentalidad y una "nueva forma de ser" que tomó partido por todos los Asociados.

Crear un ambiente de conversación seguro y participativo para que los Asociados de Panda se escuchen, se valoren y se desafíen unos a otros a mantener viva y en acción nuestra Visión 2020.

Juntos, Peggy, Andrew, nuestro Equipo Directivo, y cada líder de Panda están alineados para crear un espacio en que el Asociado pueda expresarse por completo y ser escuchado con el propósito de avanzar en la Visión 2020. Como parte del proceso, la Compañía decidió buscar (y fomentar) maneras eficaces de comunicación para todos los Asociados y resolver muchas cuestiones que pueden surgir en el lugar de trabajo.

Nuestra Política de Puertas Abiertas fue un buen lugar desde donde comenzar. A través de los años, la Compañía ha trazado una política en el Manual del Asociado y una nueva práctica diaria para ayudar a los Asociados a manejar los problemas trabajando con los supervisores y/o Recursos Humanos.

Hoy en día, tenemos el placer de anunciar la transformación de nuestra Política de Puertas Abiertas en el Programa My V.O.I.C.E. (**V**aluing **O**ther's **I**ssues and **C**oncerns for **E**ngagement) [Valoración de los asuntos del otro y preocupación por el compromiso] (el Programa "**MVM**").

### RESUMEN

Estamos convencidos de que una revisión interna completa de las diferencias en el nivel más cercano a la fuente de las diferencias es la manera más rápida y productiva de resolver estas controversias. También mantiene buenas relaciones laborales y evita confrontaciones innecesarias. Así que, nuestra Política de Puertas Abiertas (**Paso 1**) continúa siendo la base de nuestro programa. Debe ser utilizada antes de tomar el siguiente paso.

Si no está satisfecho con el resultado del Paso 1, puede solicitar que su tema sea revisado por el Departamento de Recursos Humanos ("**RH**") (**Paso 2**). Este responderá a su solicitud por escrito. Los Pasos 1 y 2 están disponibles para cualquier diferencia relacionada con su empleo en la Compañía.

Si no está satisfecho con el resultado del Paso 2, y cree que su situación involucra derechos protegidos por la ley, puede realizar una Solicitud de Reconsideración (**Paso 3**). El Paso 3 le da opción de una revisión personal de su caso por parte de un representante de la Oficina del Programa MVM, quien reporta directamente al Responsable de Recursos Humanos de la Compañía.

En aquellas situaciones relativamente raras en que, por cualquier razón, su controversia no pueda ser resuelta en el Paso 3 y desee proseguir, el Programa MVM ofrece una manera privada y profesional de resolverla fuera de la Compañía. Puede solicitar Arbitraje (**Paso 4**). Este proceso involucra a un Árbitro. El Árbitro es un tercero profesional y neutral seleccionado por usted y por la Compañía. Después de una audiencia, el Árbitro emite una decisión final. La decisión es vinculante para la Compañía y para usted.

Sin embargo, nada de lo dispuesto en el Programa MVM le impide presentar, en cualquier momento, una acusación o queja en una agencia administrativa gubernamental como la EEOC (Comisión para la Oportunidad Equitativa en el Empleo de los Estados Unidos) o el NLRB (Consejo Nacional de Relaciones Laborales), por ejemplo.

### ELEGIBILIDAD E INSCRIPCIÓN

Todos los nuevos Asociados aceptan ser cubiertos por el Programa MVM, incluyendo el Arbitraje **(Paso 4)**, al aceptar empleo en la Compañía después de o despues del 29 de Junio de 2012 (la **"Fecha de Vigencia"**).

Sin embargo, el Arbitraje — Paso 4 es completamente voluntario. A los nuevos Asociados se les da la opción de excluirse del Arbitraje – Paso 4 completando un formulario de elección de exclusión ("opt out") dentro de los **60** días naturales a partir de la Fecha de Vigencia o de la fecha de su contratación, la que sea posterior. Los nuevos asociados recibirán el reconocimiento y acuerdo electrónico con relación al Programa MVM como parte del proceso de incorporación ("onboarding") a TALEO.

Los Asociados ya existentes y activos contratados antes de la Fecha de Vigencia (colectivamente, los **"Asociados Existentes"**) serán invitados a inscribirse en el Programa MVM en o alrededor de la Fecha de Vigencia. Para los Asociados Existentes que opten por inscribirse, su fecha de inscripción constituirá la Fecha de Vigencia de su participación en el Programa MVM (también conocida como la **"Fecha de Vigencia"**). A los Asociados Existentes que no se inscriban en el Programa MVM se los continuará invitando a inscribirse en el Programa MVM en o alrededor de cada aniversario de la Fecha de Vigencia. Los Asociados Existentes recibirán un folleto y un acuse de recibo por correo o por algún otro método de comunicación para inscribirse.

Hasta y a menos que un nuevo Asociado opte por excluirse del arbitraje dentro del plazo establecido, o que sea un Asociado Existente que se haya inscripto en el Programa MVM, el Asociado estará cubierto por Arbitraje **(Paso 4).**

### CÓMO FUNCIONA EL PROGRAMA MVM

#### Paso 1 - Puertas Abiertas

El programa Puertas Abiertas tiene cuatro niveles de procedimiento para que los Asociados planteen y discutan un problema. Primero, la política de puertas abiertas de la Compañía alienta a los Asociados a tratar de resolver cualquier problema en el trabajo con sus supervisores directos. Pero, si el problema se relaciona con el supervisor inmediato del Asociado, el Asociado contactará al supervisor inmediato del supervisor del Asociado. Segundo, si el Asociado no está satisfecho con la respuesta del primer supervisor o necesita hablar con alguien que no sea el supervisor, el Asociado puede llevar el problema al siguiente nivel superior de supervisión. Por último, si un problema no se resuelve a su debido tiempo a partir de la reunión con la supervisión del segundo nivel o inmediato superior, el Asociado puede ponerse en contacto con el Director Regional de Operaciones, el Vicepresidente de la Zona o el miembro del Equipo Directivo Superior (si el Asociado trabaja en el Centro de Soporte).

El Paso 1 también puede ser iniciado por un Asociado utilizando la Línea Directa de Panda (626)799-9898 extencion 6053 o comunicándose con RH. El programa Puertas Abiertas también contempla que el Asociado puede ponerse en contacto con RH para asesoramiento o asistencia en cualquier momento.

#### Paso 2 - Revisión por parte de RH

Si el Asociado no está satisfecho con el **Paso 1**, presenta una solicitud por escrito en RH para su revisión, dentro de los treinta (30) días a partir de la decisión tomada en el Paso 1. La queja se dirige al Director de RH (que no estuvo involucrado en el Paso 1), quien llevará a cabo una investigación imparcial. Luego se emite una decisión por escrito, generalmente dentro de los cuarenta y cinco (45) días a partir de la recepción de la solicitud de revisión. Junto con la decisión están las instrucciones para continuar al **Paso 3** si el Asociado no está satisfecho con los resultados del Paso 2.

Los Pasos 1 y 2 están disponibles para cualquier diferencia relacionada con su empleo en la Compañía. Los Pasos 3 y 4 están disponibles solo para reclamos que involucren derechos protegidos por la ley. Los **"derechos protegidos por la ley"** son las reclamaciones que el Asociado podría presentar ante un tribunal o una agencia administrativa.

## Paso 3 - Solicitud de Reconsideración

Para las reclamaciones que involucren derechos protegidos por la ley, si el Asociado no está satisfecho con los resultados del Paso 2, puede proseguir con el Paso 3 poniéndose en contacto con la Oficina del Programa MVM dentro de los treinta (30) días a partir de la decisión del Paso 2 para presentar una Solicitud de Reconsideración por escrito. Luego, el Representante del Programa MVM enviará al Asociado una confirmación de que la queja fue recibida. Un representante de la Oficina del Programa MVM, que reporta directamente al Responsable de Recursos Humanos de la Compañía, realiza entonces una revisión y proporciona al Asociado una decisión por escrito. La decisión generalmente se proporciona dentro de los cuarenta y cinco (45) días a partir de la recepción de la queja. Una decisión que respalda la reclamación del Asociado es definitiva y vinculante para la Compañía. Pero una decisión que deniega la reclamación del Asociado de cualquier manera puede ser impugnada mediante solicitud de arbitraje de conformidad con el Paso 4. Si la reclamación es denegada en el Paso 3, la Compañía informará al Asociado sobre los procedimientos para continuar con el **Paso 4.**

## Paso 4 - Reglas y Procedimientos del Arbitraje

### Artículo 1 - Personas cubiertas
ESTAS **REGLAS Y PROCEDIMIENTOS DEL ACUERDO DE RESOLUCIÓN ANTICIPADA DE CONTROVERSIAS DEL PROGRAMA MVM** (este **"Acuerdo"**) se aplica a partir de la Fecha de Vigencia estipulada en el Artículo 4, a todos los Asociados no sujetos a un contrato separado con la Compañía, sujeto a ciertas limitaciones que se detallan a continuación.

Eso significa que desde la Fecha de Vigencia, todos los nuevos Asociados contratados aceptan, como condición para ser empleados, someter a arbitraje cualquier disputa, incluyendo reclamaciones legales y de otro tipo, que no se hayan resuelto en el Paso 3. A los Empleados Existentes se los invitará a inscribirse en el Programa MVM cada aniversario.

Sin embargo, el Arbitraje (Paso 4) es una condición voluntaria del empleo. A los nuevos Asociados contratados se les da la opción de excluirse del arbitraje estipulado en el Paso 4 dentro de un tiempo establecido después de su inscripción al ser contratados. Las cuestiones en el Paso 4 son determinadas por un profesional de la Asociación Americana de Arbitraje en un proceso de arbitraje, en lugar de un proceso judicial. El arbitraje por lo tanto sustituye a cualquier derecho que pueda tener de ir a juicio y presentar su reclamación ante un jurado. Está cubierto por el Paso 4 a menos y hasta que ejercite la opción de excluirse del arbitraje dentro del plazo establecido. Ya sea que opte por permanecer cubierto por el arbitraje o por excluirse, esto no tendrá ningún efecto negativo en su empleo.

Cualquier asociado que experimente una interrupción en el servicio que presta en la Compañía de sesenta (60) días o menos, o que sea transferido de una subsidiaria, división o afiliada de Panda Restaurant Group a otra, sigue estando cubierto por el Arbitraje, a menos que el Asociado previamente se haya excluido durante el plazo establecido. Si el Asociado vuelve a ser empleado por la Compañía después de la interrupción del servicio mayor de sesenta (60) días, es tratado como un nuevo contratado y se le da la oportunidad de optar por excluirse del arbitraje durante el plazo estipulado.

### Artículo 2 - Reclamaciones sujetas a Arbitraje o excluidas del Arbitraje
Salvo limitaciones de otro tipo, todas las disputas legales relacionadas con el empleo, las controversias o reclamaciones que surjan de o, relacionadas con el empleo o el cese del empleo, tanto si se producen bajo lajurisprudencia o leyes estatutarias federales, estatales o locales (**"Reclamaciones relacionadas con el empleo"**), se resolverán exclusivamente por arbitraje definitivo y vinculante. El Arbitraje es administrado por la Asociación Americana de Arbitraje (**"AAA"**) en virtud del presente Acuerdo y la parte de las Reglas y Procedimientos de Mediación en materia de Empleo de la AAA que no entren en conflicto con este

Acuerdo. El Arbitraje se celebrará ante un tercero, árbitro neutral. El Árbitro se selecciona de conformidad con este Acuerdo. Si existen diferencias entre este Acuerdo y la parte de arbitraje sobre empleo de las Reglas y Procedimientos de Mediación en materia de Empleo de la AAA, será este Acuerdo el que prevalezca y se aplique.

El Arbitraje se aplicará a cualquiera disputa, controversia o reclamación de esa índole interpuestas por el Asociado ya sea en contra de la Compañía y/o en contra de cualquier empleado, funcionario, director o presunto agente de la Compañía. El Arbitraje también se aplicará a cualquiera disputa, controversia o reclamación civil de esa índole interpuesta por la Compañía contra el Asociado.

Todas las "Reclamaciones relacionadas con el empleo", tal como se definen a continuación, a partir de la Fecha de Vigencia, que surjan bajo ley estatutaria o común federal, estatal o local, se someterán a arbitraje. Simplemente a modo de ejemplo, las Reclamaciones relacionadas con el empleo incluyen, pero no se limitan a, reclamaciones que surjan de la Ley de Discriminación por Edad en el Empleo (ADEA por sus siglas en inglés), el Título VII de la Ley de Derechos Civiles de 1964, la Ley para Estadounidenses con Discapacidades (ADA por sus siglas en inglés), la Ley de Licencia por motivos Familiares y Médicos (FMLA por sus siglas en inglés), la Ley de Normas Laborales Equitativas (FLSA por sus siglas en inglés), el Título 42 del Código de los Estados Unidos § 1981, incluidas las enmiendas a todos los estatutos anteriores, la Ley para la Protección del Empleado contra la

Prueba del Polígrafo, estatutos estatales contra la discriminación y el acoso, leyes estatales de salarios por hora, las leyes estatales y/o el derecho común que regule la terminación del empleo, apropiación indebida, incumplimiento del deber de lealtad, la ley de contrato o la ley de responsabilidad civil, incluyendo pero no limitado a, las reclamaciones por acusación maliciosa, despido injustificado, detención injustificada/ encarcelamiento injustificado, imposición intencional/negligente de angustia emocional o difamación.

Las reclamaciones de los Asociados que requieran ser procesadas en virtud de un procedimiento distinto conforme a los términos de un plan de pensión o beneficios de un empleado no estarán sujetas al arbitraje estipulado en el Paso 4. Las reclamaciones de los Asociados relativas al seguro estatal de empleo (por ejemplo, la compensación por desempleo, compensación del trabajador, compensación por discapacidad del trabajador) o bajo la Ley Nacional de Relaciones Laborales tampoco están sujetas al arbitraje estipulado en el Paso 4. Sin embargo, las reclamaciones relacionadas con el derecho estatutario o común que se realicen fuera del sistema del seguro de empleo estatal alegando que la empresa tomó represalias en contra de un Asociado o lo sometió a discriminación por presentar una reclamación de seguro de empleo estatal, estarán sujetas a arbitraje.

Nada de lo dispuesto en las Reglas y Procedimientos del Programa MVM de Resolución Anticipada de Controversias prohíbe a un Asociado el presentar en cualquier momento, una acusación o queja ante una agencia gubernamental como la EEOC. Sin embargo, al recibir una carta de derecho a demandar o determinación administrativa similar, la reclamación del Asociado se convierte en objeto de arbitraje, tal como se define en el presente. Sin embargo, las denuncias presentadas ante el Consejo Nacional de Relaciones Laborales nunca estarán sujetas a arbitraje conforme a este Acuerdo.

Las reclamaciones que ya haya interpuesto como demandante individual en o antes de la Fecha de Vigencia no están sujetas a arbitraje.

### Artículo 3 - Proceso judicial por despido/suspensión
Al aceptar el arbitraje, el Asociado y la Compañía están de acuerdo en resolver a través del arbitraje todas las reclamaciones descritas o contempladas en el Artículo 2 anterior. Esto significa que ni el Asociado ni la Compañía pueden presentar una demanda civil en los tribunales contra la otra parte con relación a estas reclamaciones. Si una de las partes presenta una demanda en los tribunales para resolver reclamaciones

sujetas a arbitraje, se acuerda que el tribunal desestime la demanda y requiera que la reclamación sea resuelta a través del programa MVM.

Si una de las partes presenta una demanda en los tribunales que involucre reclamaciones que están, y otras que no están, sujetas al arbitraje estipulado en el Paso 4, esa parte requerirá a los tribunales que proceda el litigio de las reclamaciones no sujetas a arbitraje y que se dé lugar al arbitraje para aquellas reclamaciones sujetas a arbitraje, asumiendo que se han agotado los pasos anteriores. La decisión del Árbitro en las reclamaciones sujetas a arbitraje, incluidas las determinaciones en cuanto a cuestiones de hecho o jurídicas en controversia, tendrán derecho a su plena vigencia y efecto en cualquier demanda judicial posterior en los tribunales concerniente a reclamaciones no sujetas a arbitraje.

### Artículo 4 - Fecha de Vigencia
Para los Asociados recientemente contratados después de la Fecha de Vigencia, la fecha en que el programa MVM entra en vigor para cualquier asociado en particular en esta categoría, será la fecha de su contratación, recontratación, o empleo sin un contrato con la Compañía; siempre que dicho asociado no se excluya del programa MVM dentro del plazo establecido. Para los Asociados Existentes, la fecha en que entra en vigor el programa MVM para cualquier asociado en particular en esta categoría, será la fecha de su inscripción y aceptación de este Acuerdo (y el programa MVM).

### Artículo 5 - Límite de tiempo para iniciar el Arbitraje
El Arbitraje debe ser iniciado de conformidad con los plazos que figuran en el estatuto de limitaciones de la ley aplicable.  El período de tiempo transcurrido durante el cual el Asociado realizó sus reclamaciones siguiendo los Pasos 1-3 del Programa se añade al período de limitaciones aplicable.

### Artículo 6 - Comienzo del Arbitraje
Para iniciar el arbitraje, el Asociado o la Compañía deben notificar por escrito a la otra parte y/o persona que se supone es responsable en la controversia (**"Demandante"**).  La notificación a la Compañía debe ser entregada en la Oficina del Programa MVM.

La notificación al Asociado debe ser enviada por correo a la última dirección conocida del Asociado. La notificación debe incluir una declaración de la naturaleza de la reclamación junto con una breve descripción de los hechos relevantes, las reparaciones que se buscan incluyendo cualquier reparación dineraria por daños, y el domicilio que el Demandante utilizará para los fines del arbitraje.

Dentro de los treinta (30) días siguientes a la entrega de la notificación de una controversia, la otra parte dará su respuesta (**"Demandado"**).  La respuesta deberá indicar todas las defensas disponibles, una breve descripción de los hechos relevantes y cualquier contrademanda relacionada con los hechos conocidos hasta ese momento.

Dentro de los treinta (30) días siguientes a la entrega de dichas contrademandas, el Demandante presentará al Demandado una breve declaración de las defensas del Demandante en relación con los hechos relevantes de las contrademandas.

Las demandas y contrademandas pueden ser modificadas antes de la selección del árbitro y, posteriormente, con el consentimiento del árbitro. Las notificaciones de las defensas o respuestas a demandas o contrademandas modificadas se entregarán a la otra parte dentro de los treinta (30) días siguientes a la modificación.

### Artículo 7 - Selección de un árbitro
Tanto la Compañía como el Asociado deberán participar en forma igualitaria en le selección de un Árbitro para decidir el arbitraje. Después de la recepción y/o presentación de un Formulario de Solicitud de Arbitraje, el Gerente del Programa MVM pedirá a la Asociación Americana de Arbitraje que le suministre

a la Compañía y al Asociado un panel de siete (7) árbitros neutrales con experiencia en la resolución de disputas laborales.

La Compañía y el Asociado tendrán entonces la oportunidad de revisar los antecedentes de los árbitros examinando los documentos suministrados por la Asociación Americana de Árbitros.  Dentro de los siete (7) días naturales siguientes a la recepción de la composición del panel, el Asociado y la Compañía se turnarán para eliminar a los árbitros no aceptables del panel hasta que solo quede uno. El Asociado y la Compañía informarán a la Asociación Americana de Arbitraje sobre el árbitro restante, quien resolverá la controversia. Sin embargo, si ambas partes acuerdan que el árbitro restante no es aceptable, se solicitará a la Asociación Americana de Arbitraje un segundo panel  y el proceso de selección comenzará otra vez. Si ambas partes acuerdan que ninguno de los árbitros del segundo panel es aceptable, cualquiera de las partes puede solicitar a la Asociación Americana de Arbitraje que simplemente designe un árbitro que no haya estado en ninguno de los dos paneles.

### Artículo 8 - Hora y lugar del Arbitraje
La audiencia de arbitraje se celebrará en un lugar que esté dentro de las cincuenta (50) millas del último lugar de empleo del Asociado en la Compañía, a menos que las partes acuerden lo contrario. Las Partes y el Árbitro harán todos los esfuerzos necesarios para ver que el arbitraje se complete y se emita una decisión, tan pronto como sea posible. No habrá extensiones de tiempo o retrasos de una audiencia de arbitraje excepto en los casos en que haya consentimiento de ambas partes para la extensión o retraso, o cuando el Árbitro consideren necesaria dicha extensión o retraso para resolver una diferencia de revelación de pruebas u otra cuestión relevante para el arbitraje.

### Artículo 9 - Derecho a representación
Tanto el Asociado como la Compañía tendrán derecho a ser representados por un abogado.  Si el Asociado opta por no ser representado por un abogado durante el procedimiento de arbitraje, la Compañía no tendrá presentará a un abogado durante el procedimiento de arbitraje.

### Artículo 10 - Revelación de pruebas
#### a. Revelación inicial
Dentro de los catorce (14) días naturales siguientes a la designación de un Árbitro, las Partes se entregarán mutuamente copias de todos los documentos en que se basan para respaldar sus pretensiones o defensas.  Sin embargo, no es necesario que las partes entreguen documentos privilegiados que están protegidos contra la divulgación porque involucran privilegios abogado-cliente, doctor-paciente u otras comunicaciones o materiales privilegiados o protegidos por la ley. Durante la fase de revelación de pruebas, cada parte proporcionará a la otra parte todos los documentos que sean relevantes para cualquier reclamación o defensa.

Previa solicitud por escrito, el Asociado tendrá derecho a una copia de todos los documentos (con excepción de los documentos privilegiados descritos anteriormente) en el "ARCHIVO PERSONAL" del Asociado.

#### b. Otras revelaciones

##### i. Interrogatorios/Solicitud de documentos
Cada parte podrá proponer un (1) conjunto de veinte (20) interrogatorios (incluyendo subpartes) a la otra parte.  Los interrogatorios son preguntas escritas realizadas por una parte a la otra, que el receptor debe contestar bajo juramento. Dichos interrogatorios pueden incluir una solicitud de todos los documentos en que la parte que responde se basa para respaldar sus respuestas a los interrogatorios. Las respuestas a los interrogatorios deben ser entregadas dentro de los veintiún (21) días siguientes a la recepción de los interrogatorios.

## ii. Deposiciones

Una deposición es una declaración bajo juramento que una parte realiza en respuesta a preguntas específicas de la otra parte. Generalmente es registrada o transcripta por un taquígrafo judicial. Cada parte tendrá derecho a tomar la declaración de hasta tres (3) personas pertinentes a elección de la parte de pleno derecho. La parte que toma la deposición será responsable por todos los costos asociados, como el costo de un taquígrafo judicial y el costo de una transcripción.

## iii. Revelación de pruebas adicional

A petición de cualquiera de las partes y con la demostración de la adecuada justificación, el Árbitro podrá permitir la revelación de pruebas adicional, si el Árbitro considera que dicha revelación de pruebas adicional no es una carga excesiva, y no retrasará indebidamente la conclusión del arbitraje.

## c. Diferencias relativas a la revelación de pruebas

El Árbitro decidirá sobre todas las diferencias relacionadas con la revelación de pruebas. Tales decisiones serán definitivas y vinculantes para las partes. Al pronunciarse sobre las controversias relacionadas con la revelación de pruebas, el árbitro no tiene que seguir, pero puede consultar las reglas de revelación de pruebas que figuran en las Reglas Federales de Procedimiento Civil.

## d. Plazo de terminación de la revelación de pruebas

Toda la revelación de pruebas debe terminarse dentro de los noventa (90) días naturales siguientes a la selección del Árbitro, excepto por causa justificadas demostrable según lo determine el Árbitro. Con el fin de agilizar el arbitraje, las partes pueden iniciar la revelación de pruebas antes de la designación del Árbitro.

## Article 2 - Procedimiento de audiencias

### a. Testigos

Los testigos deberán testificar bajo juramento, y el Árbitro dará a cada parte oportunidad suficiente para examinar a sus propios testigos y realizar un interrogatorio cruzado de los testigos de la otra parte. Cualquiera de las partes puede emitir citaciones obligando a comparecer a cualquier otra persona necesaria para que la parte que emite la citación pruebe su caso.

### i. Citaciones

Una *citación* es una orden que se da a un individuo para que se presente en un determinado lugar y tiempo y dé testimonio. Una *citación* también puede exigir que el individuo aporte documentos cuando se presente a testificar. En la medida que lo autoriza la ley, el Árbitro tendrá la autoridad de hacer cumplir y/o cancelar tales citaciones. Las *citaciones* deberán ser emitidas no menos de diez (10) días naturales antes del comienzo de una audiencia de arbitraje o deposición.

La parte que expide la *citación* será responsable de los honorarios y gastos asociados con la emisión y cumplimiento de la citación, y con la asistencia del testigo citado a la audiencia de arbitraje.

### ii. Aislamiento

El Árbitro se asegurará de que los testigos que testifiquen en el arbitraje no se vean influenciados por el testimonio de otros testigos. En consecuencia, a menos que el Árbitro encuentre motivos para proceder de una manera diferente, el Árbitro aislará a todos los testigos que testificarán en el arbitraje, sin embargo, el Árbitro permitirá al Asociado involucrado en el arbitraje y al representante designado por la Compañía puedan permanecer durante el arbitraje, ya sea que testifiquen o no en la audiencia.

### b. Prueba

Las partes pueden ofrecer pruebas que sean pertinentes y esenciales para la controversia y presentarán

cualquier evidencia no privilegiada que el Árbitro considere necesaria para una determinación de la controversia. El Árbitro no tiene específicamente que seguir las Reglas Federales de Evidencia, si bien puede consultarlas para resolver asuntos relacionados con la admisibilidad de cuestiones particulares.

## c. Carga de la prueba

A menos que la legislación aplicable estipule lo contrario, la parte que solicita el arbitraje o la parte que presenta una contrademanda tiene la carga de probar una reclamación o reclamaciones por preponderancia de la evidencia. Para prevalecer, la parte que solicita el arbitraje debe probar que la conducta del otro representó una violación de la ley aplicable.

## d. Informe

Cada parte tendrá la oportunidad de presentar una (1) moción dispositiva, un (1) informe previo a la audiencia y un (1) informe posterior a la audiencia, que es una declaración escrita de los hechos y el derecho, en apoyo de su posición. La presentación de dichos escritos no es obligatoria, sin embargo, los informes deberán estar escritos a máquina y se limitarán a la longitud de veinte (20) páginas a doble espacio de letra tamaño 12.

## e. Transcripción

Las partes podrán disponer lo necesario para la transcripción del arbitraje por parte de un taquígrafo certificado. La parte que solicite la transcripción pagará el costo de la misma.

## f. Consolidación

### i. Reclamaciones

El Árbitro tendrá la facultad de recibir tantas reclamaciones como pueda tener un Demandante individual, en su nombre exclusivamente, de conformidad con el Artículo 2 de estas Reglas y Procedimientos para la Resolución Anticipada de Controversias del Programa MVM.

El Árbitro podrá recibir reclamaciones adicionales que no hayan sido mencionadas en el Formulario de Solicitud de Arbitraje. Para agregar reclamaciones, el Demandante debe notificar a la otra parte al menos treinta (30) días naturales antes de un arbitraje previsto. Las reclamaciones adicionales deben ser puntuales, de conformidad con la legislación aplicable, a partir de la fecha en que se añaden. La otra parte no debe sufrir perjuicio alguno en su defensa por dicha adición.

### ii. Partes

El Árbitro no consolidará reclamaciones o recursos de diferentes Asociados en un (1) procedimiento. El Árbitro no tendrá la facultad o la competencia para recibir un arbitraje como una acción popular, acción colectiva o acción representativa, ya sea que el Asociado pretexte que la reclamación tiene cabida ante un "fiscal general privado" o no. (Una acción popular, colectiva o representativa involucra a miembros representativos de un grupo de Asociados o del público en general, que buscan reparación en nombre del grupo o del público en general). Esta disposición reemplaza completamente y prevalece sobre cualquier Regla de la AAA en contrario, es una disposición sustancial y está en efecto en consideración de la velocidad, la eficiencia y la informalidad de las Reglas y Procedimientos para la Resolución Anticipada de Controversias del MVM en su conjunto. Por lo tanto, esta disposición no puede ser separada, y si no se cumple como está escrita, las partes no están sujetas a ningún acuerdo de arbitraje.

## g. Confidencialidad

Todos los aspectos de un arbitraje de conformidad con estas Reglas y Procedimientos para la Resolución Anticipada de Controversias del MVM, incluyendo las audiencias y el registro de los procedimientos, tendrán carácter confidencial y no estarán abiertos al público. Las únicas

excepciones son: (i) en la medida que ambas partes acuerden lo contrario por escrito; (ii) de ser apropiado en cualquier procedimiento ulterior entre las partes: o (iii) de ser apropiado en cualquier otra forma en respuesta a una agencia gubernamental, proceso legal, o (iv) como lo requiera la ley para hacer cumplir este Acuerdo.

Todas las negociaciones para llegar a un acuerdo, las mediaciones y cualquier resultado tendrán carácter confidencial.

### Article 3 - Elección del Derecho Sustantivo

El Árbitro aplicará el derecho sustantivo, incluyendo los conflictos de leyes, del estado en el que el Asociado está o estuvo empleado. Para reclamaciones o defensas que surjan de la ley federal o estén regidas por ella, el Árbitro seguirá el derecho sustantivo según lo establece la Corte Suprema de los Estados Unidos. Si no hay una autoridad de control de la Suprema Corte de los Estados Unidos, el Árbitro seguirá el derecho sustantivo que aplicaría el Tribunal de Apelaciones de los Estados Unidos y el Tribunal de Distrito de los Estados Unidos para el Distrito en el que el Asociado está o estuvo empleado.

### Article 4 - Autoridad del Árbitro

El Árbitro llevará a cabo el arbitraje. El árbitro tendrá la autoridad de emitir una decisión de conformidad con este Acuerdo, y de una forma que promueva una rápida y justa resolución de las controversias.

La autoridad del Árbitro estará limitada a decidir sobre el caso presentado por la parte que solicitó el arbitraje. Por lo tanto, ninguna decisión de ningún Árbitro servirá como precedente en otros arbitrajes.

El procedimiento de arbitraje contenido en este documento no modifica la situación laboral del Asociado. La situación sigue siendo modificable a discreción de la Compañía y/o terminable en cualquier momento, a voluntad del Asociado o de la Compañía, con o sin causa o notificación previa. El árbitro no podrá cambiar los términos y condiciones laborales de un Asociado a menos que lo requiera la ley federal, estatal o local, o como reparación por una violación de la legislación aplicable por parte de la Compañía con respecto al Asociado.

El Árbitro tendrá la facultad de adjudicación de sanciones en contra de una de las partes por no cumplir con este Acuerdo o con una orden del Árbitro. Estas sanciones pueden incluir fijación de costos o prohibición de pruebas. Si estuviese justificado por un incumplimiento deliberado y sin motivo de este Acuerdo, el árbitro podrá adjudicar la sanción de un fallo adverso en el arbitraje en contra de la parte que ha incumplido.

### Article 5 - Laudo

Dentro de los treinta (30) días naturales después de lo que se produzca primero, el cierre de las audiencias o la recepción de informes posteriores a las audiencias, si los hubiere, el Árbitro enviará por correo a las partes una decisión por escrito. La decisión especificará el remedio adecuado, de haberlo, si se encuentra que se ha violado la ley. Si la reclamación del Asociado surge en virtud de la ley estatutaria federal o estatal, o si la ley les obliga a hacer cumplir este Acuerdo, el laudo incluirá las conclusiones de hecho y las conclusiones de derecho; de lo contrario, la inclusión de esas conclusiones es a discreción del Árbitro. A las partes intervinientes en un arbitraje se les entregará una copia del laudo arbitral.

### Article 6 - Honorarios y gastos
#### a. Otros costos que no incluyen los honorarios de abogados
##### i. Definiciones
Los costos de un arbitraje incluyen los honorarios diarios o por hora y gastos (incluyendo viajes) del Árbitro que determina el caso, tasas de presentación o administrativas cobradas por la AAA, el costo de un taquígrafo para transcribir el procedimiento, y gastos de alquiler de una sala donde se celebra la audiencia. Los costos incidentales incluyen rubros tales como fotocopias o los costos de presentación de testigos y pruebas.

##### ii. Tasa de presentación/Costos del arbitraje
Un Asociado que inicie un arbitraje pagará el costo del arbitraje hasta un máximo de al menos un (1) día de paga básica o Ciento Veinticinco Dólares (USD 125), el que sea menor. Al presentar la solicitud de arbitraje, el Asociado deberá satisfacer dicha tasa. La Compañía pagará el resto de los costos de arbitraje. Si la Compañía es la que inicia el arbitraje, pagará la tasa total de presentación. Salvo lo dispuesto a continuación, cada parte pagará sus propios costos incidentales, incluyendo los honorarios de abogados.

La AAA ha elaborado directrices para la exención de las tasas administrativas. Este Plan está sujeto a dichas directrices.

#### b. Reembolso de honorarios legales o costas
El programa no infringe el derecho de cualquiera de las partes de consultar con un abogado en cualquier momento. De hecho, la Compañía reembolsará a un Asociado para esta consulta legal y/o representación durante el Paso 4 del programa, hasta un beneficio máximo de Dos Mil Quinientos Dólares (USD 2,500) por Asociado en un período sucesivo de doce (12) meses. Si el Asociado no es representado por un abogado, la Compañía reembolsará a un Asociado por costos incidentales hasta un máximo de Quinientos Dólares (USD 500) por Asociado en un período sucesivo de doce (12) meses. El Asociado no tendrá derecho a dicho reembolso por parte de la Compañía si el Árbitro determina que la demanda de arbitraje por parte del Asociado se presentó frívolamente. Cualquier reembolso al Asociado se producirá después de la conclusión del procedimiento contra la presentación de las facturas del Asociado por costos de servicios legales o costos incidentales.

#### c. Cambio de los costos
Si el Asociado prevalece en el arbitraje, ya sea que se otorguen daños o recursos económicos o no, se reembolsará la tasa de presentación al Asociado. El Árbitro podrá también (basado en los hechos y circunstancias) requerir que la Compañía pague la parte de los costos de arbitraje y costos incidentales que le corresponde al Asociado.

### Article 7 - Remedios y Daños

Tras la conclusión de que una parte ha sostenido su carga de persuasión en establecer una violación de la ley aplicable, el árbitro tendrá el mismo poder y autoridad que un juez para otorgar cualquier remedio sustantivo, incluyendo las costas y honorarios de abogados que podría otorgar un juzgado, de conformidad con los principios aplicables del derecho común, la jurisprudencia y la ley estatutaria en la jurisdicción correspondiente.

### Article 8 - Acuerdo

Las partes pueden resolver su controversia por acuerdo en cualquier momento sin intervención o aprobación del Árbitro.

### Article 9 - Exigibilidad

El acuerdo de arbitraje, el procedimiento de arbitraje y cualquier laudo emitido de conformidad con los mismos se interpretarán únicamente en virtud de, se exigirán de acuerdo con, y estarán sujetos a la Ley Federal de Arbitraje, Sección 9 del U.S.C. § 1, seq. independientemente del estado en el que se celebre el arbitraje o el derecho sustantivo aplicado en el arbitraje. Si por cualquier razón la Ley Federal de Arbitraje es inaplicable para hacer cumplir el Acuerdo, las Partes aceptan que se hará cumplir conforme a el (los) estatuto(s) estatales que rigen el arbitraje.

**Article 10 - Derechos de apelación**
La decisión emitida por el Árbitro será definitiva y vinculante para el Asociado y para la Compañía. Cualquiera de las partes podrá apelar la decisión del Árbitro en un juzgado de acuerdo con las disposiciones de la Ley Federal de Arbitraje, Sección 9 del U.S.C. § 1, et seq.

**Article 11 - Divisibilidad/Conflicto con la ley**
En el caso de que se encuentre que alguna de estas disposiciones es ilegal o no ejecutable, la regla o procedimiento conflictivo será separado, a menos que se disponga expresamente otra cosa, como por ejemplo la disposición contra la divisibilidad del Artículo 11.f.ii.

En el caso de separación de una regla o procedimiento en particular, el resto de estas reglas y rocedimientos no se verán afectados.  La separación de una de estas reglas o procedimientos se aplicará solo con relación a la jurisdicción específica y la controversia específica en la cual se determinó que la regla o procedimiento está en conflicto con la ley.  En todas las otras jurisdicciones y/o controversias, este Acuerdo se aplicará con plena vigencia y efecto.

**Article 12 - Cancelación o Modificación de las Reglas y Procedimientos de Resolución de Controversias o el Programa**
La Compañía podrá modificar este Acuerdo o cancelar el programa en su totalidad dando notificando por escrito a los Asociados con treinta (30) días de anticipación.  Si no se proporciona dicha notificación a un Asociado, regirá la versión de este Acuerdo que cubrió al Asociado antes de la modificación o cancelación.

**ADJUNTAMOS PARA SU INFORMACIÓN UNA COPIA DE LAS *REGLAS DE ARBITRAJE Y PROCEDIMIENTOS DE MEDIACIÓN EN MATERIA DE EMPLEO DE LA ASOCIACIÓN AMERICANA DE ARBITRAJE* QUE SERÁN APLICABLES AL PROCESO DE ARBITRAJE VINCULANTE DESCRITO MÁS ARRIBA.  ESTAS REGLAS TAMBIÉN ESTÁN DISPONIBLES EN EL SITIO WEB DE LA ASOCIACIÓN AMERICANA DE ARBITRAJE:** http://www.adr.org/aaa/faces/rules/searchrules

# Reglamento de Arbitraje y Procedimientos de Mediación en materia de Empleo de la Asociación Americana de Arbitraje

**1. Reglamento de Arbitraje Aplicable**
Se considerará que las partes han incluido este reglamento en su acuerdo de arbitraje cuando hayan establecido que el arbitraje sea tramitado por la Asociación Americana de Arbitraje (en adelante "AAA") o de conformidad con su Reglamento de Arbitraje y Procedimientos de Mediación en materia de Empleo, o cuando hayan previsto el arbitraje de una controversia laboral por parte de la AAA sin especificación de un reglamento en particular*. Si una parte prueba que existe una incompatibilidad adversa esencial entre el acuerdo de arbitraje y este reglamento, el árbitro aplicará este reglamento.

Si, en un período de 30 días después del inicio de la administración por parte de la AAA, una parte solicita la intervención judicial con respecto a un arbitraje pendiente, y proporciona a la AAA documentación que demuestre que ha solicitado esa intervención, la AAA suspenderá la administración durante 60 días para permitir a la parte obtener la suspensión del arbitraje por parte del juzgado.

*El Reglamento Nacional Para La Resolución de Controversias en materia de Empleo ha cambiado su denominación a Reglamento de Arbitraje y Procedimientos de Mediación en materia de Empleo. Cualquier acuerdo de arbitraje que disponga el arbitraje según el Reglamento Nacional para la Resolución de Controversias en materia de Empleo se administrará de conformidad con este Reglamento de Arbitraje y

Procedimientos de Mediación en materia de Empleo.

**2. Notificación**
Un empleador que tenga la intención de incorporar este Reglamento o de referirse a los servicios de resolución de controversias de la AAA en un plan de ADR [siglas en inglés de Resolución Alternativa de Controversias] en materia de empleo deberá, 30 días antes de la fecha prevista de entrada en vigor del programa:

    i. notificar a la Asociación su intención de hacerlo y,

    ii. proporcionar a la Asociación una copia del plan de resolución de controversias en materia de empleo.

    El cumplimiento de este requisito no impedirá que un árbitro considere recusaciones como se estipula en la Sección 1. Si un empleador no cumple con este requisito, la Asociación se reserva el derecho de declinar sus servicios administrativos.

**3. La AAA como administrador del arbitraje**
Cuando las partes acuerden arbitrar según este Reglamento, o cuando se prevea el arbitraje por parte de la AAA y se inicie el arbitraje según este Reglamento, se entiende que las partes han autorizado a la AAA para que administre el arbitraje. La autoridad y los deberes de la AAA se establecen en este reglamento, y podrán ser ejercidos mediante los representantes de la AAA que ésta designe. La AAA podrá, a su discreción, asignar la administración de un arbitraje a cualquiera de sus oficinas.

**4. Iniciación del arbitraje**
El arbitraje se iniciará del modo siguiente:

    a. Las partes podrán presentar una solicitud de arbitraje conjunta.

    b. A falta de una solicitud de arbitraje conjunta:

    c. La parte iniciadora (enadelante, "Demandante[s]") deberá:

    d. Presentar una notificación por escrito (en adelante, "Demanda") de su intención de iniciar un arbitraje en cualquier oficina de la AAA, dentro del plazo establecido por el estatuto de limitaciones aplicable. Cualquier desacuerdo sobre si la demanda ha sido presentada a tiempo será trasladado al árbitro. La presentación deberá realizarse por duplicado, y en cada copia deberá figurar el acuerdo de arbitraje aplicable. La Demanda deberá incluir los nombres, direcciones y números de teléfono de las partes; una breve declaración de la naturaleza del conflicto; el monto objeto de la controversia, si lo hubiere; la reparación exigida; y el lugar solicitado para la celebración de las audiencias.

    e. Proporcionar simultáneamente una copia de la Demanda a la otra parte (en adelante, "Demandado[s]").

    f. Incluir en su Demanda la tasa de presentación aplicable, a menos que las partes acuerden algún otro método para el anticipo de las tasas.

    g. El (los) Demandado(s) podrá(n) presentar una respuesta a la AAA en un plazo de 15 días desde la fecha de la carta de acuse de recibo de la Demanda por parte de la AAA. La Respuesta deberá contener la contestación breve del Demandado con respecto a la reclamación y a los asuntos presentados. El (los) Demandado(s) deberá(n) hacer su presentación a la AAA por duplicado, y enviar simultáneamente una copia de la Respuesta al Demandante. Si no presenta ningún escrito de contestación dentro del plazo

establecido, se considerará que el Demandado deniega la reclamación. El hecho de que no se presente ningún escrito de contestación no deberá retrasar el arbitraje.

h. El (los) Demandado(s):

i. Podrá(n) presentar una contrademanda a la AAA en un plazo de 15 días desde la fecha de la carta de acuse de recibo de la Demanda por parte de la AAA. La presentación deberá realizarse por duplicado. La contrademanda deberá establecer la naturaleza de la reclamación, el monto objeto de controversia, si lo hubiere, y la reparación exigida.

j. Simultáneamente deberá(n) enviar una copia de cualquier contrademanda al Demandante.

k. Deberá(n) incluir en su presentación las tasas de presentación aplicables de conformidad con este Reglamento.

l. El Demandante podrá presentar a la AAA una Respuesta a la contrademanda en un plazo de 15 días desde la fecha de la carta de acuse de recibo de la contrademanda por parte de la AAA. La Respuesta deberá contener la contestación breve del Demandante con respecto a la contrademanda y a los asuntos presentados. El Demandante deberá hacer su presentación a la AAA por duplicado, y enviar simultáneamente una copia de la Respuesta al Demandado. Si no presenta ningún escrito de contestación dentro del plazo establecido, se considerará que el Demandante deniega la contrademanda. El hecho de que no se presente ningún escrito de contestación no deberá retrasar el arbitraje.

m. Las presentaciones contempladas en este reglamento no están sujetas requisitos técnicos en cuanto a su forma.

**5. Modificaciones en las reclamaciones**

Si cualquiera de las partes desea presentar una reclamación o contrademanda nueva o diferente antes de la designación del árbitro, deberá hacerlo por escrito presentando una declaración escrita a la AAA y proporcionando simultáneamente una copia a la(s) otra(s) parte(s), que tendrá(n) 15 días desde la fecha de dicha presentación para formular una contestación a la AAA. Después de la designación del árbitro, las partes podrán presentar una reclamación o contrademanda nueva o diferente solo a discreción del árbitro.

**6. Jurisdicción**

a. El árbitro estará facultado para tomar las decisiones en su propia jurisdicción, incluyendo cualesquiera objeciones con respecto a la existencia, alcance o validez del acuerdo de arbitraje.

b. El árbitro estará facultado para resolver sobre la existencia o validez de un contrato del cual forme parte una cláusula de arbitraje. Esa cláusula de arbitraje será tratada como un acuerdo independiente de los demás términos del contrato. La decisión del árbitro que declare nulo el contrato no invalidará, por esa sola razón, la cláusula de arbitraje.

c. La parte que objete la jurisdicción del árbitro o la arbitrabilidad de la demanda o contrademanda lo hará, a más tardar, en el momento de presentar el escrito de contestación a la demanda o o la contrademanda que dé lugar a la objeción. El árbitro podrá resolver esas objeciones como una cuestión preliminar o como parte del laudo final.

**7. Conferencias administrativas y de mediación**

Antes del nombramiento del árbitro, las partes pueden pedir, o la AAA, a su discreción puede programar una conferencia administrativa con un representante de la AAA y las partes y/o sus representantes. El propósito de esta conferencia administrativa es organizar y acelerar el arbitraje, analizar sus aspectos administrativos, establecer la forma más eficiente de seleccionar al árbitro, y considerar la mediación como opción para la resolución de la controversia. No se cobrarán tasas administrativas por este servicio.

En cualquier momento después de la presentación de la Demanda, con el consentimiento de las partes, la AAA preparará una conferencia de mediación según sus Procedimientos de Mediación para facilitar la resolución del conflicto. El mediador no será ningún árbitro nombrado para actuar en el caso, salvo por acuerdo mutuo por escrito de las partes. No se cobrarán tasas de presentación adicionales a las partes por el inicio de una mediación conforme a los Procedimientos de Mediación de la AAA cuando exista un arbitraje en trámite.

**8. Conferencia de gestión del arbitraje**

Tan pronto como sea posible después de la selección del (los) árbitro(s), pero dentro de un plazo de 60 días a partir de esa fecha, se realizará una conferencia de gestión del arbitraje entre las partes y/o sus abogados u otros representantes y el (los) árbitro(s). A menos que las partes acuerden otra cosa, la conferencia para la gestión del arbitraje se realizará por conferencia telefónica, y no en persona. En la conferencia de gestión del arbitraje se considerarán, sin limitación, las siguientes cuestiones:

    i. los temas a ser arbitrados;

    ii. la fecha, hora, lugar y duración estimada de la audiencia;

    iii. la resolución de cuestiones pendientes sobre revelación de pruebas y el establecimiento de parámetros para la revelación de pruebas;

    iv. ley, criterios, reglamentos de prueba y cargas de la prueba aplicables al procedimiento;

    v. intercambio de estipulaciones y declaraciones relativas a los hechos, las presentaciones, los testigos y otras cuestiones;

    vi. los nombres de los testigos (incluyendo testigos expertos o peritos), el alcance del testimonio de los testigos, y las exclusiones de testigos;

    vii. el valor de bifurcar el arbitraje en una fase de responsabilidad y otra de daños;

    viii. la necesidad de realizar un registro taquigráfico de la(s) audiencia(s).

    ix. determinar si las partes resumirán sus argumentos en forma oral o por escrito.

    x. la forma del laudo;

    xi. otras cuestiones relacionadas con la materia o el desarrollo del arbitraje,

    xii. la asignación de los honorarios y costas de los abogados;

    xiii. la especificación de las reclamaciones no reveladas;

    xiv. la medida en que se pueda presentar documentación de revelación de pruebas en las audiencias;

    xv. la medida en que se pueda admitir en la audiencia testimonio telefónico, por internet, mediante declaración por escrito o grabada en video, bajo declaración jurada, o por otros medios;

    xvi. cualquier polémica sobre la determinación de la AAA sobre si la controversia deriva de un acuerdo o contrato laboral negociado individualmente o de un plan promulgado por el empleador (véase el apartado sobre Costes del Arbitraje).

EXHIBIT A TO DECLARATION

El árbitro emitirá instrucciones orales o por escrito que reflejen sus decisiones sobre las cuestiones anteriores, y podrá realizar conferencias adicionales si fuera necesario.

No se cobrarán tasas administrativas de la AAA por una Conferencia de Gestión de Arbitraje.

**9. Revelación de pruebas**
El árbitro tendrá la facultad de ordenar dicha revelación de pruebas, por medio de deposiciones, interrogatorios, presentación de documentos, o cualquier otra forma que el árbitro considere necesaria para un análisis completo y justo de las cuestiones objeto de la controversia, en consonancia con el carácter expeditivo del arbitraje.

La AAA no requiere notificación de cuestiones y comunicaciones relacionadas con la revelación de pruebas a menos que surja un desacuerdo. Dado el caso, las partes deberán notificar a la AAA sobre el desacuerdo para poder trasladarlo al árbitro y que sea éste quien lo resuelva.

**10. Fijación de lugar (ciudad, condado, estado, territorio y/o país del arbitraje)**
Si las partes no llegan a un acuerdo sobre el lugar, la AAA podrá determinar inicialmente el lugar del arbitraje, con sujeción a la facultad del (los) árbitro(s), después de su designación, de realizar una determinación final sobre el lugar. Todas estas determinaciones se realizarán teniendo en cuenta las opiniones de las partes y las circunstancias del arbitraje.

**11. Fecha, hora y lugar de la audiencia (el lugar físico donde se celebrará la audiencia dentro del lugar designado)**
El árbitro fijará la fecha, hora y lugar de cada audiencia. Las partes responderán a las peticiones de fechas de audiencia de manera oportuna, colaborarán en la programación de la primera fecha posible, y cumplirán con el programa de audiencias que se establezcan.   La AAA enviará una notificación de audiencia a las partes por lo menos 10 días antes de la fecha de la audiencia, a menos que las partes acuerden otra cosa.

**12. Número, calificaciones y designación de árbitros neutrales.**
a. Si el acuerdo de arbitraje no especifica el número de árbitros o las partes no lo acuerdan, la controversia será conducida y laudada por un único árbitro.

b. Calificaciones

i. Los árbitros neutrales que actúen según este reglamento deberán tener experiencia en el campo del derecho laboral.

ii. Los árbitros neutrales que actúen según este reglamento no deberán tener ningún interés personal ni económico en el resultado del procedimiento para el que han sido designados, ni deberán tener relación alguna con la controversia subyacente ni con las partes o sus abogados que pueda suscitar dudas sobre su imparcialidad.

iii. La lista de árbitros disponibles se establecerá sobre una base no discriminatoria, con miembros de ambos sexos, de diferentes etnias, formación y calificaciones.

iv. La AAA podrá, a petición de las partes dentro del plazo establecido para devolver las listas o por iniciativa propia, suplementar la lista de árbitros propuestos en las controversias que surjan de contratos laborales negociados individualmente con personas de la Lista Comercial, para permitir a la AAA responder a las necesidades particulares de la controversia. En las controversias donde intervenga más de un árbitro, al menos un árbitro deberá tener experiencia en el campo del derecho laboral.

c. Si las partes no han designado ningún árbitro y no han previsto ningún método de designación, el árbitro será designado de la siguiente manera:

i. Al poco tiempo de haber recibido la Demanda, la AAA enviará simultáneamente a cada parte una carta con una lista idéntica de nombres de personas elegidas de la Lista de Resolución de Controversias en materia Laboral. Se invitará a las partes a llegar a un acuerdo sobre un árbitro de la lista enviada, y a comunicar su acuerdo a la AAA.

ii. Si las partes no llegan a un acuerdo sobre un árbitro, cada parte participante en la controversia tendrá 15 días a partir de la fecha de envío para eliminar los nombres a los que se opone, numerar los nombres restantes en orden de preferencia, y devolver la lista a la AAA. Si una parte no devuelve la lista dentro del plazo establecido, todas las personas mencionadas en ella se considerarán aceptables.

iii. De entre las personas que hayan sido aprobadas en ambas listas, y de conformidad con el orden de preferencia mutua indicado por las partes, la AAA propondrá a las partes la aceptación de un árbitro. Si las partes no llegan a un acuerdo sobre las personas nombradas, o si los árbitros aceptables no pueden actuar, o si por alguna otra razón no puede realizarse la designación a partir de la lista enviada, la AAA tendrá la facultad de nombrar al árbitro de entre los miembros del panel sin tener que presentar ninguna otra lista.

**13. Árbitros nombrados por las partes**
a. Si el acuerdo entre las partes designa un árbitro o especifica un método de designación de un árbitro, esa designación o método deberá acatarse.

b. Cuando las partes hayan acordado que cada parte deberá nombrar a un árbitro, los árbitros así designados deberán cumplir los criterios de la Sección R-16 con respecto a la imparcialidad e independencia, a menos que las partes hayan acordado específicamente de conformidad con la Sección R-16(a) que los árbitros nombrados por las partes no tienen que ser neutrales ni deben cumplir dichos criterios. La parte designante deberá presentar en la AAA la notificación de la designación con el nombre, dirección y datos de contacto del árbitro. A petición de cualquier parte designante, la AAA proporcionará una lista de miembros de la Lista Nacional en base a la cual la parte podrá, si así lo desea, realizar la designación.

c. Si el acuerdo especifica un período de tiempo para designar al árbitro y alguna de las partes no realizara la designación dentro de ese plazo, la AAA realizará la designación.

d. Si no se especifica ningún período de tiempo en el acuerdo, la AAA notificará a la parte que debe realizar la designación. Si dentro de 15 días después del envío de dicha notificación las partes no han designado un árbitro, la AAA realizará la designación.

**14. Nombramiento de un presidente por los árbitros designados por las partes o por las partes**
a. Si las partes, de conformidad con la Sección R-13, han nombrado directamente a los árbitros o éstos han sido nombrados por la AAA, y las partes les han autorizado a nombrar a un presidente dentro de un plazo determinado, y no se realiza ningún nombramiento en este plazo o en una ampliación acordada del mismo, la AAA podrá nombrar al presidente.

b. Si no se especifica ningún plazo para el nombramiento del presidente y los árbitros nombrados por las partes o las partes no lo nombran en un plazo de 15 días desde la fecha de designación del último árbitro designado por las partes, la AAA podrá nombrar al presidente.

c. Si las partes han acordado que los árbitros designados por las partes deberán nombrar al presidente

a partir de la Lista Nacional, la AAA deberá proporcionar a los árbitros designados por las partes, de la forma estipulada en la Sección R-12, una lista seleccionada a partir de la Lista Nacional, y el nombramiento del presidente se realizará de conformidad con esa Sección.

### 15. Revelación

a. Cualquier persona designada o a ser designada como árbitro deberá revelar a la AAA cualquier circunstancia que sea fuente probable de dudas justificadas sobre la imparcialidad o independencia del árbitro, incluyendo cualquier parcialidad o interés económico o personal en el resultado del arbitraje o cualquier relación pasada o presente con las partes o sus representantes. Esta obligación permanecerá vigente durante todo el arbitraje.

b. Al recibir tal información de parte del árbitro o de otra fuente, la AAA comunicará la información a las partes y, si lo considera apropiado, al árbitro y a otras partes.

c. Para fomentar la revelación por parte de los árbitros, la revelación de información de acuerdo con esta Sección R-15 no se interpretará como una indicación de que el árbitro considera que la circunstancia revelada es susceptible de afectar su imparcialidad e independencia.

### 16. Descalificación del árbitro

a. Cualquier árbitro deberá ser imparcial e independiente y desempeñará sus deberes con diligencia y de buena fe, y estará sujeto a descalificación por:

i. parcialidad o falta de independencia,

ii. incapacidad o rechazo a desempeñar sus deberes con diligencia y de buena fe, y iii. cualquier motivo de descalificación previsto por la ley aplicable. No obstante, las partes podrán acordar por escrito que los árbitros nombrados directamente por las partes de conformidad con la Sección R-13 no necesitan ser neutrales, en cuyo caso esos árbitros no tendrán la obligación de ser imparciales o independientes ni estarán sujetos a descalificación por parcialidad o falta de independencia.

b. Cuando una parte se oponga a la continuación del actuar de un árbitro, o por su propia iniciativa, la AAA determinará si el árbitro debe ser descalificado de acuerdo con los motivos establecidos anteriormente, e informará a las partes de su decisión, decisión que será definitiva.

### 17. Comunicación con el árbitro

a. Ninguna parte (o persona que actúe en su nombre) tendrá comunicaciones referentes al caso, en ausencia de la otra parte, con un árbitro o candidato a árbitro, con la excepción de que la parte (o la persona que actúe en su nombre) se podrá comunicar en ausencia de la otra parte, con un candidato a ser designado directamente según la Sección R-13, para informarle de la naturaleza general de la controversia y sobre los procedimientos anticipados y para comentar sus calificaciones, disponibilidad o independencia del candidato respecto de las partes o para comentar sobre la idoneidad de los candidatos que podrían ser seleccionados como tercer árbitro cuando las partes o los árbitros elegidos por ellas deban participar en esa selección.

b. La Sección R-17(a) no se aplica a los árbitros designados directamente por las partes cuando, conforme a la Sección R-16(a), las partes hayan acordado por escrito que no serán neutrales. Cuando las partes lo hayan acordado según la sección 16(a), la AAA recomendará a las partes como práctica administrativa que además acuerden, no obstante, aplicar la Sección R-17(a) en forma prospectiva.

### 18. Vacantes

a. Si por algún motivo un árbitro se ve en la incapacidad de desempeñar los deberes de su puesto, la AAA podrá, mediando prueba que considere suficiente, declarar el puesto vacante. Las vacantes

deberán cubrirse de acuerdo con las disposiciones aplicables de este Reglamento.

b. En el caso de que se produzca una vacante en un panel de árbitros neutrales después de iniciadas las audiencias, el árbitro o árbitros restantes podrán continuar con las audiencias y con la determinación de la controversia, a menos que las partes acuerden lo contrario.

c. En el caso del nombramiento de un árbitro sustituto, el panel de árbitros determinará, a su sola discreción, si es necesario o no repetir alguna de las audiencias anteriores, o parte de ellas.

### 19. Representación

Las partes podrán ser representadas por abogados u otros representantes autorizados. En caso de que las partes carezcan de representación, la AAA les podrá proporcionar, a petición suya, referencias de instituciones que puedan ofrecerles asistencia. Las partes que tengan la intención de ser representadas deben notificar a la otra parte y a la AAA el nombre y la dirección del representante como mínimo 10 días antes de la fecha establecida para la audiencia o la conferencia en que dicha persona intervenga por primera vez. Si un representante presenta una Demanda o una Respuesta, la obligación de notificar la información sobre el representante se considerará satisfecha.

### 20. Registro taquigráfico

Si alguna de las partes desea un registro taquigráfico deberá acordarlo directamente con un taquígrafo y notificar a las otras partes sobre este acuerdo como mínimo tres días antes de la audiencia. La parte o partes solicitantes pagarán el costo del registro. Si las partes aceptan la transcripción, o si el árbitro determina que se convierta en el registro oficial del procedimiento, deberá ser proporcionada al árbitro y puesta a disposición de las otras partes para su revisión, en el día, hora y lugar determinados por el árbitro.

### 21. Intérpretes

Si alguna de las partes desea contar con un intérprete deberá acordarlo directamente con el intérprete y asumir los costos del servicio.

### 22. Asistencia a las audiencias

El árbitro tendrá la autoridad de excluir de las audiencias a los testigos que no sean las partes, durante el testimonio de cualquier otro testigo. El árbitro también tendrá autoridad para decidir si una persona que no sea testigo puede asistir a las audiencias.

### 23. Confidencialidad

El árbitro mantendrá la confidencialidad del arbitraje, y tendrá la autoridad de fallar lo necesario para salvaguardar esa confidencialidad, a menos que las partes o la ley dispongan lo contrario.

### 24. Aplazamientos

El árbitro: (1) podrá aplazar cualquier audiencia a petición de una de las partes por causas justificadas demostrables; (2) deberá aplazar cualquier audiencia cuando exista acuerdo mutuo entre las partes; y (3) podrá aplazar cualquier audiencia por iniciativa propia.

### 25. Juramentos

Antes de proceder con la primera audiencia, cada árbitro deberá hacer un juramento de su cargo. El juramento se proporcionará a las partes antes de la primera audiencia. El árbitro podrá requerir a los testigos que testifiquen bajo juramento administrado por una persona debidamente calificada y, si la ley lo exige o alguna parte lo solicita, deberá hacerlo.

### 26. Decisión por mayoría

Todas las decisiones y los laudos de los árbitros deberán ser por mayoría, a menos que el acuerdo de

arbitraje o la ley requieran expresamente la decisión unánime de todos los árbitros.

### 27. Peticiones dispositivas

El árbitro podrá permitir que se presente una petición dispositiva si determina que la parte impulsora ha demostrado causas sustanciales para que la petición prospere y pueda resolver o limitar las cuestiones incluidas en el caso.

### 28. Orden del procedimiento

Una audiencia podrá abrirse: (1) registrando la fecha, hora y lugar de la audiencia; (2) registrando la presencia del árbitro, las partes y sus representantes, si los hubiere; y (3) admitiendo en el expediente la Demanda y la Respuesta, si las hubiere. El árbitro podrá, al inicio de la audiencia, pedir declaraciones aclaratorias sobre las cuestiones relativas al caso.

Las partes tendrán las mismas cargas de la prueba y cargas de aportación de la prueba que serían aplicables si hubieran presentado sus reclamaciones y contrademandas ante los tribunales.

Los testigos de cada parte se someterán a interrogatorios directos y cruzados.

Con la excepción de las reglas relativas a la distribución de las cargas de la prueba y de aceptación de la prueba, el árbitro tiene la autoridad de fijar las reglas de desarrollo del procedimiento, y ejercerá su autoridad para asegurar que todas las partes tengan la misma oportunidad de presentar cualquier prueba que el árbitro considere sustancial y relevante para la resolución de la controversia. Cuando lo considere adecuado, el árbitro también podrá permitir la presentación de pruebas por medios alternativos, tales como conferencia por web, comunicación por internet, conferencias telefónicas y otros medios no presenciales de presentación de pruebas. Estos medios alternativos deberán, aún así, ofrecer todas las oportunidades en igualdad de condiciones a todas las partes para presentar cualquier prueba que el árbitro considere sustancial y relevante para la resolución de la controversia y, cuando de testigos se trate, prever que dichos testigos se sometan a interrogatorios directos y cruzados.

El árbitro, a su discreción, tramitará el procedimiento con vistas a agilizar la resolución de la controversia, podrá fijar el orden de la prueba, bifurcar el procedimiento, y orientar a las partes a centrar sus presentaciones en cuestiones cuya decisión pudiera resolver todo o parte del caso.

La documentación y cualquier otra forma de evidencia física, cuando sean ofrecidas por cualquiera de las partes, podrán ser admitidas como pruebas por el árbitro.

Los nombres y direcciones de todos los testigos, así como la descripción de todos los documentos y objetos presentados como prueba, deberán constar en el expediente en orden de recepción.

### 29. Arbitraje en ausencia de una parte o representante

A menos que la ley dicte lo contrario, el arbitraje podrá proceder en ausencia de alguna de las partes (o su representante) que, previa debida notificación, no esté presente o no haya podido obtener un aplazamiento. El laudo no podrá fundarse únicamente en el incumplimiento de una de las partes.

El árbitro requerirá a la parte que esté presente que aporte las pruebas que el árbitro solicite para el dictamen de su laudo.

### 30. Prueba

Las partes podrán ofrecer todas las pruebas relevantes y sustanciales para la resolución de la controversia, y deberán presentar las pruebas que el árbitro considere necesarias para la comprensión y la resolución de la controversia. Todas las pruebas deberán presentarse en presencia de todos los árbitros y todas las partes, salvo cuando una parte o un árbitro estén ausentes, en rebeldía, o hayan renunciado al derecho de

comparecer; sin embargo, "presencia" no significa que las partes y los árbitros deberán estar presentes físicamente en el mismo lugar.

Los árbitros o las otras personas autorizadas por ley a citar a testigos o a solicitar documentos pueden hacerlo a petición de una parte o independientemente.

El árbitro juzgará la relevancia y sustantividad de la prueba ofrecida, sin ser necesaria su conformidad con las leyes sobre admisibilidad de pruebas. El árbitro, a su discreción, puede fijar el orden de la prueba, bifurcar los procedimientos, excluir testimonios acumulativos o irrelevantes u otras pruebas, y ordenar a las partes que centren sus presentaciones en cuestiones cuya decisión pueda resolver todo o parte del caso. Todas las pruebas deberán ser admitidas en presencia de todos los árbitros y de todas las partes, excepto cuando alguna parte esté ausente, en rebeldía, o haya renunciado a su derecho de estar presente.

Si las partes acuerdan o el árbitro ordena que pueden presentarse al árbitro documentos u otras pruebas después de la audiencia, esos documentos o pruebas deberán entregarse a la AAA para su transferencia al árbitro, a menos que las partes acuerden una forma de entrega diferente. Todas las partes tendrán la oportunidad de examinar dichos documentos u otras pruebas y de presentar las objeciones correspondientes, si las hubiere.

### 31. Inspección

A petición de una parte, el árbitro podrá realizar una inspección con respecto al arbitraje. El árbitro fijará la fecha y la hora, y la AAA lo notificará a las partes. En caso de que alguna o todas las partes no estén presentes durante la inspección, el árbitro realizará un informe oral o escrito para las partes y les dará la oportunidad de realizar comentarios al respecto.

### 32. Medidas provisionales

A petición de alguna de las partes, el árbitro podrá conceder cualquier reparación o remedio que las partes hubieran podido recibir si la controversia hubiera sido presentada en los tribunales, como se estipula en la Reglamentación 39(d), Laudo.

La petición de medidas provisionales formulada por una parte a una autoridad judicial no se considerará incompatible con el acuerdo de arbitraje, ni una renuncia al derecho de arbitrar.

### 33. Cierre de las audiencias

El árbitro preguntará específicamente a las partes si tienen más pruebas que ofrecer o si hay más testigos que escuchar. Si recibe respuestas negativas, o si considera que el expediente está completo, el árbitro declarará el cierre de las audiencias. Cuando se deban presentar escritos, las audiencias se declararán cerradas a partir de la fecha límite fijada por el árbitro para la recepción de los escritos. Si hubiere documentos por entregar de acuerdo con la Reglamentación 30 y su fecha de recepción fuera posterior a la fijada para la recepción de escritos, las audiencias se considerarán cerradas en esta última fecha. El plazo dentro del cual el árbitro debe emitir su laudo empezará a contar, a menos que exista un acuerdo distinto de las partes, a partir del cierre de las audiencias.

### 34. Reapertura de las audiencias

El árbitro podrá reabrir las audiencias por iniciativa propia, o a solicitud de una de las partes por cusa justificada, en cualquier momento antes de que se dicte el laudo. Si la reapertura de las audiencias impide que se dicte el laudo dentro del tiempo específico acordado por las partes en el (los) contrato(s) del (los) que surge la controversia, el tema no podrá reabrirse a menos que las partes acuerden una ampliación del plazo.

Cuando en el contrato no se establezca ninguna fecha específica, el árbitro podrá reabrir las audiencias y

dispondrá de 30 días desde el cierre de la última audiencia reabierta para emitir su laudo.

### 35. Renuncia a las audiencias orales

Las partes, mediante acuerdo por escrito, podrán renunciar a las audiencias orales. Si las partes no se ponen de acuerdo sobre el procedimiento que se debe seguir, el árbitro, después de su designación, establecerá un procedimiento justo y equitativo.

### 36. Renuncia a la objeción/incumplimiento del presente reglamento

Se considerará que las partes han renunciado a su derecho de objeción si proceden con el arbitraje después de conocer que se ha incumplido una disposición o requisito de este reglamento, y no formulan su objeción por escrito o en un registro transcripto.

### 37. Ampliación de los plazos

Las partes podrán modificar cualquier plazo por acuerdo mutuo. La AAA o el árbitro podrán ampliar por causa justificada cualquier período de tiempo establecido en este reglamento, excepto el plazo de emisión del laudo. La AAA notificará a las partes cualquier ampliación.

### 38. Entrega de las notificaciones

a. Todos los documentos, notificaciones o procesos necesarios o apropiados para la iniciación o continuación de un arbitraje según este reglamento, para cualquier acción judicial relacionada con el mismo, o para dictar sentencia sobre cualquier laudo emitido según este reglamento podrá remitirse a las partes por correo dirigido a las partes o a su(s) representante(s) a su última dirección conocida, o mediante entrega personal, dentro o fuera del estado en que se celebre el arbitraje, siempre y cuando se haya garantizado a las partes una oportunidad razonable de ser escuchadas con respecto a la controversia.

b. La AAA, el árbitro y las partes también podrán utilizar servicios de entrega de un día para el otro, así como la transmisión electrónica por facsímil (fax), para enviar las notificaciones exigidas en este reglamento. Cuando todas las partes y el árbitro así lo acuerden, las notificaciones podrán transmitirse por correo electrónico u otros métodos de comunicación.

c. A menos que la AAA o el árbitro ordenen otra cosa, los documentos presentados por cualquier parte a la AAA o al árbitro deberán ser proporcionados simultáneamente a la otra parte o partes del arbitraje.

### 39. Laudo arbitral

a. El árbitro dictará su laudo con prontitud y, a menos que las partes acuerden lo contrario o la ley lo establezca, dentro de un plazo máximo de 30 días desde la fecha de cierre de las audiencias o, si se ha renunciado a las audiencias orales, desde la fecha de la transferencia por parte de la AAA de las declaraciones y pruebas finales al árbitro. Se otorgarán tres días adicionales cuando se tengan que presentar escritos o transmitir otros documentos de conformidad con la Reglamentación 30.

b. Los laudos pronunciados según este Reglamento estarán disponibles públicamente y se podrán obtener mediante el pago de una tasa. Los nombres de las partes y de los testigos no se harán públicos, a menos que las partes acepten expresamente que sus nombres se hagan públicos en el laudo.

c. El laudo se emitirá por escrito y estará firmado por la mayoría de los árbitros, e incluirá por escrito las razones del laudo, a menos que las partes acuerden lo contrario. Se ejecutará en la forma establecida por la ley.

d. El árbitro podrá conceder cualquier reparación o remedio que las partes hubieran podido recibir si la causa hubiera sido presentada en los tribunales, incluyendo lo relacionado con los honorarios y costas de los abogados, de conformidad con la ley aplicable.

En el laudo, el árbitro evaluará las tasas de arbitraje, los gastos y la compensación conforme a lo dispuesto en las Reglamentaciones 43, 44 y 45 a favor de cualquiera de las partes y, en el caso de que algunas tasas o gastos administrativos correspondan a la AAA, a favor de la AAA, con sujeción a las disposiciones contenidas en la sección relativa a Costes de Arbitraje.

e. Si las partes resuelven su conflicto durante el transcurso del arbitraje y lo solicitan mutuamente, el árbitro podrá fijar los términos de la resolución en un laudo acordado.

f. Las partes aceptarán como entrega legal del laudo el envío del laudo o de una copia fiel del mismo, dirigido a las partes o a sus representantes a la última dirección conocida, la entrega personal del laudo, o la entrega del laudo de cualquier otra forma exigida por la ley.

g. El laudo del árbitro será final y vinculante.

### 40. Modificación del laudo

En un plazo de 20 días desde la transmisión del laudo, cualquiera de las partes, previa notificación a las otras partes, podrá pedir al árbitro que corrija cualesquiera errores administrativos, tipográficos, técnicos o informáticos del laudo. El árbitro no tiene potestad para volver a determinar los méritos de ninguna reclamación que ya haya sido decidida. Se dará 10 días a las otras partes para responder a la petición. El árbitro satisfará la petición en un plazo de 20 días desde la trasmisión por parte de la AAA al árbitro de la petición y de cualquier respuesta a la misma. Si la ley aplicable exige un marco de procedimiento temporal distinto, se seguirá tal procedimiento.

### 41. Entrega de documentos para acciones judiciales

A petición escrita de alguna de las partes, la AAA proporcionará, a expensas de la parte solicitante, copias certificadas de cualquier documento que se encuentre en el archivo de la AAA correspondiente al caso que pueda ser necesario para las acciones judiciales relacionadas con el arbitraje.

### 42. Presentación ante los tribunales

a. Ninguna acción judicial de una parte relativa a la materia del arbitraje se considerará una renuncia al derecho de esa parte de recurrir al arbitraje.

b. Ni la AAA ni ningún árbitro que actúe en un procedimiento según este reglamento son ni deberán ser considerados una parte necesaria o apropiada en las acciones judiciales relacionadas con el arbitraje.

c. Se considerará que las partes participantes en estos procedimientos han dado su consentimiento para que cualquier tribunal federal o estatal con jurisdicción dicte una sentencia sobre el laudo.

d. Se considerará que las partes participantes en un arbitraje según este reglamento aceptan que ni la AAA ni ningún árbitro son responsables ante cualquier parte en ninguna acción por daños y perjuicios o medidas cautelares por cualquier acto u omisión en relación con cualquier arbitraje realizado según este reglamento.

### 43. Tasas administrativas

Como organización sin fines de lucro, la AAA establecerá tasas de presentación y otras tasas administrativas como compensación por los costes de los servicios administrativos ofrecidos. Se aplicará la lista de tasas administrativas de la AAA vigente en el momento de la recepción de la solicitud de arbitraje o del acuerdo de presentación.

Las tasas de la AAA se pagarán de conformidad con la sección sobre Costes del Arbitraje (ver páginas 45-53).

En el caso de que una parte sufra dificultades económicas extremas, la AAA podrá aplazar o reducir las

tasas administrativas. (Para asegurarse de que tiene la información más reciente, visite nuestro sitio web en www.adr.org).

### 44. Remuneración del árbitro neutral

Los árbitros aplicarán una tarifa de acuerdo con sus tarifas establecidas para la remuneración de sus servicios. Si existe un desacuerdo sobre las condiciones de la remuneración, la AAA fijará con el árbitro una tarifa apropiada, la cual se confirmará a las partes.

Los arreglos relativos a la remuneración del árbitro neutral deberán realizarse a través de la AAA, y no directamente entre las partes y el árbitro. La AAA realizará el pago de los honorarios y de los gastos del árbitro con las tasas y el dinero percibido por la AAA a tal efecto. La remuneración del árbitro deberá realizarse de acuerdo con la sección sobre Costes del Arbitraje.

### 45. Gastos

A menos que las partes o las leyes aplicables establezcan lo contrario, los gastos de los testigos de ambas partes correrán a cargo de la parte que presente a dichos testigos.

Todos los gastos del árbitro, incluidos los gastos de viaje necesarios y otros gastos, y todos los gastos de la AAA, así como los costes relativos a las pruebas y a los testigos presentados por indicación del árbitro, se pagarán de conformidad con la sección sobre Costes del Arbitraje.

### 46. Depósitos

La AAA podrá pedir dinero en depósito previamente a las audiencias, según considere necesario para cubrir los gastos de arbitraje, incluyendo los honorarios del árbitro, si los hubiere, debiendo rendir cuentas y devolver el saldo que no se haya gastado al término del caso.

### 47. Suspensión por falta de pago

Si la remuneración del árbitro o los gastos administrativos no han sido pagados en su totalidad, la AAA podrá informar de ello a las partes para que una de ellas pueda adelantar el pago requerido. Si dichos pagos no se realizan, el árbitro podrá ordenar la suspensión o la finalización del procedimiento. Si todavía no se ha nombrado a ningún árbitro, la AAA podrá suspender o poner fin al procedimiento.

### 48. Interpretación y aplicación del reglamento

El árbitro interpretará y aplicará este reglamento en lo que respecta a sus facultades y sus deberes. Cuando haya más de un árbitro y surjan diferencias entre ellos relativas al significado o la aplicación del reglamento, se resolverán por mayoría de votos. Si esto no fuera posible, tanto un árbitro como una parte podrán trasladar la cuestión a la AAA para que tome una decisión final. Todos los otros procedimientos serán interpretados y aplicados por la AAA.

### Costes del arbitraje (incluyendo las tasas administrativas de la AAA)

Esta sección relativa a los Costes del Arbitraje se subdivide en dos subsecciones separadas y distintas. En un principio, la AAA realizará una determinación administrativa sobre si la controversia deriva de un plan promulgado por el empleador o de un acuerdo o contrato laboral negociado individualmente.

Si una parte no está de acuerdo con la determinación de la AAA, las partes pueden someter el asunto a la atención del árbitro para una determinación final.

La determinación del árbitro se realizará a partir de documentos solamente, a menos que el árbitro considere que es necesaria una audiencia.

### Conflictos derivados de planes promulgados por el empleador*:

La remuneración del árbitro no se incluye dentro de las tasas administrativas percibidas por la AAA. La remuneración del árbitro se basa en el historial más reciente enviado a las partes con anterioridad a la designación. El empleador pagará la remuneración del árbitro a menos que el empleado, con posterioridad al conflicto, decida voluntariamente pagar una parte de la remuneración del árbitro. La remuneración del árbitro, los gastos definidos en la sección (iv) a continuación y las tasas administrativas no están sujetas a reasignación por parte del (los) árbitro(s) salvo que el árbitro determine que una reclamación o contrademanda se presentó con el fin de acosar o es manifiestamente frívola.

*De conformidad con la Sección 1284.3 del Código de Procedimientos Civiles de California, los consumidores con ingresos mensuales brutos de menos del 300% de los índices federales de pobreza tienen derecho a la exoneración de las tasas de los costes de arbitraje, salvo los honorarios del árbitro. Esta ley es aplicable a todos los acuerdos en materia de consumo sujetos a la Ley de Arbitraje de California, y a todos los arbitrajes en materia de consumo realizados en California. Solo las controversias derivadas de los planes promulgados por el empleador se incluyen en la definición de consumidor. Si cree que cumple estos requisitos, debe presentar a la AAA una declaración jurada de sus ingresos mensuales y el número de miembros de su grupo familiar. Póngase en contacto con el Western Case Management Center (Centro de Gestión de Casos del Oeste) de la AAA en el 877.528.0880 si tiene alguna pregunta sobre la exoneración de los honorarios administrativos. (Vigente a partir del 1 de enero de 2003).

### (i) Tasas de presentación

En los casos ante un solo árbitro, el empleado debe pagar en su totalidad en el momento de la presentación del caso una tasa de presentación no reembolsable de USD 175 como máximo, a menos que el plan prevea que el empleado paga menos. El empleador debe pagar en su totalidad una tasa no reembolsable de USD 925, a menos que el plan prevea que el empleador paga más.

En los casos ante tres o más árbitros, el empleado debe pagar en su totalidad en el momento de la presentación del caso una tasa de presentación no reembolsable de USD 175 como máximo, a menos que el plan prevea que el empleado paga menos. El empleador debe pagar en su totalidad una tasa no reembolsable de USD 1,800, a menos que el plan prevea que el empleador paga más.

En el caso de las contrademandas no se cobrarán tasas de presentación.

### (ii) Honorarios relativos a las audiencias

Por cada día de audiencias celebradas ante un único árbitro, el empleador deberá pagar una tasa administrativa de USD 300.

Por cada día de audiencias celebradas ante un panel de varios árbitros, el empleador deberá pagar una tasa administrativa de USD 500.

No se cobrarán honorarios de celebración de audiencias por parte de la AAA en el caso de las Conferencias de Gestión de Arbitraje.

### (iii) Tasas de aplazamiento/cancelación

La parte causante del aplazamiento de una audiencia programada ante un único árbitro deberá pagar una tasa de USD 150.

La parte causante del aplazamiento de una audiencia programada ante un panel de varios árbitros deberá pagar una tasa de USD 250.

### (iv) Alquiler de la sala de audiencias

EXHIBIT A TO DECLARATION

Las tasas relativas a la celebración de las audiencias descritas anteriormente no incluyen el alquiler de las salas de audiencias. La AAA tiene en la mayoría de sus oficinas salas de audiencias para la comodidad de las partes. Consulte con el administrador la disponibilidad de las mismas y los precios. Los costos de alquiler de las salas de audiencias correrán a cargo del empleador.

**(v) Tasa por aplazamiento**
Las partes de los casos mantenidos en suspenso durante un año deberán satisfacer una tasa anual por suspensión de USD 300. Si una parte se niega a pagar la tasa establecida, la otra parte o partes podrán satisfacer la tasa en su totalidad en nombre de todas las partes, de lo contrario el caso quedará cerrado administrativamente.

**(vi) Gastos**
Todos los gastos del árbitro, incluidos los gastos de viaje necesarios y otros gastos, y todos los gastos de la AAA, así como los costes relativos a las pruebas y a los testigos presentados por indicación del árbitro, correrán a cargo del empleador.

**Conflictos derivados de acuerdos o contratos laborales negociados individualmente:**
La Lista de Tarifas Comerciales de la AAA que figura a continuación se aplicará a los conflictos derivados de acuerdos y contratos laborales negociados individualmente, incluso si dichos acuerdos y contratos se refieren o incorporan un plan promulgado por el empleador.

**Estructura de Tasas administrativas (Tasas Estándar y Flexibles)**
La AAA ofrece dos opciones de tasas administrativas para aquellas partes que presenten demandas o contrademandas: la Estructura de Tasas Estándar y la Estructura de Tasas Flexibles. La Estructura de Tasas Estándar tiene un plan de dos pagos; la Estructura de Tasas Flexibles, por su parte, tiene un plan de tres pagos, que ofrece tasas de iniciación menores pero potencialmente un total mayor de tasas administrativas de aproximadamente un 12% a un 19% de incremento en caso de que se llegue a una audiencia. Las tasas administrativas de la AAA están basadas en el monto de la demanda o contrademanda. La remuneración del árbitro o los árbitros no está incluida en esta lista. A menos que las partes acuerden otra cosa, la remuneración de los árbitros y las tasas administrativas están sujetas a la asignación por parte del árbitro en el laudo.

En un esfuerzo por hacer los costos del arbitraje razonables para los consumidores, la AAA ofrece una lista de tasas separada para las controversias relacionadas con el consumidor. Consulte la Sección C-8 de los Procedimientos Suplementarios para Controversias relativas a Consumidores cuando presente una reclamación de este tipo. Tenga en cuenta que la Lista de Tasas Flexibles no está disponible para los casos administrados bajo los procedimientos suplementarios.

La AAA aplica los Procedimientos Suplementarios para la Resolución de Controversias relativas a Consumidores a cláusulas arbitrales en acuerdos entre consumidores individuales y empresas donde la empresa tiene una aplicación de cláusulas arbitrales estandarizada y sistematizada con los consumidores, y donde los términos y condiciones de la compra de bienes o servicios consumibles y estandarizados son no-negociables, o principalmente no-negociables, en cuanto a todos o la mayoría de sus términos, condiciones, características o elecciones. El producto o servicio deber ser de uso personal o doméstico. La AAA tiene discreción para aplicar o no los Procedimientos Suplementarios y las partes podrán presentar cualquier diferencia sobre su aplicación o no ante el árbitro. Los consumidores no tienen prohibido buscar reparación en un tribunal de pequeñas controversias para disputas o reclamaciones en el ámbito de su jurisdicción, aún en casos de arbitrajes relativos al consumidor presentados por la empresa.

Tasas por presentaciones incompletas o deficientes: Cuando el acuerdo arbitral aplicable no contenga referencia a la AAA, la AAA intentará obtener el acuerdo de las otras partes intervinientes en la controversia para administrar el arbitraje. Sin embargo, si la AAA no logra obtener el acuerdo de las partes para administrar el arbitraje, la AAA cerrará el caso y no procederá con la administración del arbitraje. En estos casos, la AAA reembolsará la tasa inicial de presentación a la parte promovente, menos la cantidad por presentaciones deficientes especificada en la lista de tasas que se encuentra más abajo.

Las partes que presenten demandas de arbitraje incompletas o que no cumplan con los requisitos de presentación contenidos en este Reglamento también deberán pagar la cantidad especificada más abajo para presentaciones deficientes si no consiguen o no pueden responder a la petición de la AAA de corregir la deficiencia.

Tasas por servicios adicionales: La AAA se reserva el derecho de cobrar tasas administrativas adicionales por servicios proporcionados por la AAA que vayan más allá de los previstos en este Reglamento y que pudieran ser requeridos por acuerdo o estipulación de las partes.

**(i) Estructura de Tasas Estándar**
Cuando se presente una demanda, contrademanda o demanda adicional, la parte promovente pagará una Tasa de Presentación. Deberá pagarse una Tasa Final en todos los casos que lleguen a su primera audiencia. Esta tasa será pagada por anticipado al programarse la primera audiencia. Esta tasa será reembolsada a la conclusión del caso si no se produce ninguna audiencia. Sin embargo, si la cancelación de la audiencia no se notifica a la Asociación al menos 24 horas antes de la audiencia programada, la Tasa Final quedará devengada y no será reembolsada.

Estas tasas serán facturadas como se indica a continuación:

1. Esta tasa se aplicará únicamente cuando una demanda o contrademanda no tengan por objeto una reclamación dineraria.   Cuando la cuantía en litigio no estuviese determinada, las partes deberán fijar una cuantía mínima y otra máxima y sujeto a la tasa de presentación de USD 10,200.

2. La Tasa de Presentación de una Demanda Deficiente no se aplicará en casos iniciados por un consumidor en aquellos arbitrajes que se rijan por los Procedimientos Suplementarios para la Resolución de Controversias relativas a Consumidores, o en casos promovidos por un Empleado que lleve su controversia a arbitraje en virtud de un plan promulgado por el empleador.

3. La AAA puede imponer tasas adicionales si el acuerdo o estipulación de las partes requiere procesos o servicios que estén fuera del Reglamento.

Las tasas estarán sujetas a incremento si la cuantía de una demanda o contrademanda es modificada después de la fecha de la presentación inicial. Las tasas estarán sujetas a disminución si la cuantía de la demanda o contrademanda es modificada antes de la primera audiencia.

Las tasas mínimas en cualquier caso en el que participen tres o más árbitros serán de USD 2,800 en concepto de Tasa de Presentación Inicial, más una Tasa Final de USD 1,250. Los Procedimientos Expeditos se aplican en cualquier caso donde ninguna demanda o contrademanda dada a conocer exceda los USD 75,000, excluyendo intereses y costas de arbitraje.

En aquellos casos presentados bajo la Estructura de Tasas Flexibles o la Estructura de Tasas Estándar que queden en suspenso durante un año deberán satisfacer una tasa anual por suspensión de USD 300. Si una parte se niega a pagar la tasa establecida, la otra parte o partes podrán satisfacer la tasa en su totalidad en nombre de todas las partes, de lo contrario el caso quedará cerrado administrativamente.

Para mayor información, comuníquese con su oficina de la AAA local, centro de gestión de casos, o con nuestro Servicio de Atención al Cliente al 1-800-778-7879.

**(ii) Reembolso de Tasas Estándar**

La AAA ofrece un programa de reembolsos de la tasa de presentación previsto en la Lista de Tasas Estándar. En aquellos casos en que la cuantía en disputa sea de hasta USD 75,000, habrá una tasa mínima de USD 350 que no se reembolsará. En el resto de los casos, habrá una tasa mínima de USD 600 que no se reembolsará. Con sujeción a los requerimientos de tasas mínimas, los reembolsos serán calculados de la siguiente manera:

Se reembolsará el 100% de la tasa de presentación por encima de la tasa mínima si se llega a un acuerdo o si se retira la demanda dentro de los cinco días naturales siguientes a la presentación de la demanda.

Se reembolsará el 50% de la tasa de presentación por encima de la tasa mínima si se llega a un acuerdo o si se retira la demanda entre los seis y 30 días naturales siguientes a la presentación de la demanda.

Se reembolsará el 25% de la tasa de presentación por encima de la tasa mínima si se llega a un acuerdo o si se retira la demanda entre los 31 y 60 días naturales siguientes a la presentación de la demanda.

No se efectuará reembolso alguno una vez que se haya designado un árbitro (esto incluye la designación de un árbitro en un panel de tres árbitros). No se efectuarán reembolsos una vez dictado el laudo.

Nota: La fecha de recepción de la demanda de arbitraje en la AAA se utilizará para el cálculo del reembolso de las tasas iniciales de presentación tanto para demandas como para contrademandas.

**(iii) Estructura de Tasas Flexibles**

Cuando se presente una demanda, contrademanda o demanda adicional, la parte promovente pagará en su totalidad una Tasa Inicial de Presentación no reembolsable. Una vez recibida la Demanda de Arbitraje, la AAA iniciará rápidamente el caso y notificará a todas las partes, así como establecerá el plazo para presentar una Respuesta, que puede incluir una Contrademanda. Para continuar con la administración del arbitraje y el nombramiento del (los) árbitro(s), deberá pagarse la Tasa de Procedimiento apropiada, no reembolsable, según se especifica más abajo.

Si la Tasa de Procedimiento no se abona dentro de los noventa (90) días a partir de la presentación de la Demanda de Arbitraje por parte del Demandante, la Asociación procederá al cierre administrativo del caso y notificará a las partes.

No se aplicará ningún reembolso o plan de reembolso a las Tasas de Presentación y Procedimiento una vez recibidas.

La Lista de Tasas Flexibles que aparece a continuación también puede ser utilizada en la presentación de contrademandas. No obstante, al igual que en el caso de la demanda inicial, la contrademanda no le será presentada al árbitro hasta que se haya pagado la Tasa de Procedimiento. Deberá pagarse una Tasa Final en todas las demandas y/o contrademandas que lleguen a su primera audiencia. Esta tasa será pagada por anticipado al programarse la primera audiencia, pero será reembolsada a la conclusión del caso si ninguna audiencia tuviera lugar. Sin embargo, si la cancelación de la audiencia no se notifica a la Asociación al menos 24 horas antes de la audiencia programada, la Tasa Final quedará devengada y no será reembolsada.

Todas las tasas serán facturadas como se indica a continuación:

1. Esta tasa se aplicará únicamente cuando una demanda o contrademanda no tenga por objeto una reclamación dineraria. Cuando la cuantía en litigio no estuviese determinada, las partes deberán fijar una cuantía mínima y otra máxima o quedar sujetas a una tasa de presentación de USD 3,500 y a una tasa de procedimiento de
USD 8,200.

2. La AAA se reserva el derecho de cobrar tasas administrativas adicionales por servicios proporcionados

por la AAA que vayan más allá de los previstos en este Reglamento y que pudieran ser requeridos por acuerdo o estipulación de las partes. Para mayor información, comuníquese con su oficina de la AAA local, centro de gestión de casos, o con nuestro Servicio de Atención al Cliente al 1-800-778-7879. Las tasas estarán sujetas a incremento si la cuantía de una demanda o contrademanda es modificada después de la fecha de la presentación inicial. Las tasas estarán sujetas a disminución si la cuantía de la demanda o contrademanda es modificada antes de la primera audiencia.

Las tasas mínimas en cualquier caso en el que participen tres o más árbitros serán de USD 1,000 en concepto de Tasa de Presentación Inicial; USD 2,125 de Tasa de Procedimiento y USD 1,250 de Tasa Final.

De conformidad con la Lista de Tasas Flexibles, la obligación de pagar la Tasa de Procedimiento se mantendrá vigente independientemente de cualquier acuerdo entre las partes para suspender, posponer o modificar de cualquier manera el procedimiento del arbitraje. Las partes que, por mutuo acuerdo, hayan mantenido su caso en suspenso durante un año deberán satisfacer una tasa anual por suspensión de 300 USD. Si una parte se niega a pagar la tasa establecida, la otra parte o partes podrán satisfacer la tasa en su totalidad en nombre de todas las partes, de lo contrario el caso será cerrado.

Nota: La fecha de recepción por parte de la AAA de la demanda de arbitraje será utilizada para calcular los noventa (90) días de plazo máximo para el pago de la Tasa de Procedimiento.

No habrá Plan de Reembolsos en la Lista de Tasas Flexibles.

**(iv) Alquiler de la sala de audiencias**

Las tasas descritas anteriormente no cubren el costo de las salas de audiencias que se encuentran disponibles en alquiler. Consulte con la AAA la disponibilidad de las mismas y los precios.

**(v) Tasa por aplazamiento**

En aquellos casos presentados bajo la Estructura de Tasas Estándar que queden en suspenso durante un año deberán satisfacer una tasa anual por suspensión de USD 300. Si una parte se niega a pagar la tasa establecida, la otra parte o partes podrán satisfacer la tasa en su totalidad en nombre de todas las partes, de lo contrario el caso quedará cerrado administrativamente.

**(vi) Gastos**

Todos los gastos del árbitro, incluidos los gastos de viaje necesarios y otros gastos, y todos los gastos de la AAA, así como los costes relativos a las pruebas y a los testigos presentados por indicación del árbitro, serán sufragados en forma equitativa por ambas partes.

# EXHIBIT ONE

# EXHIBIT ONE

Mandatory fields are marked with a red indicator.
Associate MVM Acknowledgement Form

## Associate MVM Acknowledgement Form

I acknowledge that I have reviewed and/or received via electronic means a copy of the My V.O.I.C.E. (Valuing Other's Issues and Concerns for Engagement) Program (the "MVM" Program) Rules and Procedures, including via e-mail and embedded as link on this site.  The MVM Program explains the process of how to resolve any work-related issues that may come up during my employment with Panda Restaurant Group, Inc. and its subsidiaries, parents, affiliates and divisions (collectively "Panda").

I further acknowledge, understand, and agree that:

| | |
|---|---|
| 1.  Panda is committed to creating a safe and empowering conversational environment for Panda Associates to listen, appreciate and challenge each other in bringing our 2020 vision alive and in action.  The MVM Program is available to me to allow me to freely communicate my concerns to Panda through four (4) possible steps. | ∗Initials msd |
| 2 . In the first step, I can use the MVM Program to first voice any work-related problem, complaint, suggestion, or question through its Open Door Policy at any time and a determination will be made. | ∗Initials msd |
| 3.  In the second step, I understand that when I voice any work-related problem, complaint, suggestion or question through Panda's Open Door Policy and I would like a further review of a related determination during that process, I may request a review by a Human Resources Director of that determination in the first step, also referred to as an appeal, within 30 days of that determination. A new determination will be provided within 45 days of my appeal. | ∗Initials msd |
| 4.  In the third step, I understand that to the extent my voiced work-related, complaint, suggestion or question involves a legally protected right, I can appeal the determination by a Human Resources Director within 30 days of the determination in the second step. Any new determination in this third step that is favorable to me and against Panda is binding on Panda.  However, if the new determination in this third step is favorable to Panda and against me, I can proceed to a fourth step. | ∗Initials msd |
| 5.  In the fourth step, I understand I may request binding arbitration between Panda if I am not satisfied with the determination in the third step that is favorable Panda and not to me.  As more fully described in the MVM Program Rules and Procedures provided to me, binding arbitration will be conducted by a neutral third party and any determination is binding on both Panda and me. | ∗Initials msd |
| 6. By accepting employment with Panda I elect to participate in the fourth step of binding arbitration as described in the MVM Program Rules and Procedures, should the need arise. | ∗Initials msd |
| 7.  I have been notified that I can choose not to participate in the fourth step of binding arbitration as part of the MVM Program by notifying Panda in writing within 60 days of today's date, or by start date. | ∗Initials msd |

## EXHIBIT B TO DECLARATION

# EXHIBIT ONE

Please make sure all information entered on this page is **correct and complete** before you click the SUBMIT button.   No changes can be made on this form after it has been submitted.

I understand that by entering the last four digits of my Social Security number below, I am agreeing to the use of an electronic method of signature to demonstrate my acceptance of the Associate MVM Acknowledgement Form set forth above.

✱Arbitration Version
1.1

Associate Full Name                                                                         Employee ID
Mekenna Davis                                                                               1327341

**Associate Signature**
✱                                                                                              Date
                                                                                               8/11/17

    ******

EXHIBIT B TO DECLARATION