UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MEKENNA DAVIS                                                                                    Plaintiff

v.                                                                           Civil Action No. 3:20-cv-728-RGJ

PANDA EXPRESS, INC. and PANDA                                                                  Defendants
EXPRESS RESTAURANT GROUP, INC.

* * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mekenna Davis ("Davis") sued Panda Express, Inc. and Panda Express Restaurant Group, Inc. ("Panda Express") in Jefferson County Circuit Court alleging multiple violations of the Kentucky Civil Rights Act, constructive discharge, and negligent hiring, training, and supervision. [DE 1-2 at 17-26]. Panda Express removed to this Court on diversity of citizenship jurisdiction. [DE 1]. Panda Express moved to stay and compel arbitration. [DE 5]. While that motion was pending, Davis moved to remand [DE 7], and Panda Express responded [DE 10]. Panda Express then filed a motion for leave to file amended notice of removal. [DE 11]. These matters are ripe. Having considered the parties' filings and applicable law, the Court **GRANTS** Panda Express's Motion for Leave to File Amended Notice of Removal [DE 11], **DENIES** Davis's Motion to Remand [DE 7], and **DENIES** Panda Express's Motion to Stay and Compel Arbitration [DE 5].

I.       **BACKGROUND**

Panda Express hired Davis, an African-American woman, when she was sixteen years old. [DE 1-2 at 11]. Once hired, Panda Express required Davis to "onboard" by reviewing and completing forms and documentation related to her employment, including the Associate Handbook and the My V.O.I.C.E. Matters Program ("MVMP"). [DE 5-1 at 35]. The MVMP

documentation contained an arbitration provision, which Davis electronically acknowledged and signed:

> Except as otherwise limited, all employment-related legal disputes, controversies, or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law ("Employment-Related Claims"), shall be settled exclusively by final and binding arbitration. Arbitration is administered by the American Arbitration Association ("AAA") under this Agreement and the employment arbitration portion of the AAA's Employment Arbitration Rules and Mediation Procedures that does not conflict with this Agreement . . .
>
> Arbitration shall apply to any and all such disputes, controversies or claims whether asserted by the Associate against the Company and/or against any employee, officer, director or alleged agent of the Company. Arbitration shall also apply to any and all such civil disputes, controversies or claims asserted by the Company against the Associate.
>
> All "Employment-Related Claims," as defined below, as of the Effective Date arising under federal, state or local statutory or common law, shall be subject to arbitration. Merely by way of example, Employment-Related Claims include, but are not limited to, claims arising under . . . Title VII of the Civil Rights Act of 1964, . . . including amendments to all of the foregoing statutes, . . . state anti-discrimination and anti-harassment statutes . . . and/or common law regulating employment termination, misappropriation, breach of the duty of loyalty, the law of contract or the law of tort, including, but not limited to, claims for malicious prosecution, wrongful discharge, wrongful arrest/wrongful imprisonment, intentional/negligent infliction of emotional distress or defamation.

[DE 5-1 at 36; DE 5-2 at 48].

Davis worked for Panda Express from August of 2017 until September 2019 when she alleges that she was constructively discharged. [DE 1-2 at 11; DE 5-2 at 48]. Davis claims that she was subjected to harassment and discrimination while working at Panda Express. *Id.* at 11-17. And Davis alleges that management at Panda Express retaliated against her after she complained about how she was being treated. *Id.* at 23. While employed at Panda Express, Davis turned eighteen. [DE 9 at 121].

In September of 2020, Davis sued in Jefferson County Circuit Court. [DE 1-2 at 9]. Davis seeks damages for "substantial mental anguish and emotion[al] distress, humiliation and personal indignity, loss of enjoyment of life, damage to her reputation, lost wages and benefits, and other pecuniary and non-pecuniary losses." *Id.* at 20. Davis also seeks her "costs and expenses expended herein including reasonable attorneys' fees." *Id.* at 26. Less than thirty days after receiving Davis's complaint, Panda Express removed to this Court on diversity of citizenship jurisdiction. [DE 1].

## II. DISCUSSION

Before the Court can address Panda Express's motion to compel arbitration, it must resolve the jurisdictional issue raised in Davis's motion to remand. *See Hamilton v. Voxeo Corp.*, No. 3:07CV404, 2008 WL 11352591, at *2 (S.D. Ohio Sept. 30, 2008) ("Because the existence of jurisdiction is a threshold issue which this Court must resolve prior to considering any other matters pending in this case, the jurisdictional challenge raised by Plaintiff's motion to remand must be addressed first"; *see also American Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold determination").

**A. Jurisdiction**

Removal to federal court is proper for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Diversity jurisdiction gives "[t]he district courts . . . original jurisdiction [over] all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a), (a)(1). A defendant removing a case has the burden of proving jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92,

97 (1921). The determination of federal jurisdiction in a diversity case should be made at the time of removal. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000).

### 1. Amendment of Removal Notice

Panda Express moved to amend its notice of removal to address the purported defects raised in Davis's motion to remand. [DE 11]. Davis did not respond to Panda Express's motion to amend.

"Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C.A. § 1653. A notice of removal may be amended "under the same considerations governing the amendment of any other pleading containing jurisdictional allegations." *Gafford v. General Electric Co.*, 997 F2.d 150, 164 (6th Cir. 1993) (quoting *Stanley Electric Contractors, Inc. v. Darin & Armstrong Co.*, 486 F. Supp. 769, 772–73 (E.D. Ky. 1980)) (internal quotation marks omitted). Allowing amendment of a notice of removal is "consistent with the general liberal attitude toward pleading amendments found in Federal Civil Rule 15, and with [28 U.S.C. § 1653.]" 14C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3733 (Rev 4th ed.). Thus, a notice of removal "may be amended freely before the initial 30-day removal period expires, but after the period ends, the notice may be amended only to set out more specifically the grounds for removal that already have been stated in the original notice." *Courtney Southers v. Appalachian Reg'l Healthcare, Inc.*, No. 7:20-CR-126-REW-EBA, 2021 WL 1250315, at *2 (E.D. Ky. Apr. 5, 2021) (quoting *Hahn v. Rauch*, 602 F. Supp.2d 895, 909 n.6 (N.D. Ohio 2008)) (internal quotation marks omitted).

Here, Davis filed her complaint in September of 2020 and Panda Express moved to amend in December of 2020, more than thirty days later. [DE 1; DE 11]. Nonetheless, the Court will

allow amendment[1] because the motion to amend sets out "more specifically the grounds for removal that already have been stated in the original notice." *Courtney Southers*, No. 7:20-CR-2021 WL 1250315 at *2. Panda Express's initial notice of removal stated both how the parties were diverse and how the amount in controversy exceeded $75,000. Panda Express's amended notice of removal provides additional support for these existing grounds for removal. [DE 11-1 at 159-62]. As a result, the Court grants Panda Express's amended notice. *See Attentus of Scott Cty., LLC v. Lauer*, No. 3:07-CV-276, 2007 WL 3047124, at *1 (E.D. Tenn. Oct. 17, 2007) (granting motion to amend notice of removal where "Defendant's amended notice of removal aim[ed] to include greater specificity with regards to the facts related to his allegations of diversity of citizenship").

    2. Remand

In her motion to remand, Davis argues that this Court lacks jurisdiction because Panda Express failed to: 1) establish her Kentucky citizenship; 2) establish that the amount in controversy is more than $75,000; and 3) include a copy of all documents in the state court records with the notice of removal. [DE 7-1 at 101-07]. For the reasons discussed below, the Court finds that it has jurisdiction over this case.

    *a. Citizenship*

Citing only non-binding authority, Davis first contends that Panda Express "failed to offer any proof to establish that Ms. Davis is domiciled in Kentucky" because it did "not offer sufficient proof that diversity of *citizenship* exists in this case." *Id.* at 101-02 (emphasis in original).

---

[1] Davis failed to respond to Panda Express's amended notice of removal. This alone may be sufficient grounds for granting Panda Express's amendment. *See* LR 7.1(c) ("Failure to timely respond to a motion may be grounds for granting the motion").

5

To establish diversity jurisdiction under 28 U.S.C. § 1332(a)(1), the opposing parties must be citizens of different states. *See Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 829 (1989). "For purposes of diversity jurisdiction, citizenship means domicile: the state where a party both physically resides and intends to remain." *Fritz Dairy Farm, LLC v. Chesapeake Exploration, LLC*, 567 F. App'x 396, 398 (6th Cir. 2014). "Domicile is not necessarily synonymous with residence, and one can reside in one place but be domiciled in another." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (internal quotation marks and citations omitted). "For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Id.*

Here, Panda Express asserts in its amended notice of removal:

> 6. Based upon Plaintiff's allegations in the Complaint, she is a citizen of the Commonwealth of Kentucky and a resident of Louisville, Kentucky. Specifically, Plaintiff alleges that she performed work for Defendants at its restaurant located at 1232 South Hurstbourne Parkway in Louisville, Kentucky, attended church in Kentucky, and that she is a resident of Louisville, Kentucky. (Exhibit A, ¶¶ 1, 10, 27).

[DE 11-1 at 159].

The Court finds that these facts are sufficient for diversity purposes to establish that Davis "physically resides and intends to remain" in Kentucky. *Fritz*, 567 F. App'x at 398.

### b. Amount in Controversy

Davis next argues that "[d]iversity jurisdiction does not exist" because Panda Express "failed to satisfy the amount-in-controversy threshold." [DE 7-1 at 102].

Generally, courts conduct "a fair reading" of the complaint to determine whether the amount in controversy satisfies the requirements of 28 U.S.C. § 1332(a). *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001). Because the plaintiff is "master of the claim," a claim explicitly less than the federal requirement will typically preclude removal. *Rogers*, 230

F.3d at 872 (quoting *Gafford*, 997 F.2d at 157). When the plaintiff challenges the amount in controversy, the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 88 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)).

In workplace-discrimination and retaliation cases, defendants routinely establish the amount in controversy by calculating the value of the plaintiff's compensatory and punitive damages. *See Jenkins v. Delta Air Lines, Inc.*, No. 3:18-CV-244-CRS, 2018 WL 6728571, at *2 (W.D. Ky. Dec. 21, 2018); *Proctor v. Swifty Oil Co.*, No. 3:12-CV-00490-TBR, 2012 WL 4593409, at *2 (W.D. Ky. Oct. 1, 2012); *Blocker v. PPG Indus., Inc.*, No. 3:17-CV-29-DJH, 2017 WL 3431136, at *3 (W.D. Ky. Aug. 9, 2017). Courts have noted that "[b]ack pay accrued through the projected trial date is properly included in the amount-in-controversy calculation where . . . the plaintiff seeks past and future wages." *Blocker*, 2017 WL 3431136, at *3 (internal quotation marks and citation omitted) (estimating that the trial would occur one year from removal); *see also Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 479 (6th Cir. 2014).

Along with back pay, courts also consider other types of damages and fees when calculating the amount in controversy, including emotional-distress damages, punitive damages, and statutory attorneys' fees. *Blocker*, 2017 WL 3431136, at *3. For example, in *Shupe*, the Sixth Circuit upheld the district court's finding that the amount in controversy was at least $75,000 when the defendant presented evidence that the plaintiff earned $15 per hour and worked 42.5 hours per week. 566 F. App'x at 480. In that case, assuming the trial would occur one year after removal, the plaintiff's back pay damages would total $68,250. *Id.* The court considered this amount along with the plaintiff's pre-suit demand letter in which she asked for a cash sum of $60,000, as well as her for request for damages for humiliation, embarrassment, and attorneys' fees. *Id.* Ultimately,

the court found that "it [was] more likely than not that the amount in controversy was at least $75,000." *Id.*

Here, Davis worked for Panda Express from August 2017 until September 2019. [DE 1-2 at 11; DE 5-2 at 48]. Based on pre-litigation communications with Davis, Panda Express asserts that Davis's annual earnings at Panda Express were approximately $28,000. [DE 10-1 at 153]. Factoring in her benefits at Panda Express, Panda Express submits that her backpay and benefits total approximately $37,000 per year. Based on these calculations, Davis's potential backpay will have increased to $74,000 by September of this year.[2]

Davis also represented to Panda Express that "it is reasonably foreseeable that a jury could award" her "a substantial six (6) figure sum in damages for emotional distress." [DE 10-2 at 154]; *See Harris v. Burger King Corp.*, No. 3:11-CV-708-H, 2012 WL 13202809, at *1 (W.D. Ky. Mar. 29, 2012) ("[I]n a pre-litigation letter, Plaintiff demanded $500,000 from Defendant in consideration for resolving all claims, evidencing an amount in controversy well above the jurisdictional minimum").

Finally, courts have previously found that lost wages and attorney's fees in cases under the Kentucky Civil Rights Act likely exceed $75,000. *See Jones v. AT&T Mobility, LLC*, No. 6:17-cv-320-KKC, 2018 WL 3341183, at * 2 (E.D. Ky. July 6, 2018); *Tackett v. Elovations Servs. Grp., LLC*, No. CV 18-171-DLB-CJS, 2019 WL 903848, at *2 (E.D. Ky. Feb. 22, 2019). The Court finds that given the nature of the case, Davis's compensation, Davis's representations, and the extent of damages requested, the claim, more likely than not, exceeds the $75,000 amount-in-controversy requirement. *See Harris*, 2012 WL 13202809 at *1 ("Even accepting Plaintiff's

---

[2] Davis takes issue with Panda Express's calculation of the value of her benefits. [DE 7-1 at 104]. But, setting aside the value of her benefits, her backpay alone will total $56,000 by September of this year. Additionally, a trial has not yet been set in this case. By the time this case goes to trial, it seems more likely than not that the value of her backpay will have grown to $75,000, if not more.

contention that back pay damages are only about $10,000, the claims for future lost wages, reduced hours during employment, emotional damages, punitive damages and attorney's fees clearly puts the amount in controversy above $75,000").

*c. State-court documents*

Third and finally, Davis asserts that the removal notice is defective because it failed to include "a copy of the three (3) exhibits that were referenced in and filed with" her complaint. [DE 7-1 at 107]. This contention is similarly unavailing. Though 28 U.S.C. § 1446(a) requires a removing defendant to attach "a copy of all process, pleadings, and orders served upon such defendant or other defendants in such action," the Sixth Circuit has concluded that technical non-compliance with this provision does not warrant remand unless the non-compliance prejudices the plaintiff. *See Griffin v. JPMorgan Chase Bank, N.A.*, 595 F. App'x 473, 474 (6th Cir. 2014) (holding that district court did not err in denying a motion to remand when plaintiffs did not explain how defendant's failure to attach certain documents to the notice of removal prejudiced them); *see also Howell v. Father Maloney's Boys' Haven, Inc.*, No. 3:18-CV-00192-GNS, 2018 WL 5258627, at *3 (W.D. Ky. Oct. 22, 2018). In this instance, Davis has not explained how she has been prejudiced by Panda Express's failure to include exhibits that she filed with her complaint. As a result, assuming Panda Express failed to comply with that provision, its non-compliance does not warrant remand. This argument is also now moot because Panda Express provided the required documents in its amended notice of removal. [DE 11-1].

**B. Arbitration**

Having determined that the Court has jurisdiction to hear this case, the Court now turns to Panda Express's motion to compel arbitration. Panda Express argues that the Court "should compel Ms. Davis to final, binding arbitration, exactly as she agreed. This Court should also stay

9

this litigation in favor of the mandatory arbitration." [DE 5-1 at 43]. Davis disagrees. [DE 8 at 110].

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate disputes which arises out of a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir.2000) (quoting 9 U.S.C. § 2).

When asked to compel arbitration, a court must make several determinations before compelling arbitration:

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id.*

As a general rule, any doubts regarding arbitrability should be resolved in favor of arbitration. *Fazio v. Lehman Brothers, Inc.,* 340 F.3d 386, 392 (6th Cir.2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983)).

"[W]hen claims involve the validity of the contract as a whole and not just the arbitration agreement, such claims are to be brought before the arbitrator, not the district court in deciding a petition to compel arbitration." *Fazio,* 340 F.3d at 395 (internal quotations omitted) (quoting *Great Earth Co., Inc. v. Simons,* 288 F.3d 878, 892 (6th Cir.2002). However, "[i]f the *making of the arbitration agreement* or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4 (emphasis added). More specifically, "the FAA does not permit the courts to examine the enforceability of contracts containing

arbitrations provisions," only the validity of the arbitration agreement itself. *Glazer v. Lehman Brothers, Inc.,* 394 F.3d 444, 452 (6th Cir.2005). Arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent–A–Center, West, Inc. v. Jackson,* 561 U.S. 63, 66 (2010) (internal citations and quotations omitted). Here, Davis has placed the making of the arbitration agreement at issue by asserting the "generally applicable contract defense[]" of infancy. [DE 8 at 111]; *see Ingram v. Neutron Holdings, Inc.*, 467 F. Supp. 3d 575, 582 (M.D. Tenn. 2020) ("[T]he doctrine of infancy has been applied to permit a minor to rescind arbitration agreements") (collecting federal cases). "State contract law . . . governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses." *Fazio,* 340 F.3d at 393 (citations omitted).

The general rule in Kentucky has long been that a minor is "permitted to disavow a contract entered into before [she] reache[d] the age of majority." *Kozak v. Com.*, 279 S.W.3d 129, 130 (Ky. 2008); *see Breckenridge's Heirs v. Ormsby*, 24 Ky. 236, 248 (1829) ("The privilege of infancy, being personal, the other party to contracts with infants, are and should be bound. It is enough for the protection and security of the infant, that when he acquires legal discretion, he may avoid or affirm contracts, made when an infant"); *Watson v. Cross*, 63 Ky. 147, 148 (1865) ("Where a party voluntarily contracts with an infant, then the infant may avail himself of his legal disability and avoid the contract, if not for necessaries"); *Henderson v. Clark*, 173 S.W. 367, 370 (1915) ("An infant's contract is not void, but merely voidable at his or her election after reaching the age of 21 years"); *Wright v. Stanley Motor Co.*, 60 S.W.2d 144, 144 (1933) ("Being an infant he was not bound by the contract and no judgment should have been rendered against him thereon"); *Elkhorn Coal Corp. v. Tackett*, 88 S.W.2d 943, 945 (1935) ("The right of an infant to

11

avoid his deed is an absolute and uncontrollable privilege . . . These principles are irreversibly fixed by the law, and it enforces them without enquiry into particular circumstances and without regard to consequences . . . Nothing less than an express or implied ratification by the former minor, after attaining his majority, affords any protection to any grantee").

It appears that *Mitchell By & Through Fee v. Mitchell*, 963 S.W.2d 222, 223 (Ky. App. 1998) is the last time a Kentucky appellate court has addressed at length the doctrine of infancy. There, the Kentucky Court of Appeals stated:

> Ky.Rev.Stat. (KRS) 387.010 defines minor as anyone under the age of eighteen. Ordinarily, a contract executed by a minor is enforceable by the minor but may be avoided by the minor if not affirmed by him after reaching adulthood. Although the minor has the legal capacity to contract, he has the privilege of avoiding the contract. *Wright v. Stanley Motor Co.,* 249 Ky. 20, 60 S.W.2d 144 (1933). Although, there are certain exceptions to this general rule, none is applicable to this case.
>
> . . .
>
> The privilege bestowed upon a minor to avoid contracts made during infancy is given for policy reasons. Infants, as with other classes of disabilities, are presumed to be insufficiently mature or experienced to effectively bargain with those who have attained legal age, and any transaction which may result in a financial loss to them or in a depletion of their estates is scrutinized with care.

*Id.* at 223.

In a footnote, the Kentucky Court of Appeals explained the "certain exceptions to this general rule": "'A minor may be obligated to contracts that provide for the necessities of life.' *Williams v. Buckler,* Ky., 264 S.W.2d 279 (1954)[3]. It is not alleged that the settlement agreement was such a contract and we are not inclined to so hold." *Id.* at 224.

---

[3] In *Buckler*, the "necessities of life" was farm machinery. 264 S.W.2d. at 280. Panda Express does not argue that Davis's arbitration agreement with it constituted a contract for "necessities of life." Nor does it appear that it successfully could. *See Bensinger's Coex'rs v. West*, 255 S.W.2d 27, 29 (Ky. 1953) ("The contract was essentially one of employment, and the agreement to furnish board, lodging, traveling expenses, and medical care were merely part payment for the services to be rendered. If this agreement

Citing *Damron v. Ratliff*, 97 S.W. 401, 402 (1906), Panda Express argues there is another exception to this general rule: a minor may not assert the defense of infancy unless she has asserted it in a "reasonable time after reaching full age." [DE 9 at 121]. Damron, while still a minor, sold land to Ratliff. *Id.* at 401. Ratliff argued that Damron "ratified" the sale as an adult. *Id.* In reaching its holding, the Kentucky Court of Appeals explained that there are three ways in which a minor may "ratify" a prior act:

> First, by the failure on his part to disaffirm the contract within a reasonable time after reaching full age; second, by accepting the benefits of the contract made during infancy after arriving at full age, and, third, by retaining property received under a contract made during infancy, and using and enjoying same after coming of full age. In this case, it is necessary to consider only the second ground upon which a contract may be ratified, to wit, the acceptance of a consideration for the contract on reaching his majority.

*Id.* at 402.

The Court held that Damron ratified the sale once he became an adult by accepting "the remainder of the purchase price for the land." *Id.* As a result, the Court found that Damron could not avoid the contract, despite having entered into it when he was a minor. *Id.*

Panda Express does not dispute that Davis was a minor at the time she entered the arbitration agreement with it. [DE 9 at 121]. By hiring an attorney, engaging in pre-litigation communications with Panda Express, and then by filing this lawsuit, Davis has indicated her desire not to be bound by the terms of the arbitration agreement. *Brown v. Elk Horn Coal Corp.*, 8 S.W.2d 404, 406 (1928) ("[T]here are various ways in which an infant may disaffirm [her agreement] among which is the bringing of a suit to cancel or rescind it. But it is not essential that he bring a suit. There are other ways in which the deed may be disaffirmed, such as the giving of a notice to the grantee to that effect").

---

could be treated as a contract for necessaries, every agreement for employment of an infant could be made enforceable by the employer's agreement to provide support").

Panda Express's arguments based on *Damron* do not change the Court's ruling. Although *Damron* has not been expressly disavowed by Kentucky appellate courts, its holding and reasoning have also not been embraced by them. Indeed, since it was issued in 1906, it has been cited just five times and only in the context of agreements involving the conveyance of land or property. *See Turner v. Stewart*, 147 S.W. 772, 772 (1912) (Turner ratified sale of land he made as a minor by accepting payments for it after became an adult); *Clark v. Kidd*, 146 S.W. 1097 (1912) (same); *Ward v. Ward*, 136 S.W. 137 (1911) (Ward ratified sale of land he made as a minor by accepting payment (in the form of a cow) for it after became an adult); *Frazier v. Rockhouse Realty Co.*, 295 S.W. 1042, 1043 (1927) (Frazier ratified conveyance of mineral rights made as a minor by accepting partition of land as an adult); *Martin v. Elkhorn Coal Corp.*, 13 S.W.2d 780, 782 (1929) (Martin conveyed deed when still minor and was equitably estopped from disaffirming deed more than eight years after became an adult because Elkhorn "at considerable expense erected houses to be occupied by its employees, constructed railroads . . . opened and equipped mines for the purpose of developing this and adjacent lands," and drilled a gas well).

Notably, the Kentucky Court of Appeals in *Mitchell* did not cite *Damron* (as no court has in the ninety-two years), did not discuss the "ratification" exception to the doctrine of infancy, and in fact expressly stated that a "contract for necessities" is the only exception to it. Because it has not been cited in nearly a century, the Court questions *Damron*'s precedential viability. But, if *Damron* indeed remains viable precedent, its holding appears limited to agreements involving the conveyance of land.

Even if *Damron* applies here, the Court finds that Davis disaffirmed her agreement with Panda Express in a "reasonable time." Kentucky courts consider equitable principles when determining what constitutes a "reasonable time." *See Walker v. Walker*, 69 S.W.2d 716, 717-18

(1934) ("The general principle is that nothing can call forth equity into activity other than conscious, good faith, and reasonable diligence. Where these do not call for relief, equity is passive and does nothing. Length of time, although not the statutory period, has, in some cases, been held to operate as evidence of assent or acquiescence"); *Martin*, 13 S.W.2d at 782 ("It is of the highest necessity that this right of minors shall be protected, but a court of equity will not aid the slothful, after such disability is removed, when to do so will work a hardship and injustice upon an innocent third party").

Panda Express asserts that Davis entered into the arbitration agreement on August 2017 and turned eighteen in April 2018. [DE 9 at 121]. Davis filed suit against Panda Express in September 2020, a little more than two years after she became an adult. [DE 1]. By filing suit, Davis disaffirmed her arbitration agreement with Panda Express. Panda Express has not argued that it is inequitable[4] to allow Davis to void her arbitration agreement. Indeed, it is unclear how Panda Express has been injured by Davis's alleged failure to timely disaffirm the arbitration agreement. Based on the circumstances in this case, the Court finds that Davis disaffirmed her arbitration agreement within a "reasonable time after reaching full age." *See Peters v. Noble*, 244 S.W. 416, 417 (1922) (three years is reasonable); *but see Walker*, 69 S.W.2d at 718 (nine years is

---

[4] *Peters*, *Walker*, *Moore*, and *Justice* each involve property transfers by infants. The Court acknowledges that the equitable considerations involved in property transfers by infants in the early 1900s do not particularly apply to an arbitration agreement from the early 2000s between Davis, a teenage girl, and Panda Express, a multinational corporation.

15

not reasonable); *Moore v. Hudson*, 240 S.W. 383, 384 (1922) (thirty-seven years is not reasonable); *Justice v. Justice*, 186 S.W. 148 (1916) (seventeen years is not reasonable). [5]

### III. CONCLUSION

Having considered the parties filings and the applicable law, and being otherwise sufficiently advised, the Court **HEREBY ORDERS** that Panda Express's Motion for Leave to File Amended Notice of Removal [DE 11] is **GRANTED**, Davis's Motion to Remand [DE 7] is **DENIED**, and Panda Express's Motion to Stay and Compel Arbitration [DE 5] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

July 7, 2021

cc: counsel of record

---

[5] Davis also argues that the arbitration agreement is unconscionable and defective. [DE 8 at 113-18]. Because the Court has denied Panda Express's motion to compel arbitration based on Davis's infancy, it need not address the other two grounds raised in Davis's response. *See Stroupes v. Finish Line, Inc.*, No. 1:04-CV-133, 2005 WL 5610231, at *5 (E.D. Tenn. Mar. 16, 2005) ("Because the Court finds that the employment contract was voidable due to Lindsey's minority, and was voided by filing this action, the Court does not consider the Plaintiffs' remaining arguments regarding the enforceability of the arbitration agreement nor whether the Plaintiffs' claims are covered by the agreement").