UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MEKENNA DAVIS                                                                                            Plaintiff

v.                                                                                        Civil Action No. 3:20-cv-728-RGJ

PANDA EXPRESS, INC. and PANDA                                                        Defendants
EXPRESS RESTAURANT GROUP, INC.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Panda Express moves the Court to reconsider its Opinion [DE 13] denying Panda Express's Motion To Stay and Compel Arbitration. [DE 18]. Davis did not respond, and the matter is ripe. For the reasons below, the Court **DENIES** Panda Express's Motion for Reconsideration of Denial of Motion to Stay and Compel Arbitration.[1] [DE 18].

### I.  BACKGROUND

The underlying facts are detailed in the Court's prior Opinion. [DE 13]. At issue is the Court's ruling on Panda Express's Motion to Stay and Compel Arbitration. In that motion, Panda Express sought for the Court to hold Davis "to the Arbitration Agreement to which she agreed during the onboarding process for employment at Panda Express" and to compel the matter to arbitration. [DE 5-1 at 34].

Panda Express's arbitration program ("My V.O.I.C.E. Matters Program") ("MVMP") provides in pertinent part:

---

[1] In its Motion for Limited Stay of Deadline to Respond to Amended Complaint [DE 19], Panda Express asserts that it "[has] moved the Court for reconsider [sic] of its decision declining to compel arbitration, and if that Motion prevails, this matter will be compelled to arbitration with no further proceedings here. Accordingly, a limited stay of the deadline to respond will save resources of the Court and the parties, plus keep proceedings here minimal in the event the matter moves to arbitration." [DE 19 at 298]. Because the Court is denying the Motion for Reconsideration, it also denies as moot the Motion for Limited Stay of Deadline to Respond to Amended Complaint [DE 19].

Frequently Asked Questions
My V.O.I.C.E. Matters Program

1. Q: What is My VOICE Matters Program (MVMP)?

A: VOICE – Value Our Issues or Concerns for Engagement. MVMP Program includes an enhanced open door policy and an option for arbitration. It provides a framework for associates to have safe and empowering conversations about work issues and is a powerful pathway for resolving disputes. This program is faster and less costly than relying on administrative claims and lawsuits.

. . .

5. Q: What is the arbitration option?

A: The MVMP program provides an extra option for arbitration for issues that affect an associate's legally protected rights, which can prevent the time and money required to pursue a lawsuit.

6. Q: What are some examples of "legally protected rights"?

A: You are protected from discrimination based on race, ethnicity, color, religion, sex, sexual orientation, or national origin, age, marital status, disabilities, medical condition, as well as any other category protected by federal, state or local law.

7. Q: How do I participate in the arbitration option?

A: For new hires, associates are automatically enrolled as a condition of hire. They can later choose not to participate if they notify Panda within 60 days from their agreement. For existing associates, they can participate in the arbitration option by completing the eModule.

8. Q: Can I enroll into the arbitration option in the future if I choose not to participate now?

A: Yes, there will be an annual enrollment period when you can take advantage of enrolling into the program.

. . .

**14. Q: Is enrolling into the arbitration program a condition of continued employment?**

**A: No, however it is a condition of hire for new associates. You will need to enroll into the arbitration program to be hired, but you can "Opt Out" within 60 days by submitting a written request.**

. . .

MY V.O.I.C.E. (Valuing Other's Issues and Concerns for
Engagement) MATTERS PROGRAM RULES AND PROCEDURES

. . .

All new Associates agree to be covered by the MVM Program, including Arbitration (Step 4), by accepting employment with the Company on or after June 29, 2012 (the "Effective Date"). However, Arbitration—Step 4 is completely voluntary. New Associates are given the option to exclude themselves from Arbitration – Step 4 by completing an "opt out" election form within 60 calendar days of the Effective Date or their hire date, whichever is later. New associates shall receive the electronic acknowledgment and agreement regarding the MVM Program as part of the TALEO "onboarding" process.

Existing and active Associates hired prior to the Effective Date (collectively, the "Existing Associates") shall be invited to enroll in the MVM Program on or around the Effective Date. For Existing Associates who choose to enroll, their date of enrollment will constitute the Effective Date of their participation in the MVM Program (also referred to as the "Effective Date"). **Existing Associates not enrolled into the MVM Program shall continue to be invited to enroll in the MVM Program on or about each annual anniversary of the Effective Date. Existing Associates shall receive a brochure and acknowledgment in the mail or some other method of communication to enroll.**

Until and unless a new Associate elects to be excluded from arbitration within the prescribed time frame or they are an Existing Associate who has enrolled into the MVM Program, the Associate is covered by Arbitration (Step 4).

. . .

**Arbitration (Step 4) is a voluntary condition of employment.**

[DE 5-2 at 51-54 (emphasis added)].

Relevant to the Court's discussion below, Panda Express argued in its Motion to Stay and Compel Arbitration that:

Regarding acceptance, Ms. Davis specifically confirmed her intent to be bound by the MVMP when completing the MVMP Acknowledgment, as set out above. Kentucky courts have consistently enforced agreements with electronic signatures and even agreements where no signature has been affixed at all, but subsequent actions document an intent to be bound. *See, e.g., Aldrich v. University of Phoenix,*

3

*Inc.*, No. 3:15-cv-578-JHM, 2016 WL 915287, at *8 (W.D. Ky. Mar. 4, 2016) (citing *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 978 (6th Cir. 2007) and various other Circuits holding the same); *Braxton v. O'Charley's Restaurant Properties*, LLC , 1 F. Supp. 3d 722, 726 (W.D.Ky. 2014). Ms. Davis' signature falls squarely within Kentucky law on acceptance of agreements and does not even require consideration of her fully consistent actions following her entry into the MVMP.

[DE 5 at 41-42].

The Court denied this motion. Panda Express now moves the Court to reconsider.

## II. STANDARD

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008). "A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991).

Although the Federal Rules of Civil Procedure do not expressly provide for "motions for reconsideration," courts generally construe such motions as motions to alter or amend a judgment under Rule 59(e). *See Moody v. Pepsi-Cola Metro. Bottling Co.*, 915 F.2d 201, 206 (6th Cir. 1990). The Sixth Circuit has consistently held that a Rule 59 motion should not be used either to reargue a case on the merits or to reargue issues already presented, *Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (citing *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)), or otherwise to "merely restyle or rehash the initial issues," *White v. Hitachi, Ltd.*, No. 3:04-CV-20, 2008 WL 782565, at *1 (E.D. Tenn. Mar. 20, 2008) (internal quotation marks and citation omitted).

"It is not the function of a motion to reconsider arguments already considered and rejected by the court." *White*, 2008 WL 782565, at *1 (citation omitted). When a party views the law in a

light contrary to that of this Court, its proper recourse is not a motion for reconsideration but appeal to the Sixth Circuit. *Helton v. ACS Grp.*, 964 F. Supp. 1175, 1182 (E.D. Tenn. 1997). Moreover, "parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *United States v. Smith*, Case No. 3:08-cr-31-JMH, 2012 WL 1802554, *1 (E.D. Ky. May 2012) (quoting *Roger Miller Music*, 477 F.3d at 395.

For these reasons, the Sixth Circuit instructs that a motion for reconsideration should only be granted in four situations: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (internal quotation marks and citation omitted). Because there is an interest in the finality of a decision, motions for reconsideration "are extraordinary and sparingly granted." *Marshall v. Johnson*, No. CIV.A.3:07-CV-171-H, 2007 WL 1175046, at *2 (W.D. Ky. Apr. 19, 2007) (citing *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)).

### III.   DISCUSSION

Panda Express asserts that the Court committed "clear error" in its prior Opinion:

> While the Court understandably delved into Kentucky law regarding the infancy doctrine as a contract defense, this case concerns something beyond: Plaintiff Mekenna Davis never opted out of the Arbitration Agreement at issue (not as a minor or thereafter as an adult), and in fact, she continued her employment with Defendants for seventeen months once she reached the age of majority, each time affirming her assent to the Agreement through her actions. Indeed, no matter which construction of the infancy doctrine the Court chooses, binding Sixth Circuit caselaw requires the conclusion that Plaintiff must be held to the Agreement she entered by her actions.

[DE 18 at 289].

To begin, the Court notes that Panda Express did not raise this issue in its original filings and does not explain why it failed to raise it earlier. *Whitehead*, 301 F. App'x at 489. Indeed,

5

Panda Express previously stated that because Davis signed the arbitration agreement it was unnecessary to consider whether Davis assented through continued employment. [DE 5-1 at 42 ("Ms. Davis' signature falls squarely within Kentucky law on acceptance of agreements and does not even require consideration of her fully consistent actions following her entry into the MVMP")]. In any event, Panda Express's arguments in its motion to reconsider do not persuade the Court that it has committed "clear error."

In its motion to reconsider, Panda Express cites several Sixth Circuit cases. *See Tillman v. Macy's, Inc.*, 735 F.3d 453, 456-62 (6th Cir. 2013); *Dawson v. Rent-A-Ctr., Inc.*, 490 F. App'x 727, 730 (6th Cir. 2012); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 971–74 (6th Cir. 2007). In *Seawright*, the Sixth Circuit held that under Tennessee law "continued employment can constitute acceptance" and found that there was a valid arbitration agreement in that case, even though plaintiff never signed it, because she assented to it through her continued employment. 507 F.3d at 972–73. In reaching this holding, the Sixth Circuit noted that "[t]he written materials accompanying the arbitration agreement clearly stated that continued employment after the effective date of the EDR Program would constitute the employee's acceptance of the agreement to arbitrate." *Id.* at 972.

*Tillman*, *Dawson*, and *Seawright* are distinguishable. In those cases, the Sixth Circuit did not consider a situation, like this one, where the plaintiff signed the arbitration agreement while a minor. Nor did it consider under Kentucky law whether continued employment constitutes assent. And perhaps most significantly, the Sixth Circuit in those case considered arbitration agreements which, unlike the one here, provided that accepting arbitration is a condition of continued employment. *See Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 844 (6th Cir. 2021) (In *Tillman*, *Dawson*, and *Seawright* "undisputed evidence showed that the employee had learned

6

that accepting arbitration was a condition of the employee's continued employment. Here, Boykin unequivocally denies taking the arbitration training session, and Family Dollar has offered no other evidence showing that he learned of this arbitration condition in other ways. And again, Family Dollar does not dispute on appeal that Michigan law required Boykin to know that his acceptance of arbitration had been made a condition of his continued employment"); *see also Braxton v. O'Charley's Rest. Properties, LLC*, 1 F. Supp. 3d 722, 727–28 (W.D. Ky. 2014) (interpreting Kentucky law and applying *Seawright* to find that plaintiff assented to arbitration through continued employment because, among other reasons, the arbitration agreement at issue provided "'[i]n consideration of O'Charley's Inc. providing Employee with an application for employment, or an offer of employment or further employment by O'Charley's Inc., and the compensation and job benefits that Employee has and/or will receive from O'Charley's Inc., . . . and the mutual promises made by Employee and O'Charley's Inc. herein, the undersigned Employee hereby agrees to' arbitration"); *Mitchell v. Cambridge Franchise Holdings, LLC*, 433 F. Supp. 3d 1064, 1071 (W.D. Ky. 2020) (finding assent through continued employment where "the Agreement was a condition of continued employment and all employees were required to log into their HRIS accounts and sign the Agreement"); *Spikener v. Olive Garden Holdings, LLC*, No. CV 5: 18-188-DCR, 2018 WL 2293936, at *4 (E.D. Ky. May 18, 2018) ("Viewing the evidence in the light most favorable to Spikener as the non-moving party, it is unclear whether she had actual notice of the DRP and manifested her assent to it"); *Polly v. Affiliated Comput. Servs., Inc.*, No. CIV.A. 10-135-ART, 2011 WL 93715, at *4 (E.D. Ky. Jan. 11, 2011) (Thapar, J.) ("Under Kentucky law, parties can be bound to contracts, even absent a signature, when their actions indicate acceptance of the contract's terms . . . In this case, the DRP clearly provides that '[e]mployment or continued employment . . . constitutes consent by both the Employee and the Company to be bound by this

7

Plan'").

Panda Express argues that whether "Plaintiff first entered the agreement while a minor makes no difference . . . [U]nder the *Mitchell* analysis, the Arbitration Agreement entered into as a minor would be null and void, but Plaintiff's decision as an adult to continue employment thereafter binds her separately and independently to the same Agreement." [DE 18 at 293]. "An infant's contract is not void, but merely voidable at his or her election after reaching the age of [eighteen]." *Henderson v. Clark*, 173 S.W. 367, 370 (1915). As a result, Davis's arbitration agreement with Panda Express did not immediately become void upon her turning eighteen. Rather, it continued to remain in effect until she disaffirmed[2] it within a reasonable amount of time after she turned eighteen. *See Martin v. Elkhorn Coal Corp.*, 13 S.W.2d 780, 781 (1929) ("The deed of an infant is voidable but not void. If the infant wishes to avoid it he must do so when he attains his majority or within a reasonable time thereafter").

Based on the faulty premise that the arbitration agreement was automatically voided when Davis became an adult, Panda Express next reasons that the issue here is "an adult entering the Agreement again and again through continued employment, not seeking a different exception to the defense of infancy, as the Court initially construed." [DE 18 at 293]. Because the initial arbitration agreement was not automatically voided when she turned eighteen, the Court does not

---

[2] In a footnote, Panda Express asserts that the "the Court's conclusion that 'hiring an attorney, engaging in pre-litigation communications with Panda Express, and then by filing this lawsuit, Davis has indicated her desire not to be bound by the terms of the arbitration agreement' constitutes clear error and would work manifest injustice as well." [DE 18 at 294]. Under the MVMP, "[a]rbitration . . . replaces any right you might have to go to court and try your claims before a jury." [DE 5-2 at 54]. By filing suit and requesting a jury trial, Davis disaffirmed the arbitration agreement. [*See* DE 1-2 at 26 ("Plaintiff demands judgment on her Complaint against Defendants in an amount sufficient to invoke the jurisdiction of this Court, and, in addition, demands the following . . . (b) A trial by jury on all issues so triable"); *see also Brown v. Elk Horn Coal Corp.*, 8 S.W.2d 404, 406 (1928) ("[T]here are various ways in which an infant may disaffirm [her agreement] among which is the bringing of a suit to cancel or rescind it. But it is not essential that he bring a suit. There are other ways in which the deed may be disaffirmed, such as the giving of a notice to the grantee to that effect"). The Court declines to change its prior ruling on this issue. [*See* DE 13 at 206-11].

agree that this is a situation of an "adult entering the Agreement again and again." Indeed, it is unclear to the Court how Davis could "enter[] the Agreement again and again," thereby forming an implied-in-fact contract through her conduct, when a signed arbitration agreement (an "express contract") already existed. *See Furtula v. Univ. of Kentucky*, 438 S.W.3d 303, 308 (Ky. 2014), *as modified* (June 23, 2014) ("A contract implied in fact rests upon the conduct of the parties and not their verbal or written words. Thus, the theories of express contract and of contract implied in fact are mutually exclusive") (citation and internal quotation marks omitted).

That said, even if Panda Express is correct that the agreement was automatically voided when she turned eighteen, Davis did not assent to arbitration through her continued employment thereafter. In *Seawright*, the Sixth Circuit found that the plaintiff "expressed a valid assent when she continued to work for [her employer]" because "Tennessee law recognizes the validity of unilateral contracts, in which acceptance is indicated by action under the contract" and "[t]he written materials accompanying the arbitration agreement clearly stated that continued employment after the effective date of the EDR Program would constitute the employee's acceptance of the agreement to arbitrate." 507 F.3d at 972. Not so here, where the MVMP made clear that "enrolling"—not continued employment—is the only way for an Existing Associate to assent to the MVMP. [DE 5-2 at 54 ("Existing Associates not enrolled into the MVM Program shall continue to be invited to enroll in the MVM Program on or about each annual anniversary of the Effective Date. Existing Associates shall receive a brochure and acknowledgment in the mail or some other method of communication to enroll")]. Once the agreement was void, it appears as though Davis would be treated under the MVMP as an Existing Associate, not a new hire. As a result, she could only enter into the agreement by "enrolling" in it. In the MVMP, Panda Express "informed" its employees that their continued employment would not constitute acceptance of

9

arbitration. *See Furtula*, 438 S.W.3d at 309 ("[W]hen the recipient of a statement is informed that the maker of the statement does not intend to enter into a contract, as occurred in this case with the University's clear statement that the handbook was not a contract, the formation of a contract will not be implied"); *see also* Restatement (Second) of Contracts § 19 (1981) ("The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents"). Because Panda Express explicitly stated that enrollment, not continued employment, would constitute acceptance of arbitration, Davis had no reason to know that Panda Express would later argue and infer "from [her] conduct that [s]he assents."

### IV. CONCLUSION

Having considered the filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

(1) Panda Express's Motion For Reconsideration of Denial of Motion to Stay and Compel Arbitration [DE 18] is **DENIED**.

(2) Panda Express's Motion for Limited Stay of Deadline to Response to Amended Complaint [DE 19] is **DENIED AS MOOT**.

Rebecca Grady Jennings, District Judge
United States District Court

October 7, 2021

cc: counsel of record